**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DOW JONES & COMPANY, INC. and NYP HOLDINGS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PERPLEXITY AI, INC., <br><br> Defendant. | Civil Action No. 1:24-cv-07984-KPF <br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     BACKGROUND ..........................................................................................................2

        A.      Perplexity's revolutionary search engine was developed from its
                California-based business ...............................................................................2

        B.      From California, Perplexity makes its search engine available to users
                everywhere, but has never targeted New York specifically ....................................4

        C.      All users, including Plaintiffs, agree to Perplexity's terms of service,
                which require resolution of disputes in San Francisco courts................................4

        D.      Plaintiffs' allegations do not establish any relevant link between
                Perplexity and New York...................................................................................5

III.    LEGAL STANDARD....................................................................................................6

IV.     ARGUMENT ...............................................................................................................6

        A.      THIS COURT LACKS PERSONAL JURISDICTION OVER
                PERPLEXITY...................................................................................................6

                1.      Perplexity is not subject to general jurisdiction in New York ...................7

                2.      Perplexity is not subject to specific jurisdiction in New York .................8

        B.      VENUE IN THE SOUTHERN DISTRICT OF NEW YORK IS
                IMPROPER......................................................................................................14

        C.      ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO
                THE NORTHERN DISTRICT OF CALIFORNIA.............................................15

                1.      This action could have been brought in the Northern District of
                        California, which is the proper forum.......................................................16

                2.      The interests of justice support transfer to the Northern District of
                        California ...............................................................................................18

        D.      PLAINTIFFS' INFRINGEMENT CLAIMS AS TO UNTIMELY
                REGISTERED WORKS SHOULD BE DISMISSED PURSUANT TO
                RULE 12(B)(6) ...............................................................................................25

V.      CONCLUSION............................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*,
   828 F. Supp. 2d 557 (E.D.NY. 2011) ......................................................................12

*AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*,
   326 F. Supp. 2d 525 (S.D.N.Y. 2004)..............................................................19, 21

*AGCS Marine Ins. Co. v. Associated Gas & Oil Co.*,
   775 F. Supp. 2d 640 (S.D.N.Y. 2011)....................................................................17

*Al-Ahmed v. Twitter, Inc.*,
   553 F. Supp. 3d 118 (S.D.N.Y. 2021)....................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................6

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*,
   571 U.S. 49 (2013)..................................................................................14, 18, 25

*Atl. Recording Corp. v. Project Playlist, Inc.*,
   603 F. Supp. 2d 690 (S.D.N.Y. 2009)....................................................................19

*Bensusan Rest. Corp. v. King*,
   126 F.3d 25 (2d Cir. 1997)........................................................................................9

*Berdeaux v. OneCoin Ltd.*,
   561 F. Supp. 3d 379 (S.D.N.Y. 2021)......................................................................7

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)....................................................................................12

*Bionx Implants, Inc. v. Biomet, Inc*,
   1999 WL 342306 (S.D.N.Y. May 27, 1999) ..........................................................22

*Boehm v. Zimprich*,
   2013 WL 6569788 (S.D.N.Y. Dec. 13, 2013) ........................................................14

*Bristol-Myers Squibb Co. v. Super. Court of Cal.*,
   582 U.S. 255 (2017)..................................................................................................9

*Brown v. Lockheed Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016)..................................................................................7, 8

*Camacho v. Vanderbilt Univ.*,
2019 WL 6528974 (S.D.N.Y. Dec. 4, 2019) ........................................................................12

*Cartier v. D&D Jewelry Imps.*,
510 F. Supp. 2d 344 (S.D.N.Y. 2007).................................................................20, 23, 24

*Concord Music Grp., Inc. v. Anthropic PBC*,
738 F. Supp. 3d 973 (M.D. Tenn. 2024).............................................................................12

*Corley v. Vance*,
365 F. Supp. 3d 407 (S.D.N.Y. 2019).............................................................................8, 10

*CYI, Inc. v. Ja-Ru, Inc.*,
913 F. Supp. 2d 16 (S.D.N.Y. 2012).............................................................................19, 21

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).................................................................................................................8

*Damian v. Click Intelligence Ltd.*,
2022 WL 428194 (S.D.N.Y. Feb. 11, 2022).........................................................................8

*Deetsch v. Lei*,
2023 WL 6373073 (S.D. Cal. July 21, 2023) ....................................................................26

*Dickerson v. Novartis Corp.*,
315 F.R.D. 18 (S.D.N.Y. 2016) ...........................................................................................22

*Donner v. Der Spiegel Gmbh & Co.*,
— F. Supp. 3d —, 2024 WL 4035215 (S.D.N.Y. Sept. 4, 2024) ............................................8

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
260 F. Supp. 3d 401 (S.D.N.Y. 2017)...............................................................16, 17, 19, 20

*Eres N.V. v. Citgo Asphalt Refin. Co.*,
605 F. Supp. 2d 473 (S.D.N.Y. 2009)..................................................................................18

*Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C.*,
178 F. Supp. 2d 459 (S.D.N.Y. 2002)..................................................................................20

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
928 F. Supp. 2d 735 (S.D.N.Y. 2013)............................................................................16, 18

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
586 U.S. 296 (2019).....................................................................................................25, 26, 27

*Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*,
2017 WL 449913 (S.D.N.Y. Jan. 18, 2017) ........................................................................13

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*,
    415 F. Supp. 2d 370 (S.D.N.Y. 2006).................................................................24

*Guglielmo v. Nebraska Furniture Mart, Inc.*,
    2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020) (Failla, J.) ........................................12

*Harris v. Brody*,
    476 F. Supp. 2d 405 (S.D.N.Y. 2007).................................................................23

*Herbert Ltd. P'ship v. Elec. Arts Inc.*,
    325 F. Supp. 2d 282 (S.D.N.Y. 2004).................................................................22

*Idle Media, Inc. v. Create Music Grp., Inc.*,
    2024 WL 5009713 (S.D.N.Y. Dec. 6, 2024) ........................................................19

*In re Ski Train Fire in Karun, Austria on November 11, 2000*,
    2003 WL 22909153 (S.D.N.Y. Dec. 9, 2003) ......................................................10

*Intria Corp. v. Intira Corp.*,
    2000 WL 1745043 (S.D.N.Y. Nov. 27, 2000)........................................................23

*Izmo, Inc. v. Roadster, Inc.*,
    2019 WL 2359228 (N.D. Cal. June 4, 2019) ........................................................26

*Jonas v. Estate of Leven*,
    116 F. Supp. 3d 314 (S.D.N.Y. 2015)...................................................................6

*Kaufman v. Salesforce.com, Inc.*,
    2021 WL 1687378 (S.D.N.Y. Apr. 29, 2021).........................................................21

*Lebron v. Encarnacion*,
    253 F. Supp. 3d 513 (E.D.N.Y. 2017) ...................................................................7

*Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012)...................................................................................7

*Lopez v. Shopify, Inc.*,
    2017 WL 2229868 (S.D.N.Y. May 23, 2017) ............................................9, 11, 13

*LVAR, L.P. v. Bermuda Comm. Bank Ltd.*,
    649 F. App'x 25 (2d Cir. 2016) ............................................................................25

*Malibu Media, LLC v. Doe*,
    2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019)....................................................26, 27

*MasterObjects, Inc. v. Amazon.com, Inc.*,
    2020 WL 6075528 (S.D.N.Y. Oct. 15, 2020) ........................................................21

*Millenium, L.P. v. Hyland Software, Inc.*,
  2003 WL 22928644 (S.D.N.Y. Dec. 10, 2003) ...................................................20

*Mohamed v. Tesfaye*,
  2019 WL 1460401 (S.D.N.Y. Jan. 24, 2019) ....................................................16

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  16 N.Y.3d 295 (2011) ........................................................................................13

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010)..................................................................................6

*Roblox Corp. v. WowWee Grp. Ltd.*,
  660 F. Supp. 3d 880 (N.D. Cal. Mar. 9, 2023) .............................................26, 27

*Rosenberg v. PK Graphics*,
  2004 WL 1057621 (S.D.N.Y. May 10, 2004) ....................................................12

*Scales v. Web Design Gator*,
  2024 WL 68536 (S.D.N.Y. Jan. 2, 2024) ...........................................................15

*Smart Skins LLC v. Microsoft Corp.*,
  2015 WL 1499843 (S.D.N.Y. Mar. 27, 2015) .........................................19, 22, 23

*Smart v. Goord*,
  21 F. Supp. 2d 309 (S.D.N.Y. 1998)..................................................................18

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
  750 F.3d 221 (2d Cir. 2014)................................................................................7

*Troma Ent., Inc. v. Centennial Pictures Inc.*,
  729 F.3d 215 (2d Cir. 2013)...............................................................................13

*Viacom Int'l Inc. v. Melvin Simon Prods., Inc.*,
  774 F. Supp. 858 (S.D.N.Y. 1991) .....................................................................18

*Walden v. Fiore*,
  571 U.S. 277 (2014)............................................................................................13

*Whitaker v. Am. Telecasting, Inc.*,
  261 F.3d 196 (2d Cir. 2001)..............................................................................6, 7

*Zibiz Corp. v. FCN Tech. Sols.*,
  777 F. Supp. 2d 408 (E.D.N.Y. 2011) ................................................................8

*ZPC 2000, Inc. v. SCA Grp., Inc.*,
  86 F. Supp. 2d 274 (S.D.N.Y. 2000)....................................................................6

## STATUTES

17 U.S.C. § 411(a) ...............................................................................................................25, 27

28 U.S.C.
    § 1331 ..................................................................................................................................17
    § 1391 ...........................................................................................................................14, 18
    § 1391(b) ...........................................................................................................14, 15, 17
    § 1391(b)(1) ......................................................................................................................17
    § 1391(b)(2) ...............................................................................................................15, 17
    § 1391(b)(3) ......................................................................................................................17
    § 1391(c)(2) ......................................................................................................................14
    § 1400(a) ...........................................................................................................................14
    § 1404(a) ...........................................................................................................6, 16, 18, 25
    § 1406(a) ...............................................................................................................6, 16, 18
    § 1631 ....................................................................................................................6, 16, 18

## RULES

Fed. R. Civ. P. 4(c)(A) .........................................................................................................22

Fed. R. Civ. P. 12(b)(2) ..........................................................................................................6

Fed. R. Civ. P. 12(b)(3) ...................................................................................................6, 15

Fed. R. Civ. P. 12(b)(6) ...................................................................................................6, 25

N.Y. C.P.L.R.
    § 301 ....................................................................................................................................7
    § 302(a)(1)-(4) ....................................................................................................................8
    § 302(a)(3) ........................................................................................................................13

## OTHER AUTHORITIES

*About Perplexity*, Perplexity, https://www.perplexity.ai/hub/about (last visited
    Feb. 18, 2025) ....................................................................................................................2

*How does Perplexity work?*, Perplexity, https://www.perplexity.ai/hub/faq/how-
    does-perplexity-work  (last visited Feb. 18, 2025) ...........................................................3

*What advanced AI models are included in a Perplexity Pro subscription?*,
    Perplexity, https://www.perplexity.ai/hub/technical-faq/what-advanced-ai-
    models-does-perplexity-pro-unlock (last visited Feb. 18, 2025) .............................3

*What is Perplexity Pro?*, Perplexity, https://www.perplexity.ai/hub/faq/what-is-
    perplexity-pro (last visited Feb. 18, 2025) ...................................................................4

*What is Perplexity?*, Perplexity, https://www.perplexity.ai/hub/faq/what-is-perplexity (last visited Feb. 18, 2025) .......................................................................................2

## I.      INTRODUCTION

In a time when misinformation proliferates and the need for trustworthy factual content seems increasingly dire, Plaintiffs and Defendant Perplexity AI, Inc. ("Perplexity") share the goal of ensuring people have ready access to reliable information. From its earliest days, Perplexity has centered its search business around locating and summarizing authoritative factual information from trusted sources and encouraging further user engagement with prominently placed citations and links to the source material. In service of those objectives, Perplexity has prioritized collaborating with news organizations and other publishers, like Plaintiffs, to share resources and ideas about the responsible development of AI-enhanced search technology. But any such partnership must proceed from the fundamental truth that nobody may claim a monopoly on facts. That is the foundation both of our copyright law and of a democratic, informed society. And it is a principle that Plaintiffs' claims against Perplexity ignore.

Perplexity's search product, developed and maintained at Perplexity's home in San Francisco, California, relies on publicly available *factual* information that is not protected by copyright law. It indexes web content, like any other search engine available in the marketplace, and uses artificial intelligence to summarize the factual information contained in those search results in human-readable, accessible language. When Plaintiffs first expressed certain misinformed concerns about how Perplexity obtained that information, Perplexity was eager to correct the record and to engage with Plaintiffs on a potential partnership. But Plaintiffs ignored Perplexity's outreach and filed this lawsuit in New York—their own home turf, but a jurisdiction with no connection to the conduct underpinning their complaint.

A full record will show that Plaintiffs' claims fail on the merits. But Perplexity moves here to dismiss based on a lack of jurisdiction and improper venue or, in the alternative, to transfer this case to the Northern District of California, where it belongs. Perplexity is based there. Its search-

engine service was developed and is maintained there. Practically all the key witnesses and documents that will be needed for this case are there. And there is no allegation that any allegedly infringing or misleading "output" was made or received here in New York, save for those evidently induced by Plaintiffs themselves.

The Court should dismiss Plaintiffs' Second Amended Complaint (Dkt. 46, "SAC") or, in the alternative, direct transfer to the Northern District of California. And it should dismiss the claims based on those of Plaintiffs' asserted copyrights that did not satisfy the statutory prerequisite for filing this lawsuit.

## II.    BACKGROUND

### A.    Perplexity's revolutionary search engine was developed from its California-based business

Perplexity—a Delaware corporation with its principal place of business in San Francisco, California, SAC ¶ 18; Declaration of Liane Pham ("Pham Decl.") ¶¶ 4–5—is a rapidly growing company developing cutting-edge AI-powered search engine technology. SAC ¶ 62. Its mission is to "empower[] everyone in the world to learn anything in their own way, using their own language or at their own level." *About Perplexity*, Perplexity, https://www.perplexity.ai/hub/about (last visited Feb. 18, 2025). Launched in 2022, SAC ¶ 73, Perplexity's signature product allows users to ask questions, just like a traditional search engine—but instead of receiving pages of webpage links, users receive a single comprehensive, conversational summary with citations. *See What is Perplexity?*, Perplexity, https://www.perplexity.ai/hub/faq/what-is-perplexity (last visited Feb. 18, 2025).

Perplexity's search engine uses a technique called Retrieval Augmented Generation ("RAG") to understand natural-language questions, locate relevant factual information on the internet, and instantly create concise, accessible summaries of that information accompanied by

prominent source citations and links. *See How does Perplexity work?*, Perplexity, https://www.perplexity.ai/hub/faq/how-does-perplexity-work  (last visited Feb. 18, 2025).  This RAG technology augments "large language models" or "LLMs," which are text-based generative AI systems that use deep learning techniques and large data sets to understand, summarize, generate, and predict new content. SAC ¶¶ 63–66. Perplexity does not itself train or develop any foundational LLM systems—instead, it allows users to select from models developed by other companies, such as OpenAI's GPT-4o, Anthropic's Claude 3.5 Sonnet, or a model based on Meta's open-source LLM Llama, to run and process their searches. *See What advanced AI models are included in a Perplexity Pro subscription?*, Perplexity, https://www.perplexity.ai/hub/technical-faq/what-advanced-ai-models-does-perplexity-pro-unlock  (last  visited  Feb.  18,  2025). Perplexity's RAG technology indexes publicly-available content on the internet (similar to traditional search engines like Google or Bing), organizes that content to allow for rapid retrieval, and uses that data to inform an LLM's response to user queries. SAC ¶¶ 69–71. Perplexity's RAG search engine development process is thus entirely "distinct" from the training or fine-tuning of LLMs performed by generative AI companies. *Id.* ¶ 71.

The majority of Perplexity's employees are based in California, including almost all of Perplexity's senior leadership team and the team of engineers responsible for the design, development, and operation of the Perplexity search engine. Pham Decl. ¶¶ 6, 10. As of the date Plaintiffs filed this lawsuit, only ten of Perplexity's then 110 full-time employees were based in New York, where Perplexity rents space in a co-working facility. *Id.* ¶ 6. With limited exceptions, those employees are either non-technical employees who are not involved in the development or operation of the RAG technology or non-managing technical personnel who maintain back-end infrastructure for Perplexity's website. *Id.* ¶¶ 6–11. Perplexity's search engine was primarily

created and developed at Perplexity's headquarters in San Francisco. *Id.* ¶ 10. The majority of the engineers that work on and develop the search engine and RAG index on a daily basis are based at the San Francisco headquarters, with a minority in Austin, Texas, and at other remote locations outside New York. *Id.* Perplexity's servers and data are also located outside of New York, in northern Virginia. *Id.* ¶ 12. Perplexity hosts its search engine's source code internally at its San Francisco headquarters. *Id.*

> **B.**     **From California, Perplexity makes its search engine available to users everywhere, but has never targeted New York specifically**

Perplexity's California-based search engine is publicly available in both free and paid versions. SAC ¶ 36. Users can access the search engine on Perplexity's website or mobile application to input queries and receive AI-generated responses. *Id.* This feature is available to users nationwide. In the paid version, Perplexity Pro, users can complete up to 300 searches per day and access newer, more powerful versions of LLMs. *What is Perplexity Pro?*, Perplexity, https://www.perplexity.ai/hub/faq/what-is-perplexity-pro (last visited Feb. 18, 2025). Both versions of Perplexity's search engine, as well as its commercial API, are operated and maintained by employees based primarily at its California headquarters. Pham Decl. ¶ 7. And Perplexity oversees its sales and marketing operations, which aim to reach globally, from its California headquarters. *Id.* ¶ 14. Perplexity has not undertaken and does not plan to undertake any New York-specific sales or marketing campaigns. *Id.*

> **C.**     **All users, including Plaintiffs, agree to Perplexity's terms of service, which require resolution of disputes in San Francisco courts**

Since at least June 4, 2024, Perplexity's Terms of Service have provided that the proper litigation venue "for any disputes arising out of or relating to any of" the Terms is "the state and

federal courts located in San Francisco, California."[1] Declaration of Michelle Kao ("Kao Decl.") Ex. K § 10.7. Plaintiffs or their agents necessarily used Perplexity's service to induce the output examples cited in the SAC. *See* SAC ¶¶ 29, 33, 108, 110, 116, 119. They therefore agreed to the prevailing terms of service and must litigate disputes related to those uses against Perplexity in the Northern District of California—the District that includes San Francisco.

### D. Plaintiffs' allegations do not establish any relevant link between Perplexity and New York

Plaintiffs Dow Jones & Company, Inc. and NYP Holdings, Inc. are news publishers who claim to "own[] copyrighted content" in *The Wall Street Journal* and the *New York Post*, as well as the publications' related trademarks. SAC ¶¶ 50–54. They allege that Perplexity "infringe[d]" these copyrights and "damaged and diluted" their trademarks. *Id.* ¶¶ 8–10.

Plaintiffs allege direct infringement under the Copyright Act and trademark dilution under the Lanham Act. *Id.* ¶¶ 130–68. As to copyright infringement, Plaintiffs assert two different theories of liability: first, an "input" theory of liability for Perplexity "copying" the text of news articles for inclusion as inputs in the RAG index—conduct which would have been directed from California, Pham Decl. ¶¶ 7, 10—and second, an "output" theory of liability based on Perplexity allegedly generating copies of these articles when prompted to do so by a user. Plaintiffs also assert a separate non-copyright claim for outputs that hallucinate and create false associations with Plaintiffs' marks—conduct which would have occurred all over the country, with no particular focus on (or evidence or allegation of conduct in) New York. Notably, Plaintiffs do not, and could not, allege that every use of Perplexity's search service infringes their copyrights or trademarks. *See, e.g.*, SAC ¶ 42.

---

[1] Perplexity's Terms of Service require users to arbitrate disputes not related to intellectual property. Kao Decl. Ex. K §§ 9.3–9.4.

## III.    LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) and (b)(3), plaintiffs "bear[] the burden of establishing that the court has jurisdiction over the defendant" and that venue is proper. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (personal jurisdiction); *ZPC 2000, Inc. v. SCA Grp., Inc.*, 86 F. Supp. 2d 274, 276 (S.D.N.Y. 2000) (venue). While the court construes all allegations "in the light most favorable to the plaintiff[s]," plaintiffs must "carry this burden by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." *Whitaker*, 261 F.3d at 208 (internal quotation marks omitted). The court "may consider materials outside the pleadings, including affidavits and other written materials." *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015). Similarly, on a motion to dismiss under Rule 12(b)(6), plaintiffs' "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 51 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or consented."  Transfer can also be addressed under 28 U.S.C. § 1631 to cure improper jurisdiction or under 28 U.S.C. § 1406(a) to cure improper venue in the transferor court.

## IV.    ARGUMENT

### A.    THIS COURT LACKS PERSONAL JURISDICTION OVER PERPLEXITY

First, this Court lacks personal jurisdiction over Perplexity. To establish personal jurisdiction, Plaintiffs must allege a prima facie case under *both* federal due process principles *and*

New York's long-arm statute. *See Whitaker*, 261 F.3d at 208; *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 396 (S.D.N.Y. 2021). For the exercise of personal jurisdiction to "comport with constitutional due process principles," it must satisfy both the "minimum contacts" inquiry and the "reasonableness" inquiry. *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012). The minimum contacts inquiry considers "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* The reasonableness inquiry considers "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.*

Under New York's long-arm statute, general jurisdiction is available only "where a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted." *Sonera Holding B.V. v. Cukarova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (cleaned up) (citing N.Y. C.P.L.R. § 301). The long-arm statute provides for "specific" or "case-linked" jurisdiction only where the plaintiff pleads a cause of action arising from certain statutorily enumerated acts in or affecting New York. *See Lebron v. Encarnacion*, 253 F. Supp. 3d 513, 522 (E.D.N.Y. 2017).

### 1.    Perplexity is not subject to general jurisdiction in New York

Perplexity—a California-headquartered and Delaware-incorporated company—is not subject to this Court's general jurisdiction, and Plaintiffs do not allege otherwise. SAC ¶ 21 (alleging only specific jurisdiction). Regardless of the application of New York's long-arm statute, general jurisdiction is unavailable here because it would be inconsistent with the reasonableness and minimum contacts principles of constitutional due process. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 626, 630 (2d Cir. 2016) (defendant's contacts fell "far short" of the "high bar" to exercise general jurisdiction over an out-of-state corporation).

Under federal due process principles, a corporate defendant is subject to general jurisdiction only where it is "essentially at home." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). "[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business—the 'paradigm' cases." *Brown*, 814 F.3d at 627. Here, Perplexity is a Delaware corporation with its principal place of business in San Francisco, California—and thus is not "at home" in New York. SAC ¶ 18.

"[M]ere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case'" permitting general jurisdiction over an out-of-state defendant, and Plaintiffs allege no such exceptional circumstances. *Brown*, 814 F.3d at 629. At most, Plaintiffs allege that "Perplexity uses and/or possesses real property" and has employees in New York, SAC ¶¶ 23–24, but that is not sufficient to establish general jurisdiction. *See, e.g.*, *Corley v. Vance*, 365 F. Supp. 3d 407, 434 (S.D.N.Y. 2019) (Failla, J.) (this Court finding it could not exercise general jurisdiction over Facebook despite its two offices in New York City); *Donner v. Der Spiegel Gmbh & Co.*, — F. Supp. 3d —, 2024 WL 4035215, at *9 (S.D.N.Y. Sept. 4, 2024) (dismissing for lack of personal jurisdiction where defendant had an office in New York but there was no allegation that employees there were involved in creating allegedly defamatory article); *Damian v. Click Intelligence Ltd.*, 2022 WL 428194, at *3 (S.D.N.Y. Feb. 11, 2022) (dismissing for lack of personal jurisdiction despite defendant listing a New York office on its website); *Zibiz Corp. v. FCN Tech. Sols.*, 777 F. Supp. 2d 408, 417 (E.D.N.Y. 2011) (dismissing for lack of personal jurisdiction even though defendant listed a New York office address and had an employee in New York who was not involved with the disputed contracts).

### 2. Perplexity is not subject to specific jurisdiction in New York

Nor have Plaintiffs alleged facts establishing specific jurisdiction. Plaintiffs allege jurisdiction under N.Y. C.P.L.R §§ 302(a)(1)-(4). SAC ¶ 21. But under constitutional due process

principles, Perplexity is not subject to this Court's specific jurisdiction because there is an insufficient connection between Plaintiffs' infringement claims and Perplexity's contacts with New York. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the [forum]." *Bristol-Myers Squibb Co. v. Super. Court of Cal.*, 582 U.S. 255, 264 (2017). Rather than identifying any specific contact between Perplexity and New York that relates to the nexus of Plaintiffs' infringement claims, Plaintiffs allege scattershot, disparate activity in New York and a blanket allegation that this activity "all relate[s] to Plaintiffs' claims in this Complaint." SAC ¶¶ 22–45. This is insufficient as a matter of law to create personal jurisdiction over Perplexity. *See Lopez v. Shopify, Inc.*, 2017 WL 2229868, at *9 (S.D.N.Y. May 23, 2017) (even "substantial" contacts with New York cannot confer specific jurisdiction when "they do not 'relate to' [plaintiffs'] claims in any meaningful way").

### a. Perplexity's employees in New York do not subject it to specific jurisdiction.

To begin, Perplexity disputes that Perplexity's handful of employees in New York suffices to establish specific jurisdiction. At bottom, Plaintiffs do not allege that Perplexity's New York employees engaged in the "most basic copyright violation in this case"—the "copying of a massive amount of Plaintiffs' copyrighted works as inputs into its RAG index." SAC ¶ 96. In reality, Perplexity had only ten employees in New York at the time this lawsuit was filed, less than 10% of its total workforce at the time, and there is no allegation that any of them is responsible for the inclusion of particular content in the RAG index or for the allegedly infringing outputs. Pham Decl. ¶¶ 6–7. This small contingent of employees in New York is not sufficiently connected to Plaintiffs' claims to establish jurisdiction. *See, e.g.*, *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) (affirming dismissal for lack of personal jurisdiction where allegedly infringing website creation was "performed by persons physically present in Missouri and not in New York");

*Corley*, 365 F. Supp. 3d at 434–35 (dismissing claims against Facebook for lack of personal jurisdiction, despite that 7% of Facebook's global workforce was located in New York City, where "[i]n point of fact, it is almost certainly the case that Plaintiff's claims against Facebook arise out of the latter's activity in California, where its records custodians are located"). Likewise, Plaintiffs' allegations about recruiting "campus strategists" at New York colleges, SAC ¶ 30, is wholly inapposite. Far from developing and maintaining the RAG index and search-engine product, these unpaid student volunteers are merely performing promotional activities. Pham Decl. ¶ 15.

### b. Perplexity's advertising allegedly targeted to New York does not establish specific jurisdiction.

Despite Plaintiffs' assertion that Perplexity "aggressively promotes and advertises its products and services in this State and District," SAC ¶ 38, Plaintiffs allege no specific efforts by Perplexity to directly target users in New York, and there are none. Plaintiffs point only to (1) an allegation that Perplexity created a webpage called "Discover New York with Perplexity," one of many such travel guides Perplexity published about cities around the world, which Perplexity targeted to out-of-town visitors; and (2) allegations related to a Times Square billboard (which was paid for and placed by a third party) and branded Cybertruck, photos of which Perplexity shared broadly with its global social media audience. *Id.* ¶¶ 38–40. None of these isolated allegations shows that Perplexity affirmatively targeted users in New York, let alone that any advertising is related to Plaintiffs' input or output infringement claims. *See In re Ski Train Fire in Karun, Austria on November 11, 2000*, 2003 WL 22909153, at *4 (S.D.N.Y. Dec. 9, 2003) (discount offers to New York businesses did not support specific jurisdiction without "a connection" between the plaintiffs' claims and the advertising). Plaintiffs allege only that these "marketing activities are intended to generate additional New York-based users," SAC ¶ 40, but without allegations that any New York users accessed or otherwise participated in generating infringing outputs, these

allegations are entirely irrelevant to Plaintiffs' output claims and thus cannot serve as the "required nexus" for jurisdiction. *Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 127 (S.D.N.Y. 2021) (plaintiff could not show that his Twitter account suspension claims "arise from or are related to Twitter's presentation of advertisements for New York-based products and services to him (or to anyone else)"); *see also Lopez*, 2017 WL 2229868, at *2, *9 (rejecting specific jurisdiction despite three New York promotional events, as there was "no evidence that these New York connections with unrelated people ha[d] any nexus to" infringement claims).

### c. The mere accessibility of Perplexity's website from New York does not establish specific jurisdiction.

As to Plaintiffs' allegations that Perplexity's search engine is available to users in New York, SAC ¶ 31, these allegations still have no connection to Plaintiffs' claims. As an initial matter, the locations of users of Perplexity's service are irrelevant to Plaintiffs' claims that Perplexity's inputs are infringing, as users are not involved in developing Perplexity's technology or populating the RAG index. As for Plaintiffs' claims relating to specific Perplexity outputs, Plaintiffs do not allege that *any* user in New York has accessed any of Plaintiffs' copyrighted content (or that anyone other than Plaintiffs or their agents has actually elicited an infringing or otherwise objectionable output). At most, Plaintiffs allege vaguely that "the answers and other information that Perplexity sells and delivers to its subscribers and users in this State and District are *in relevant instances* infringements of Plaintiffs' copyrighted works." *Id.* ¶ 42 (emphasis added). But this conclusory allegation is insufficient to establish that any such "relevant instance[]" of alleged infringing or violative outputs has actually occurred in New York. Plaintiffs make no non-conclusory factual allegations that establish that (1) any New York user, (2) has *actually* accessed, (3) allegedly infringing output from Perplexity's search engine—all three of which Plaintiffs must plead to allege specific jurisdiction in New York over their output claims. Without

this critical allegation that a *New York* user *actually* generated an allegedly infringing or violative output, there is no "articulable nexus" between the allegation that Perplexity has users in New York and the claims at issue here. *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, at *4–5 (S.D.N.Y. Dec. 4, 2019) (Failla, J.) (declining to exercise personal jurisdiction based on defendant's receipt of payments in New York or on "the fully interactive portions" of defendant's website because there was "no nexus" with plaintiff's claims).

Without any evidence that a New York user generated output that violated Plaintiffs' rights, Plaintiffs' theory, then, is that simply making an online service available to users across the country, including in New York, is enough to create personal jurisdiction in this District (and, effectively, all districts nationwide). But that is wrong. The Second Circuit has held that a website's mere availability does not establish the requisite nexus. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 253 (2d Cir. 2007). Indeed, Perplexity benefits no more from the laws of New York than from the laws of any other state, so the fact that residents of New York may use Perplexity's services (on the same terms as users anywhere else) does not suffice for jurisdiction. Pham Decl. ¶ 13. That residents of New York *may* interact with Perplexity's search engine does not establish the requisite nexus either. "It stretches the meaning of 'transacting business 'to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred." *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 569–70 (E.D.NY. 2011); *see also Guglielmo v. Nebraska Furniture Mart, Inc.*, 2020 WL 7480619, at *9 (S.D.N.Y. Dec. 18, 2020) (Failla, J.) (similar). For this reason, the mere fact that Perplexity has an interactive, commercial website cannot establish personal jurisdiction. *Rosenberg v. PK Graphics*, 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004); *see*

*also Concord Music Grp., Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973, 988 (M.D. Tenn. 2024) ("It is well-settled that having an interactive [AI] website should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible.") (cleaned up).

### d.    Plaintiffs' alleged copyright and trademark injury in New York does not establish specific jurisdiction.

Finally, Plaintiffs have failed to allege that Perplexity "commit[ted] a tortious act within the state causing injury to person or property within the state." The fact that Plaintiffs reside in New York and allegedly felt the harms of the alleged infringement there is not enough to establish jurisdiction, either under § 302(a)(3) or the Constitution. "It is well-settled that 'residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction' under section 302(a)(3)." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (stating that "[i]t is not the case that any infringement anywhere can be said to . . . harm, beyond the immediate loss of profits, the continuing value of one or more of a copyright holder's bundle of rights," declining to follow *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295 (2011)); *see also Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, 2017 WL 449913, at *6 (S.D.N.Y. Jan. 18, 2017) (similar). Moreover, the Supreme Court has foreclosed any theory of personal jurisdiction based solely on where the plaintiff felt the effects of the challenged conduct. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Accordingly, *Walden* superseded contrary case law that suggested that the copyright or trademark holder's location could form the situs of injury. *See, e.g.*, *Lopez*, 2017 WL 2229868, at *8 n.9 ("[I]t is not at all clear that the pre-2014 internet jurisdiction cases fully survive after the Supreme Court's *Walden* decision.").

13

For all of these reasons, the alleged contacts between New York and Perplexity cannot establish specific jurisdiction. Plaintiffs have identified no particular, relevant business transactions between Perplexity and this forum underpinning their claims. Thus, this Court cannot exercise personal jurisdiction over Perplexity.

### B.    VENUE IN THE SOUTHERN DISTRICT OF NEW YORK IS IMPROPER

Venue in this District is also improper under 28 U.S.C. §§ 1391(b) and 1400(a). *See* SAC ¶ 46. Courts generally treat Section 1400 as the exclusive venue provision governing copyright infringement actions. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*, 571 U.S. 49, 55 n.2 (2013) (noting § 1400 identifies the "proper venue for copyright and patent suits"). Section 1400(a) provides that copyright suits "may be instituted in the district in which the defendant or his agent resides or may be found." A defendant "may be found" where personal jurisdiction is proper. *Boehm v. Zimprich*, 2013 WL 6569788, at *2 (S.D.N.Y. Dec. 13, 2013) (collecting cases). Because Perplexity does not "reside" in New York and personal jurisdiction is lacking, *see supra* Section IV.A.1, venue is not proper under § 1400(a).

Venue is not proper under § 1391's more general provisions either, to the extent they apply. 28 U.S.C. § 1391(b) provides for venue in a district (1) "in which any defendant resides," (2) where "a substantial part of the events or omissions giving rise to the claim occurred," or (3) where personal jurisdiction over any defendant lies if there is no district in which the claim can otherwise be brought. As to the first prong, Perplexity does not "reside[]" in New York. Its principal place of business is in California and it is incorporated in Delaware. SAC ¶ 18; *see* 28 U.S.C. § 1391(c)(2) (entity defendant resides anywhere it is subject to personal jurisdiction). This Court may not exercise personal jurisdiction over Perplexity, as explained above, and there is another district in which Plaintiffs' claims could be brought (the Northern District of California), defeating venue under § 1391(b)'s first and third prongs. *See infra* Section IV.C.1.

That leaves only Section 1391(b)'s second prong. But no "substantial part of the events or omissions giving rise to" Plaintiffs' claims occurred in New York. Plaintiffs' claims turn on two separate sets of facts: Perplexity's development and operation of its RAG search engine on the one hand, and internet users' interaction with that search engine on the other. Neither set of events is, or could be, alleged to have taken place in New York specifically. As to the first set of facts, Perplexity's development of its RAG technology occurred in California, not New York; its servers are in Virginia, not New York; and Perplexity's operations are centralized in and coordinated from California, not New York. As to the second, there is no allegation of any unauthorized use of Plaintiffs' works by any Perplexity user in New York. Without allegations that a New York user elicited infringing outputs, the mere presence of Perplexity end users in New York (and nationwide) is irrelevant to Plaintiffs' infringement claims and does not establish venue under § 1391(b)(2). Similarly, in *Scales v. Web Design Gator*, 2024 WL 68536 (S.D.N.Y. Jan. 2, 2024), the court dismissed for improper venue as to out-of-state defendants where plaintiff alleged only "that the events that are the bases for Plaintiff's claims occurred on the 'internet.'" *Id.* at *3. Here, Plaintiffs have alleged no "substantial . . . events" under § 1391(b)(2) that occurred in this District aside from the mere fact that users can access Perplexity's website "on the 'internet.'" *Id.* This is insufficient to establish proper venue and is grounds for dismissal under Rule 12(b)(3).

## C. ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

Given Plaintiffs' nebulous allegations to support personal jurisdiction and venue here, and the overwhelming nexus between Perplexity's activities in San Francisco and Plaintiffs' allegations, the Court may wish instead to transfer this action to the Northern District of California, which offers a proper forum for addressing the merits of Plaintiffs' claims. Some courts in this District have found it efficient to consider and decide motions to transfer venue without reaching

more complex jurisdictional questions. *See, e.g.*, *Mohamed v. Tesfaye*, 2019 WL 1460401, at *3, *8 (S.D.N.Y. Jan. 24, 2019) (granting motion to transfer instead of ruling on motion to dismiss under 12(b)(2)); *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 260 F. Supp. 3d 401, 408–09 (S.D.N.Y. 2017) (granting motion to transfer before motion to dismiss where it was "apparent that personal jurisdiction would exist" in transferee district). Indeed, "where personal jurisdiction would likely exist in the transferee district over a defendant who contests personal jurisdiction in the Southern District of New York, *it is prudentially appropriate to address venue first* since a decision to transfer would render personal jurisdiction analysis with respect to the Southern District irrelevant." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 742 (S.D.N.Y. 2013) (cleaned up, emphasis added). Because this Court lacks personal jurisdiction, it may transfer this action "to any other court in which the action . . . could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. Alternatively, because venue is improper in the Southern District of New York, the Court may cure that defect by transferring the case "to any district or division in which it could have been brought" instead of dismissing it. 28 U.S.C. § 1406(a). Or, even if this Court finds it has jurisdiction and venue is not improper in this District, the Court should exercise its discretion to transfer the case "for the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Northern District of California is a proper forum for this action, and transfer there is in the interests of justice.

> 1.    **This action could have been brought in the Northern District of California, which is the proper forum**

The first question under any of the venue transfer statutes is whether the action "could" or "might have been brought" in the transferee district. 28 U.S.C. §§ 1404(a), 1406(a), 1631. This analysis asks whether subject matter jurisdiction and personal jurisdiction would have existed, and

whether venue would have been proper, in the proposed transferee court. *AGCS Marine Ins. Co. v. Associated Gas & Oil Co.*, 775 F. Supp. 2d 640, 646 (S.D.N.Y. 2011). The Northern District of California satisfies each requirement.

As to jurisdiction, the Northern District of California has federal-question jurisdiction because Plaintiffs' claims arise under the Copyright and Lanham Acts. *See* SAC ¶¶ 130–68; 28 U.S.C. § 1331.

As to venue, venue is proper in the Northern District of California both under § 1400(a) (because Perplexity "resides" in San Francisco) and under each prong of § 1391(b). Under § 1391(b)(1), the Northern District of California is "a judicial district in which any defendant resides" because Perplexity's principal place of business is located there. SAC ¶ 18. This alone makes the Northern District of California an appropriate venue in which this action might have been brought. *See Enigma Software Grp.*, 260 F. Supp. 3d at 409 (transferring action to proper venue where defendant was headquartered).

Under § 1391(b)(2), the Northern District of California is also a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Plaintiffs' claims about the "inputs" focus on the development of Perplexity's RAG technology and the procurement of data for the RAG index, all of which occurs or is coordinated from Perplexity's San Francisco headquarters. Pham Decl. ¶ 7. And the claims about the search engine's "outputs" are not specific to any jurisdiction, but arise from an internet service that is operated principally from San Francisco. *Id.* Finally, under § 1391(b)(3), the Northern District of California is a "judicial district in which any defendant is subject to the court's personal jurisdiction with respect to this action," since Perplexity's principal place of business is there. Accordingly, because this action "might" or

"could have been brought" in the Northern District of California under any prong of § 1391, the Court may transfer it there under either 28 U.S.C. § 1631 or § 1406(a) without further analysis.

### 2. The interests of justice support transfer to the Northern District of California

In order to transfer this action for convenience under § 1404(a), the Court must further determine whether transfer is in the interests of justice. *Eres N.V. v. Citgo Asphalt Refin. Co.*, 605 F. Supp. 2d 473, 478–79 (S.D.N.Y. 2009). The relevant public and private interest factors include: (1) plaintiff's choice of forum, (2) convenience of witnesses, (3) location of relevant documents and relative ease of access to sources of proof, (4) convenience of parties, (5) locus of operative facts, (6) availability of process to compel witness attendance, and (7) relative means of the parties. *See Atl. Marine*, 571 U.S. at 62–63 & n.6. Here, most factors are either neutral or support transfer to the Northern District of California—including the locus of operative facts, the location of relevant documents and evidence, and the convenience of witnesses—and those factors outweigh Plaintiffs' choice to file in the Southern District of New York.

### a. The locus of operative events for this case is the Northern District of California

Fundamentally, the purpose of a motion to transfer is to ensure a case is heard in the location of "the center of gravity of the litigation." *Viacom Int'l Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991). For that reason, "[t]he location of the operative events is a primary factor in determining a § 1404(a) motion to transfer." *Everlast World's Boxing Headquarters*, 928 F. Supp. 2d at 745 (quoting *Smart v. Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998)). Courts in this District have explained that "[i]t substantially favors transfer from this district when a party 'has not shown that any of the operative facts arose in the Southern District of New York." *Id.* (cleaned up). Indeed, some courts have concluded that the lack of a "material connection between this district and the operative facts" not only favors transfer, but "*require*[*s*]

the transfer of the action." *Enigma Software Grp.*, 260 F. Supp. 3d at 409 (emphasis added); *see Idle Media, Inc. v. Create Music Grp., Inc.*, 2024 WL 5009713, at \*16 (S.D.N.Y. Dec. 6, 2024) (transferring where plaintiffs made only a "cursory assertion" that products were distributed to customers in the District, presenting "little or no connection to New York").

Plaintiffs' SAC confirms that the locus of operative facts is the Northern District of California, and that the Southern District of New York has no material connection to this litigation. Plaintiffs' claims focus on the development of Perplexity's RAG technology, the procurement of material as inputs for the RAG index, and the operation of the search engine, all of which are tied to Perplexity's San Francisco headquarters. Indeed, "[i]n an infringement action, one locus of operative facts is the place where the allegedly-infringing product was designed and developed." *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 697 (S.D.N.Y. 2009). In similar circumstances, courts in this District have easily concluded that transfer was appropriate. *See Smart Skins LLC v. Microsoft Corp.*, 2015 WL 1499843, at \*8 (S.D.N.Y. Mar. 27, 2015) (transferring to Washington, where allegedly infringing products were developed at Microsoft's headquarters); *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 530 (S.D.N.Y. 2004) (transferring where allegedly infringing product was designed and developed in California).

By contrast, Plaintiffs' disparate allegations regarding this District are insufficient to establish a sufficient connection between the Southern District of New York and the facts underlying Plaintiffs' claims. As with nearly all internet platforms and services, the allegation that Perplexity may have users or customers in New York does not establish a special connection to this District different from any other. *See, e.g.*, *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 20 (S.D.N.Y. 2012) ("[M]ere in-district sales are not sufficient to justify a finding that the locus of

19

operative facts is in the initially chosen forum"); *Millenium, L.P. v. Hyland Software, Inc.*, 2003 WL 22928644, at \*6 (S.D.N.Y. Dec. 10, 2003) ("[S]ales to customers in New York and minimal presence in this state" did not render New York the locus of operative facts). Perplexity oversees its marketing and sales efforts from its California headquarters and does not target New York differently or more intensely than any other state. *See supra* Section VI.A.2.b. Crucially, Plaintiffs do not allege that *any* of the examples of alleged infringement they identify in their SAC were elicited in this District by anyone other than Plaintiffs themselves. *See Cartier v. D&D Jewelry Imps.*, 510 F. Supp. 2d 344, 346 (S.D.N.Y. 2007) (transferring where plaintiff itself made the only alleged in-District purchase of the allegedly infringing product and "presented no evidence of other sales to New York citizens"); *Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 467 (S.D.N.Y. 2002) (transferring where there were no allegations of actual confusion by potential customers in the District, so "the eventualities Plaintiff cites [were] too speculative" to render the District the locus of operative facts).

This case has virtually no ties to New York, and extensive ties to California. Thus, this factor requires (or at a minimum, strongly favors) transfer.

### b. Transfer to the Northern District of California would provide more efficient access to key evidence and witnesses

Courts often describe the convenience of witnesses and access to evidence as among the most important considerations when deciding a motion to transfer. *See, e.g.*, *Enigma Software Grp.*, 260 F. Supp. 3d at 409. Here, the location of documents and evidence, along with the convenience and availability of witnesses, all favor the Northern District of California.

First, access to evidence and sources of proof favors the Northern District of California. Relevant documents and data are housed at Perplexity's headquarters in San Francisco, where Perplexity's product is developed and maintained. Pham Decl. ¶ 10. This evidence is relevant to

Plaintiffs' claims of alleged infringement, which are explicitly based on the development of the RAG technology using data held on Perplexity's servers in Virginia, and the outputs that Perplexity's search engine, which is maintained in California, generates for users everywhere. *Id.* ¶ 12. To the extent that documents and evidence are necessary for this case, Perplexity is "likely to produce the bulk of th[at] relevant evidence" because it is "the accused infringer[]." *CYI*, 913 F. Supp. 2d at 24. While some relevant information can likely be reproduced or transferred electronically, this case involves records from complex computer systems and evaluation of AI-based technology, some of which may be difficult or expensive to duplicate or transport, thus burdening Perplexity absent transfer to the Northern District of California. This factor weighs in favor of transfer to the place where the defendant's documents are kept. *See Kaufman v. Salesforce.com, Inc.*, 2021 WL 1687378, at *7 (S.D.N.Y. Apr. 29, 2021) (granting transfer where "the greater bulk of the sources of proof remain more readily accessible in the Northern District of California," including source code); *MasterObjects, Inc. v. Amazon.com, Inc.*, 2020 WL 6075528, at *4 (S.D.N.Y. Oct. 15, 2020) (location of "analytics or computer source code documents" favored transfer).

Second, the convenience of witnesses favors the Northern District of California. The primary witnesses with information about Perplexity and the RAG technology are likely to be Perplexity personnel: those who were involved in the design, development, and sale of Perplexity's product. *See* Pham Decl. ¶¶ 7, 10; *AEC One Stop Grp.*, 326 F. Supp. 2d at 529 (in copyright infringement action, "[t]he key witnesses . . . are those officers and employees who were involved in the design, production, and sale" of allegedly infringing product). It is plainly more convenient for Perplexity's relevant witnesses, most if not all of whom would be based in the Northern District

21

of California, to participate in proceedings there than in the Southern District of New York. *See*

*Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286–87 (S.D.N.Y. 2004).

Third, the availability of process to compel witness attendance also favors the Northern

District of California. As explained, most of the witnesses and documents for this case are likely

to be produced by Perplexity. However, to the extent that other relevant third parties (*e.g.* other AI

companies) are located near Perplexity's headquarters in the Northern District of California,

however, the Court would lack the subpoena power to compel their testimony in New York in the

event those witnesses decline to appear voluntarily. *See, e.g.*, *Dickerson v. Novartis Corp.*, 315

F.R.D. 18, 27–29 (S.D.N.Y. 2016); *see also* Fed. R. Civ. P. 4(c)(A) ("A subpoena may command

a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person

resides, is employed, or regularly transacts business in person . . . .").

In sum, these factors—access to evidence, convenience of witnesses, and availability of

process—favor transfer to the Northern District of California.

### c.    The relative means and convenience of the parties are neutral factors

The relative means and convenience of the parties are not significant considerations here.

This is not a case that involves a better-resourced defendant seeking transfer against a plaintiff of

limited means. *Cf. Dickerson*, 315 F.R.D. at 31 ("Where disparity exists between the parties, such

as an individual plaintiff suing a large corporation, the relative means of the parties may be

considered." (citation omitted)). There is no serious financial burden for Plaintiffs—who are well-

established, sophisticated, legacy media corporations—to litigate this case in the Northern District

of California. *See Smart Skins*, 2015 WL 1499843, at *8–9 ("Microsoft is a large corporation and

is undoubtedly able to litigate a case—even a complex patent infringement case—in this district

without suffering meaningful hardship."); *Bionx Implants, Inc. v. Biomet, Inc*, 1999 WL 342306,

at *5 (S.D.N.Y. May 27, 1999) ("[T]his factor is not entitled to great weight when both parties are corporations."). If any party is at a disadvantage with respect to its relative means, it is Perplexity, which—while it enjoys a high valuation based on market excitement for its innovative technology—is still an early-stage startup with limited resources for cross-country litigation. "It is clear that as between the two parties," Plaintiffs "could better afford to put on [their] case in California than [Defendant] could afford to defend [its] case in New York," which favors transfer. *Cartier*, 510 F. Supp. 2d at 347.

Likewise, the convenience of the parties is, at best, a wash in these circumstances. The Northern District of California would certainly be more convenient than the Southern District of New York for Perplexity and its witnesses, and Plaintiffs have sufficient resources to not be overly burdened by a trial in the Northern District of California. *See Intria Corp. v. Intira Corp.*, 2000 WL 1745043, at *4–5 (S.D.N.Y. Nov. 27, 2000) (factor weighed toward transfer where transfer was "not substantially disadvantageous to plaintiff"). In light of the other considerations above— the locus of operative facts and the access to evidence and witnesses—convenience does not counsel against transfer. *See Smart Skins*, 2015 WL 1499843, at *10 (giving this factor little attention where one party "would find it more convenient to litigate in Washington" while the other "would find it convenient to litigate in New York").

### d.   Plaintiffs' choice of forum is entitled to little weight and outweighed by other factors

On their side of the scale is Plaintiffs' choice of this forum. But "the importance of the plaintiff's choice of forum measurably diminishes" if "the operative facts have few meaningful connections to the plaintiff's chosen forum." *Harris v. Brody*, 476 F. Supp. 2d 405, 406 (S.D.N.Y. 2007); *Smart Skins*, 2015 WL 1499843, at *5. As explained above, this district has no meaningful connection to this case, which has its locus of operative facts in the Northern District of California.

*See supra* Section IV.C.2.a. Plaintiffs have alleged *no* instances of any user in New York generating any allegedly infringing output. Even if Plaintiffs or their agents generated the allegedly infringing outputs cited in the SAC while using Perplexity's search engine in New York, Plaintiffs' choice of forum is "entitled to considerably less deference where the minimal connection to this district was generated by [Plaintiffs themselves]." *Cartier*, 510 F. Supp. 2d at 348. These facts compel the conclusion that "plaintiffs' choice of forum is entitled to little deference" here. *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006) (cleaned up).

> **e.    Plaintiffs already agreed to litigate in the Northern District of California**

Finally, the forum-selection clause in Perplexity's terms of service favors transfer, because Plaintiffs accepted Perplexity's terms and thereby agreed to file any intellectual property suit arising out of their use of Perplexity's service in a court in San Francisco, California. To plead their output claims, Plaintiffs or their agents used Perplexity's service to generate the output examples cited in the SAC; Plaintiffs have alleged no other instances of infringing outputs generated by any users, let alone users in New York. Plaintiffs' output claims, then, are inextricably premised on Plaintiffs' own access and use of Perplexity's search engine. So by accessing and using the service specifically to induce outputs to establish their output claims,[2] Plaintiffs accepted the Terms of Service, which state that the proper venue for any non-arbitrable disputes, including intellectual property claims, will be "the state and federal courts located in San Francisco, California." Kao Decl. Ex. K, §§ 9.4, 10.7. This makes the Northern District of California the exclusive federal forum for intellectual property claims arising from Plaintiffs' use

---

[2] This is distinguishable from their use of Perplexity's search engine for purposes of investigating their *input* claims, which are based on Perplexity's alleged conduct in California independent of Plaintiffs' investigation.

of the service, such as the copyright claims premised on allegedly infringing outputs that Plaintiffs induced.

A "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 59–60 (citation omitted). When there is a valid forum-selection clause, a "plaintiff's choice of forum merits no weight. Rather, as a party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *LVAR, L.P. v. Bermuda Comm. Bank Ltd.*, 649 F. App'x 25, 27 (2d Cir. 2016) (quoting *Atl. Marine*, 571 U.S. at 63). Here, Plaintiffs allege no extraordinary reason to give their belated choice of the Southern District of New York greater weight than their previous consent to litigate in the Northern District of California. The contractually binding forum-selection clause supports transfer to the Northern District of California.

### D.    PLAINTIFFS' INFRINGEMENT CLAIMS AS TO UNTIMELY REGISTERED WORKS SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)

Separately from its jurisdictional and venue-related defects, the SAC includes infringement allegations regarding ten copyrighted works for which Plaintiffs failed the statutory prerequisite of timely registration prior to filing this lawsuit. 17 U.S.C. § 411(a). Because that is a defect that cannot be cured by amendment, Plaintiffs fail to state a plausible claim of copyright infringement as to those ten works, and they should be dismissed from this action.

Section 411(a) provides that no action for copyright infringement "shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." In *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, the Supreme Court resolved a circuit split to hold that "registration" occurs, and a claimant may institute an infringement suit, only when the claimant has received the U.S. Copyright Office's decision on its application—not

when that application is first made. 586 U.S. 296, 302–04 (2019). Subsequently, most district courts to consider the issue have held that *Fourth Estate* bars plaintiffs from amending a complaint to include claims for works that the Copyright Office had not registered before the initial complaint was filed. *See, e.g.*, *Malibu Media, LLC v. Doe*, 2019 WL 1454317, at *2–3 (S.D.N.Y. Apr. 2, 2019) (dismissing amended complaint where court could "infer that the Copyright Office completed registration of Plaintiffs' copyrights before the *Amended* Complaint was filed" but could "not do the same with respect to the original Complaint"); *see also Roblox Corp. v. WowWee Grp. Ltd.*, 660 F. Supp. 3d 880, 890 (N.D. Cal. Mar. 9, 2023) ("[A]gree[ing] with other courts in this district that permitting plaintiffs to cure their failure to register the copyright before suing would undermine *Fourth Estate*" and dismissing claims for infringement of copyrights registered "after plaintiffs filed the initial complaint but before they filed the FAC"); *Deetsch v. Lei*, 2023 WL 6373073, at *9 (S.D. Cal. July 21, 2023) (collecting cases). This rule promotes the "objectives animating the Supreme Court's decision in *Fourth Estate*," *Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019), and avoids the impracticability and inequity that would result if a plaintiff could amend over and over to add works that were unregistered at the time of suit, each time relating those new infringement claims back to the original filing date.

For the reasons articulated in those post-*Fourth Estate* cases, the Court should dismiss Plaintiffs' claims regarding the ten registered works they added to the First Amended Complaint on December 11, 2024. *See* Dkt. 36-3 (adding TX 9-442-680, TX 9-436-972, TX 9-445-492, TX 9-447-215, and TX 9-444-230); Dkt. 36-4 (adding TX 9-438-369, TX 9-442-675, TX 9-447-687, TX 9-444-348, and TX 9-445-592). Plaintiffs do not allege that they obtained registration decisions from the Copyright Office as to those ten works before they filed the initial complaint on October 21, 2024, and this Court can take judicial notice of the fact that they had not. *See* Defendant's

Request for Judicial Notice; Kao Decl. Exs. A–J. Because the Office had not acted on those registrations when the suit was instituted, Plaintiffs as a matter of law could not include them in their original complaint. *See Fourth Estate*, 586 U.S. at 302–04. Nor could Plaintiffs correct that defect and add the newly registered works by amending their complaint, because section 411(a)'s registration requirement is tied to when the "action" is "instituted"—not when an amended complaint is filed. *Malibu Media*, 2019 WL 1454317, at *3; *Roblox*, 660 F. Supp. 3d at 890. The only way Plaintiffs could assert infringement claims against Perplexity for these ten works is by filing a new lawsuit (as they could do in the Northern District of California if this Court dismisses this action for want of personal jurisdiction or improper venue).

## V.    CONCLUSION

For all of these reasons, the Court should dismiss Plaintiffs' case for lack of personal jurisdiction or improper venue or, in the alternative, transfer it to the Northern District of California. The Court should also dismiss Plaintiffs' claims related to the ten works that were not registered when they instituted this action.

Dated:  February 18, 2025

Respectfully submitted,

By:  /s/ *James L. Day*
Cameron J. Gibbs
James L. Day (admitted *pro hac vice*)
Eugene Y. Mar (admitted *pro hac vice*)
Michelle Kao (admitted *pro hac vice*)
**FARELLA BRAUN + MARTEL LLP**
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
cgibbs@fbm.com
jday@fbm.com
emar@fbm.com
mkao@fbm.com

*Attorneys for Defendant Perplexity AI, Inc.*

**CERTIFICATION OF WORD COUNT**

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Rule 4.B of the Court's Individual Rules and Procedures for Civil Cases because it contains 8,716 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count. This memorandum of law also complies with the applicable formatting rules because it has been prepared in 12-point font and all text is double-spaced.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.


Dated:  February 18, 2025                    */s/ James L. Day* _____
                                              James L. Day