# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DOW JONES & COMPANY, INC.
and NYP HOLDINGS, INC.,

                    Plaintiffs,

      v.

PERPLEXITY AI, INC.,

                    Defendant.

Civil Action No. 1:24-cv-07984-KPF

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

William P. Barr
Paul T. Cappuccio
    *Counsel of Record*
Justin M. Romeo
Brett D. Katz
Genevieve M. Kelly
TORRIDON LAW PLLC
801 Seventeenth Street NW, Suite 1100
Washington, DC 20006
Tel:  (202) 249-6900

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 4

I.  The Court Has Personal Jurisdiction Over Defendant ...................................................... 4

    A.  New York's Long-Arm Statute Authorizes the Exercise of Personal Jurisdiction Over Defendant ................................................................................. 5

        1.  C.P.L.R. § 302(a)(1) – Plaintiffs' Claims Arise Out of the Business Perplexity Transacts in New York ............................................................... 5

        2.  C.P.L.R. § 302(a)(3) – Perplexity Has Committed a Tort Outside of New York that Has Caused Harm in this Forum ...................................... 16

    B.  The Court's Exercise of Personal Jurisdiction Comports with Due Process ........ 18

II.  This District Is The Proper Venue And Appropriate Forum ........................................... 19

    A.  Venue Is Proper in this District ................................................................... 19

    B.  There Is No Basis for a Convenience Transfer ................................................ 20

    C.  Perplexity's Terms of Service Are Irrelevant ................................................. 23

III.  There Is No Basis To Dismiss The Ten Additional Copyright Registrations.................. 25

CONCLUSION .................................................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1-800-Flowers.com, Inc. v. Flowers LLC*,
 2012 WL 13109931 (E.D.N.Y. Aug. 17, 2012) ..................................................................... 11

*Albright v. Terraform Labs, Pte. Ltd.*,
 641 F. Supp. 3d 48 (S.D.N.Y. 2022) .................................................................................. 22

*Am. Girl, LLC v. Zembrka*,
 118 F.4th 271 (2d Cir. 2024) ............................................................................................... 5

*Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*,
 474 F. Supp. 2d 474 (S.D.N.Y. 2007) ................................................................................ 23

*Atlantic Recording Corp. v. Project Playlist, Inc.*,
 603 F. Supp. 2d 690 (S.D.N.Y. 2009) ................................................................................ 22

*Camacho v. Vanderbilt Univ.*,
 2019 WL 6528974 (S.D.N.Y. Dec. 4, 2019) ........................................................................ 8

*Capitol Recs., LLC v. VideoEgg, Inc.*,
 611 F. Supp. 2d 349 (S.D.N.Y. 2009) ................................................................................ 13

*Cavu Releasing, LLC v. Fries*,
 419 F. Supp. 2d 388 (S.D.N.Y. 2005) ................................................................................ 19

*Chloe v. Queen Bee of Beverly Hills, LLC*,
 616 F.3d 158 (2d Cir. 2010) ..................................................................................... 3, 7, 11

*Clean Coal Techs., Inc. v. Leidos, Inc.*,
 2019 WL 5960202 (S.D.N.Y. Nov. 13, 2019) ..................................................................... 16

*Corley v. Vance*,
 365 F. Supp. 3d 407 (S.D.N.Y. 2019) .................................................................................. 5

*Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*,
 2024 WL 1533189 (S.D.N.Y. Apr. 8, 2024) ....................................................................... 16

*Deetsch v. Lei*,
 2023 WL 6373073 (S.D. Cal. July 21, 2023) ...................................................................... 27

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
 722 F.3d 81 (2d Cir. 2013) .................................................................................................. 5

*Energy Brands Inc. v. Spiritual Brands, Inc.*,
 571 F. Supp. 2d 458 (S.D.N.Y. 2008) ................................................................................ 16

*ESPN, Inc. v. Quiksilver, Inc.*,
 581 F. Supp. 2d 542 (S.D.N.Y. 2008) ........................................................................... 20, 22

*Flood v. Carlson Restaurants Inc.*,
 94 F. Supp. 3d 572 (S.D.N.Y. 2015) .................................................................................. 21

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
　592 U.S. 351 (2021) ................................................................................................ 18

*Fourth Estate Public Benefit Corporation v. Wall-Street.com, LLC*,
　586 U.S. 296 (2019) ................................................................................................ 25

*Freeplay Music, LLC v. Gibson Brands, Inc.*,
　195 F. Supp. 3d 613 (S.D.N.Y. 2016) ..................................................................... 20

*Garnish & Gather, LLC v. Target Corp.*,
　2019 WL 6729152 (S.D.N.Y. Dec. 11, 2019) ......................................................... 20

*Gross v. BBC*,
　386 F.3d 224 (2d Cir. 2004) .................................................................................... 20

*Guidi v. Inter-Continental Hotels Corp.*,
　224 F.3d 142 (2d Cir. 2000) .................................................................................... 20

*International Shoe Co. v. Washington*,
　326 U.S. 310 (1945) ................................................................................................ 18

*Izmo, Inc. v. Roadster, Inc.*,
　2019 WL 2359228 (N.D. Cal. June 4, 2019) .......................................................... 27

*Kiss My Face Corp. v. Bunting*,
　2003 WL 22244587 (S.D.N.Y. Sept. 30, 2003) ...................................................... 22

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
　737 F.3d 161 (2d Cir. 2013) .................................................................................... 16

*Licci v. Lebanese Canadian Bank, SAL*,
　673 F.3d 50 (2d Cir. 2012) ...................................................................................... 19

*Lickerish Ltd. v. Maven Coal., Inc.*,
　2021 WL 3494638 (C.D. Cal. Jan. 29, 2021) .......................................................... 27

*MacDermid, Inc. v. Deiter*,
　702 F.3d 725 (2d Cir. 2012) ...................................................................................... 5

*Malibu Media, LLC v. Baker*,
　2020 WL 3978302 (S.D.N.Y. June 18, 2020) ......................................................... 26

*Malibu Media, LLC v. Doe*,
　2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019) ........................................................... 27

*Mattel, Inc. v. Adventure Apparel*,
　2001 WL 286728 (S.D.N.Y. Mar. 22, 2001) ........................................................... 11

*Miller v. Netventure24 LLC*,
　2021 WL 3934262 (S.D.N.Y. Aug. 6, 2021) ....................................................... 9, 17

*Mrs. U.S. Nat. Pageant, Inc. v. Miss U.S. Org.*, LLC,
　875 F. Supp. 2d 211 (W.D.N.Y. 2012) ............................................................. 11, 13

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
　599 F.3d 102 (2d Cir. 2010) ................................................................................ 19, 20

*Pecorino v. Vutec Corp.*,
   934 F. Supp. 2d 422 (E.D.N.Y. 2012) ............................................................ 21

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
   946 N.E.2d 159 (N.Y. 2011) ............................................................................ 16

*Peterson v. Bank Markazi*,
   121 F.4th 983 (2d Cir. 2024) ................................................................... passim

*Philips N. Am. LLC v. KPI Healthcare, Inc.*,
   2020 WL 3032765 (C.D. Cal. Jan. 24, 2020) ................................................ 27

*Phillips v. Audio Active Ltd.*,
   494 F.3d 378 (2d Cir. 2007) ........................................................................... 24

*Pollux Holding, Ltd. v. Chase Manhattan Bank*,
   329 F.3d 64 (2d Cir. 2003) ............................................................................. 20

*Roblox Corp. v. WowWee Grp. Ltd.*,
   660 F. Supp. 3d 880 (N.D. Cal. 2023) ........................................................... 27

*Romero v. 88 Acres Foods, Inc.*,
   580 F. Supp. 3d 9 (S.D.N.Y. 2022) ............................................................... 10

*Seiden v. Baker Tilly Hong Kong Ltd.*,
   2024 WL 4441582 (2d Cir. Oct. 8, 2024) ........................................................ 4

*Sholopa v. Turk Hava Yollari A.O., Inc.*,
   595 F. Supp. 3d 257 (S.D.N.Y. 2022) ........................................................... 24

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
   277 F. Supp. 3d 521 (S.D.N.Y. 2017) ........................................................... 17

*Spetner v. Palestine Inv. Bank*,
   70 F.4th 632 (2d Cir. 2023) .............................................................................. 5

*Thomas Pub. Co. v. Indus. Quick Search, Inc.*,
   237 F. Supp. 2d 489 (S.D.N.Y. 2002) ........................................................... 10

*Troma Ent., Inc. v. Centennial Pictures Inc.*,
   729 F.3d 215 (2d Cir. 2013) ..................................................................... 16, 17

*Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*,
   2019 WL 6034116 (N.D. Ill. Nov. 14, 2019) ................................................ 26

*Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York*,
   2020 WL 4194729 (S.D.N.Y. July 21, 2020) ................................................ 23

*Walden v. Fiore*,
   571 U.S. 277 (2014) ........................................................................................ 17

*Winter v. Am. Inst. of Med. Sci. & Edu.*,
   242 F. Supp. 3d 206 (S.D.N.Y. 2017) ........................................................... 20

*WowWee Grp. Ltd. v. Meirly*,
   2019 WL 1375470 (S.D.N.Y. Mar. 27, 2019) ............................... 11, 12, 13, 14

**Statutes**

17 U.S.C. § 411(a) ................................................................................................ 26, 27

28 U.S.C. § 1391 ......................................................................................................... 20

28 U.S.C. § 1400(a) .................................................................................................... 20

28 U.S.C. § 1404 ................................................................................................... 19, 20

**Other Authorities**

*AI Startup Perplexity Closes Funding Round at $9 Billion Value*,
    Bloomberg (Dec. 18, 2024),
    https://www.bloomberg.com/news/articles/2024-12-18/
    ai-startup-perplexity-closes-funding-round-at-9-billion-value. ............................... 19

C.P.L.R. § 302(a) ......................................................................................................... 4

C.P.L.R. § 302(a)(1) ............................................................................................. 5, 8, 11

C.P.L.R. § 302(a)(2) .................................................................................................... 16

Fed. R. Civ. P. 12(b)(2) ................................................................................................. 5

Plaintiffs Dow Jones & Company, Inc. ("Dow Jones") and NYP Holdings, Inc. ("NYP Holdings") (together, "Plaintiffs") submit this Memorandum of Law in Opposition to Defendant Perplexity AI, Inc.'s ("Perplexity" or "Defendant") Motion to Dismiss or, in the Alternative, to Transfer Venue ("Motion"), ECF 47. For the reasons set forth herein, Defendant's Motion should be denied in its entirety.

## PRELIMINARY STATEMENT

Perplexity, a company that operates a highly interactive website that sells infringing materials to people in New York, transacts business with users, subscribers, and advertisers in New York, employs a growing team of business and technical personnel, website designers, and campus promoters in New York, rents and maintains office space in New York, has its Chief Strategy Officer in New York, promoted a billboard in New York, is registered to do business in New York, and has engaged in a tort that caused harm in New York, now seeks to persuade this Court that it is not subject to the personal jurisdiction of a federal court in New York. Perplexity is wrong.

Perplexity operates a highly interactive website and mobile application through which it sells and delivers to users and subscribers in New York "answers" that are often nothing more than repackaged infringements of copyrighted works including from *The Wall Street Journal*, the *New York Post*, and other publications. Using its website and mobile application to sell and deliver its products—the "answers"—Perplexity generates revenues from advertising and from selling subscriptions to its users in New York. At the same time, Perplexity deprives publishers—including Plaintiffs, who publish *The Wall Street Journal* and the *New York Post*—of revenue as Perplexity promotes its products as a way for users to "Skip the Links" to the publishers' websites, meaning that users do not have to click-through to Plaintiffs' own webpages.

As described in detail in the Second Amended Complaint, ECF 46 ("SAC"), through these actions of marketing and operating its generative AI products and sale of infringing "answers"

through its highly interactive website and mobile application to individual users and enterprise customers in New York, Perplexity plainly "transacts business" in New York and causes injuries to Plaintiffs in New York.  Indeed, Perplexity does not, because it cannot, affirmatively deny Plaintiffs' jurisdictional allegations that: (1) Perplexity conducts business in New York, *see, e.g.*, SAC ¶¶ 22–28, 41–42; and (2) Perplexity has a substantial number of customers in New York that use its products and receive answers in New York that Plaintiffs allege are infringing, *see, e.g.*, *id.* ¶¶ 41–42.  Perplexity has submitted no declaration denying these allegations, nor could it do so in good faith.  Accordingly, the Court must accept as true the allegations that Perplexity transacts business in New York with New York customers who receive answers that Plaintiffs allege are infringing.

Moreover, Plaintiffs' claims plainly bear a sufficient nexus to the business that Perplexity transacts in New York.  The SAC alleges that the answers sold by Perplexity's highly interactive website and mobile application to Perplexity customers in New York infringe Plaintiffs' copyrights and dilute Plaintiffs' trademarks.  *Id.* ¶ 42.  Those claims bear a direct relationship to the business that Perplexity transacts in New York, and, in any event, surely are not "completely unmoored" from that business activity.  *Peterson v. Bank Markazi*, 121 F.4th 983, 1004 (2d Cir. 2024) (cleaned up).  As a result, under binding precedent, Perplexity is subject to this Court's personal jurisdiction.

Unable to deny that Perplexity's sales and other business operations occur in New York, Perplexity attempts two sleights-of-hand.  <u>First</u>, it attempts to narrow the scope of Plaintiffs' claims by, for example, divorcing the act of creating a RAG database from the purpose and use of that database: to sell a competing product.  Perplexity points to the fact that *some* aspects of its process of infringing Plaintiffs' copyrights purportedly occur outside of New York.  But under controlling

law, that by no means (even if true)[1] deprives this Court of personal jurisdiction over Defendant. What matters is what happens *in* New York—and Perplexity is clearly transacting business in New York through its highly interactive website.  Second, Perplexity distorts the legal standard and suggests that to be considered for purposes of personal jurisdiction, each of Perplexity's many New York business activities must have a stringent causal nexus to an alleged act of infringement. That is not the law.  Once it is established that a defendant transacts business in New York, governing caselaw requires only that a plaintiff's claims "not be completely unmoored from the defendant's New York business activity."  *Id.* (cleaned up).

Perplexity's defense is no more persuasive than it would have been if the supplier of allegedly counterfeit handbags in *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010), had resisted jurisdiction on the basis that the handbags that it sold and delivered to customers in New York were manufactured in part elsewhere.  Perplexity's central defense to jurisdiction—the notion that its infringing "goods" are *primarily* produced elsewhere—is simply not part of the relevant analysis.  Instead, what matters for personal jurisdiction is that Perplexity's infringing products are advertised to, sold to, and delivered to customers in New York through a highly interactive website that initiates and completes the transaction.  Under New York's long-arm statute, controlling case law, and the Due Process Clause, that is more than sufficient to subject Perplexity to personal jurisdiction in New York.

Just as Perplexity's significant business activities in New York make it fitting to exercise personal jurisdiction here, so too do those activities make venue in this Court wholly appropriate. Perplexity has chosen to do business in New York, to locate executives in New York, to infringe

---

[1]    Even that assertion would need to be tested by discovery of information only Perplexity possesses.

the copyright of companies based in New York, to market and promote its infringing products in New York, and to operate an office in New York that is one express subway stop away from 40 Foley Square.  Under these facts, neither the convenience of the parties nor the interests of justice favor disturbing Plaintiffs' choice of forum.  There could hardly be a more appropriate forum for Perplexity to face suit than the Southern District of New York.

Finally, Perplexity's request that the Court dismiss from this action ten copyright registrations, on a supposed technicality, fails.  Perplexity argues that those ten copyright registrations may *never* be added to this action by amendment unless the registrations were perfected before the *original* Complaint was filed.  But that argument is contrary to the prevailing case law.  Here, the small number of additional registrations were perfected *before* Plaintiffs ever asserted violations based on those ten registrations.  That is all that matters.

Accordingly, Plaintiffs respectfully submit that the Motion should be denied.

## ARGUMENT

## I.    THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT.

Defendant moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss Plaintiffs' SAC for lack of personal jurisdiction.  *See* Def.'s Mem. 8–14.  Its arguments lack merit, misdescribe Plaintiffs' claims, misstate Plaintiffs' burden, and should be rejected.

As Plaintiffs' allegations show, this Court has personal jurisdiction over Perplexity pursuant to New York's long-arm statute, C.P.L.R. § 302(a), and its exercise of personal jurisdiction comports with the Due Process Clause of the U.S. Constitution.  In responding to a Rule 12(b)(2) motion, plaintiffs "need only make a *prima facie* showing of personal jurisdiction[,]" *Seiden v. Baker Tilly Hong Kong Ltd.*, 2024 WL 4441582, at *1 (2d Cir. Oct. 8, 2024), and the Court, in considering a Rule 12(b)(2) motion, must "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor," *Dorchester Fin. Sec., Inc. v.*

*Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (citation omitted).  Further, "to the extent [plaintiff's allegations] are uncontroverted by the defendant's affidavits" they "must be taken as true."  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted).

> **A.    New York's Long-Arm Statute Authorizes the Exercise of Personal Jurisdiction Over Defendant.**

Under at least each of N.Y. C.P.L.R. § 302(a)(1), (a)(2), and (a)(3), this Court may exercise personal jurisdiction over Defendant.

> **1.    C.P.L.R. § 302(a)(1) – Plaintiffs' Claims Arise Out of the Business Perplexity Transacts in New York.**

Section 302(a)(1) permits the exercise of jurisdiction where a defendant has "transacted business" in the state and plaintiffs' "claims . . . arise from th[ose] transactions."  *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 277 (2d Cir. 2024) (citation omitted).  "Transacting business," "means purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (cleaned up).  The "transacts business" prong is a "low threshold," which "may be satisfied by a single act within New York."  *Corley v. Vance*, 365 F. Supp. 3d 407, 434 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020).

The second prong requires only some "articulable nexus or a substantial relationship between transactions occurring within the state and the cause of action sued upon."  *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 643 (2d Cir. 2023) (citation omitted).  This "relatively permissive" analysis "is to be made in light of all the circumstances, and only requires that the legal claim not be completely unmoored from the defendant's New York business activity." *Peterson*, 121 F.4th at 1004 (cleaned up).  Both prongs are easily satisfied.

### a.    Defendant Regularly Transacts Business in New York.

The SAC alleges that Defendant regularly and extensively transacts business in New York through its highly interactive[2] website and mobile application that sell and deliver to users and subscribers in New York infringing "answers." *See, e.g.*, SAC ¶¶ 28, 31–33.  The SAC further alleges that Perplexity's website and mobile application generate substantial revenues for Perplexity from its New York users and subscribers, in the form of advertising revenue opportunities and subscription fees for Perplexity Pro, and that Perplexity has enterprise customers in New York that pay to access Perplexity's Application Programming Interface ("API").  *Id.* ¶¶ 35–37, 41.  Purely and simply, Defendant's transaction of business in New York with New York users and subscribers through its highly interactive website easily *itself and without more* satisfies the "transacting business" prong of the Section 302(a)(1) jurisdictional requirement.

But there is more.  Plaintiffs allege a number of additional ways that Defendant purposely avails itself of the privilege of transacting business in New York, including that:

- Defendant is registered to do business in New York, SAC ¶ 22;

- Defendant has, at and since the time of the filing of Plaintiffs' Initial Complaint, employed individuals in New York, including its Co-Founder and Chief Strategy Officer (who has publicly touted the benefits to Perplexity of his working out of New York), each of whom in some way or another supports Perplexity's core business of operating a website, mobile application, and enterprise API, *id.* ¶¶ 24–29;

- Perplexity maintains a career page on its website that advertises to prospective employees that Perplexity has offices, among other places, in "New York City," and that "unless otherwise noted," positions can be based in "SF, NYC or Austin," and continues to hire additional employees in New York, *id.* ¶ 27;

- In addition to its full-time employees, Perplexity recruits and maintains a network of "Campus Strategists" at New York colleges and universities to, among other things, "[l]ead growth and marketing on campus" in New York, for which they can

---

[2]    Perplexity does not dispute the allegation that its website is *highly* interactive.  *See* SAC ¶ 33.

"[a]pply for marketing budgets to run [their] own campus activities" in New York, and who are provided a free Perplexity Pro account, *id.* ¶ 30;

- Perplexity actively promotes, advertises, and markets its infringing products and services in New York and this District, *id.* ¶¶ 38–40; and

- Perplexity contracts with a landlord to provide office space located in this District for its New York employees, *id.* ¶ 23.

Every one of these activities supports Perplexity's core product: a highly interactive website that sells "answers" to customers and premium subscribers, and is relevant to the jurisdictional analysis, *see Chloe*, 616 F.3d at 166. These allegations "are uncontroverted by the defendant's affidavits," and so they "must be taken as true." *MacDermid*, 702 F.3d at 727 (citation omitted). Given the "low threshold" for transacting business in New York, the first prong of the Section 302(a)(1) analysis is easily met here.

### b. Plaintiffs' Three Causes of Action Relate to Perplexity's Sale of "Answers" that Infringe Plaintiffs' Intellectual Property.

The allegations of the SAC also easily satisfy the nexus standard. Each of Plaintiffs' three causes of action relate directly and substantially to Perplexity's sale of "answers" to users, subscribers, and enterprise customers in New York through its highly interactive website, mobile application, and API. Plaintiffs allege that Defendant, through these products, sells to customers in New York infringing reproductions of Plaintiffs' copyrighted works (sometimes also including trademark-harming hallucinations) as well as "answers" that are the product of infringing copies of Plaintiffs' works that Perplexity makes without authorization and then uses as inputs into LLMs. SAC ¶¶ 5, 8, 28, 42. Defendants advertise that these infringing copies, summaries, and/or derivatives allow users to "Skip the Links," to publishers' webpages, *id.* ¶¶ 1, 4, 44, and therefore serve as substitutes for Plaintiffs' copyrighted works. Moreover, the SAC alleges that Perplexity's New York employees "develop and support the operation of the web-based and mobile application technology that Perplexity uses to sell and otherwise provide answers and/or information to

customers in New York . . . ." *Id.* ¶ 25. These claims certainly have an "articulable nexus" to Perplexity's business activity in New York, and are not "completely unmoored from [Perplexity's] New York business activity." *Peterson*, 121 F.4th at 1004 (cleaned up).

The only authority Defendant cites for its assertion that "there is no 'articulable' nexus" between Defendant's New York business and Plaintiffs' claims is this Court's decision in *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974 (S.D.N.Y. Dec. 4, 2019). *Camacho* does not support Perplexity's argument. This Court held in *Camacho* that Vanderbilt University's *acceptance of tuition payments* from New Yorkers did not support jurisdiction over plaintiff's claims because tuition payments simply had nothing to do with plaintiff's claims. *See* 2019 WL 6528974, at *4. Yet, *other aspects* of Vanderbilt's website *were* related to plaintiff's claims and *did* subject Vanderbilt to jurisdiction. *Id.* at *4–5. The plaintiff made a *prima facie* showing of Section 302(a)(1) jurisdiction by alleging, as Plaintiffs do here, that defendant "utiliz[ed] [its] website" to "market[] and solicit[] prospective [customers] in New York." *Id.* at *6 (citation omitted). Thus, far from supporting dismissal, *Camacho* confirms that the Court may exercise personal jurisdiction over Defendant.

Similarly, the Declaration of Liane Pham, ECF 49, does not cast doubt on the "articulable nexus" between Plaintiffs' claims and Perplexity's New York business. Instead, it substantiates many of Plaintiffs' core jurisdictional allegations. For example, the Pham Declaration confirms that Perplexity has a number of high-ranking employees stationed in New York, including its Chief Strategy Officer, Founding Sales Lead, and General Manager of Finance. *Id.* ¶ 6. While Pham asserts (based only upon her "understanding") that "the development of Perplexity's search engine technology" is "primarily performed and overseen by Perplexity employees in California," *id.* ¶ 7, it does **not** assert that **none** of the "development and maintenance" of the technology occurs in

New York.  But more fundamentally, Pham candidly **concedes** that "the engineers located in New York are largely responsible for back-end infrastructure—for example, **maintaining Perplexity's website**." *Id.* ¶ 11 (emphasis added).  Of course, each of Plaintiffs' three claims relates directly to Perplexity's core business of selling "answers" on its website or mobile application that either are reproductions or detailed summaries of Plaintiffs' copyrighted works, are the product of illegal wholesale copying of Plaintiffs' copyrighted works, or harm Plaintiffs' trademarks. *See, e.g.*, SAC ¶¶ 34–37, 42, 130–68.

The Declaration also confirms explicitly that Perplexity rents office space in Manhattan at 215 Park Avenue South, Pham Decl. ¶ 8, which is a single stop on the Lexington Avenue Express train from the Courthouse, for up to 20 Perplexity employees, *id*.  What's more, far from denying that Perplexity markets to New Yorkers, Pham instead asserts that Perplexity has not marketed "specifically or differently" to users in New York, "or targeted users in New York." *Id.* ¶ 13.  As an initial matter, there is no foundation for the implication that Perplexity must advertise "differently" to New York users in order for its marketing activities to be relevant.  Moreover, the Declaration strains credulity to assert that Perplexity has not "targeted users in New York." *Id.* Perplexity has a New York-specific page titled "Discover New York with Perplexity," and "recruits and maintains a network of "Campus Strategists" to "[l]ead growth and marketing on [New York] campus[es]." SAC ¶¶ 30, 38,[3] *see Miller v. Netventure24 LLC*, 2021 WL 3934262, at *4 (S.D.N.Y. Aug. 6, 2021) (finding targeting where website "ran articles focusing on people and events in New York City").

---

[3]    Perplexity attempts to explain away its "Discover New York" page with an unsupported assertion in its Memorandum that this webpage is "targeted at out-of-town visitors." Def.'s Mem. 10.  But again, even if that were true, Perplexity provides no foundation for the implication that, in order for its marketing activities to be relevant, they must target domiciliaries.

At bottom, rather than defeat Plaintiffs' allegations that Perplexity transacts business in New York that is related to Plaintiffs' claims in this case, the Pham Declaration supports and effectively confirms them.

### c.    Each of Defendant's Attempts to Muddle the Issues Fails.

Notwithstanding the straightforward application of Section 302(a)(1), in a number of different ways, Defendant does its best to try to muddle the issues up and distract from governing principles of personal jurisdiction.

### i.    *Perplexity's Website Is Highly Interactive.*

Defendant first argues that "[t]he mere accessibility of Perplexity's website from New York does not establish specific jurisdiction." Def.'s Mem. 11. But Perplexity's website is not a "passive" website that merely advertises or describes Perplexity's business. It is the **core** of Perplexity's business, the mechanism through which it sells its infringing products, and how it generates basic advertising-based revenue opportunities. SAC ¶ 35. It is also the mechanism by which Perplexity (i) sells premium subscription memberships to its enhanced product and processes payments from New York users, *id.* ¶ 36; (ii) solicits and accepts applications for New York-based employees and Campus Strategists, *id.* ¶¶ 27, 30; and (iii) provides AI applications to businesses via its API, *id.* ¶ 37.

Courts repeatedly find that "[f]ully interactive websites," like Perplexity's, "over which a seller knowingly transmits goods or services to users, are sufficient to confer personal jurisdiction pursuant to New York's long-arm statute." *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 15 (S.D.N.Y. 2022); *see Thomas Pub. Co. v. Indus. Quick Search, Inc.*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002) ("If [defendant] wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [it] to personal jurisdiction here."); *see also Chloe*, 616 F.3d at 167 (personal jurisdiction where New York user accessed defendant's interactive website to

purchase a counterfeit handbag for delivery to the state); *1-800-Flowers.com, Inc. v. Flowers LLC*, 2012 WL 13109931, at *6 (E.D.N.Y. Aug. 17, 2012) (finding jurisdiction over out-of-state website operator under § 302(a)(1) because users could "make a direct online payment" on the site "and provide an address in New York for delivery"); *Mattel, Inc. v. Adventure Apparel*, 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001) (finding personal jurisdiction where single purchase of defendant's allegedly infringing merchandise occurred by "exchange of payment" on defendant's website in "a commercial transaction that was actually consummated on line").

As the Second Circuit has emphasized in rejecting an argument like the one Perplexity raises here, "that [defendant's] business attempted to serve a nationwide market does not diminish any purposeful contacts with [its] New York consumers." *Chloe*, 616 F.3d at 171; *see also 1-800-Flowers.com, Inc.*, 2012 WL 13109931, at *5–6 (finding jurisdiction proper under § 302(a)(1) even though defendant's website was "equally available to users everywhere").

### ii. Plaintiffs' Complaint Need Not Allege a Specific Infringing Output Received by a New York User, but It Has Done So.

Defendant argues next that Plaintiffs have not alleged that any user in New York has actually received an infringing answer. Def.'s Mem. 11–12. This argument fails for a number of independent reasons.

<u>First</u>, the law does not require that Plaintiffs identify a specific infringing output received by an in-state user. Federal courts in New York have consistently held that "[t]he focus, for purposes of determining whether personal jurisdiction exists, should be on the *defendants'* activities and intent vis-a-vis the state in question, not on whether any particular consumers from that state have responded to defendants' solicitations." *Mrs. U.S. Nat. Pageant, Inc. v. Miss U.S. Org., LLC*, 875 F. Supp. 2d 211, 224–25 (W.D.N.Y. 2012); *see also, e.g.*, *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *3–4 (S.D.N.Y. Mar. 27, 2019) (offering products for sale and

shipment to New York sufficient). These cases make clear that a plaintiff need not plead the identity of a specific buyer, or even the existence of a consummated transaction in order for a court to conclude that a defendant is "transacting business for purposes of Section 302(a)(1)." *Id.* at *4.

Second, Plaintiffs *do allege* that Perplexity has consummated transactions and delivered infringing outputs to users and subscribers in New York. Paragraph 42 of the SAC expressly alleges that "the answers and other information that Perplexity *sells and delivers to its subscribers and users in this State and District* are in relevant instances infringements of Plaintiffs' copyrighted works," and "the answers and other information that Perplexity *sells and delivers to its subscribers and users in this State and District* sometimes contain hallucinatory content . . . ." SAC ¶ 42 (emphasis added). Similarly, paragraph 28 alleges that Perplexity uses its "highly interactive web-based and mobile products" to "sell[] information and 'answers' to customers, including in New York," while "the 'answers,' th[e] information, and the process through which they are generated infringe Plaintiffs' intellectual property rights." *Id.* ¶ 28.

Perplexity calls these allegations "conclusory," but it is not conclusory to allege specifically the sale and delivery of a product (answers) which contains stolen content (infringements of Plaintiffs' copyrighted works). Of course, the identity of users who received infringing outputs is a fact uniquely in the possession of Perplexity. Tellingly, Defendant **does not deny** that it has New York users and subscribers and it **does not deny** that its New York users and subscribers have received answers that either contain or are derived from Plaintiffs' content. Accordingly, Plaintiffs' allegations that Perplexity has customers in New York who receive allegedly infringing answers in New York must be taken as true. *See MacDermid*, 702 F.3d at 727.

<u>Third</u>, even if Plaintiffs *are* required to allege that a New York user received a specific infringing output—which, they are not—the Court may infer that receipt from the totality of Plaintiffs' allegations. *See Meirly*, 2019 WL 1375470, at *4 ("Plaintiffs' submissions indicate that it is likely that . . . Defendants made sales into the New York market that are not documented in Plaintiffs' papers."). Plaintiffs allege, *inter alia*, that Perplexity aggressively markets its infringing products and services to New Yorkers and has over 15 million monthly active users, *see* SAC ¶¶ 38–41, and provides "a Free Perplexity Pro account" to its Campus Strategists, *id.* ¶ 30 & n.11. These allegations support "the reasonable assumption that New Yorkers . . . account for *some*" viewings of Plaintiffs' copyrighted works, *Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 360 (S.D.N.Y. 2009), especially given that Perplexity does not deny that New York users have received allegedly infringing content, *see Mrs. U.S. Nat. Pageant, Inc.*, 875 F. Supp. 2d at 224 (no dispute that purchases "could have been made" by in-forum customers).

<u>Finally</u>, while it is legally unnecessary for Plaintiffs to specifically identify an infringing output provided to an individual in New York, Plaintiffs have done so. In addition to the allegations in paragraphs 28 and 42 of the SAC, paragraph 110 provides a specific example of a query and answer from Perplexity's website producing an infringing, in-depth summary of a copyrighted and paywalled article. Paragraph 104 alleges that this and other examples "constitute distinct copyright violations." In addition, paragraph 119 provides a specific example of a query and answer from Perplexity's website that produced a "hallucination" in the form of "several key quotes purportedly included in the article that do not in fact appear there." SAC ¶ 119. And paragraph 115 alleges that this example constitutes a false designation of origin and dilution of Plaintiffs' trademarks. Both of these specific examples in paragraphs 110 and 119 were received in response to queries entered into Perplexity's website by a News Corporation employee while

he was physically present in New York on July 30, 2024.  *See* Declaration of Alexander Gibson dated March 11, 2025, ¶ 7.

### iii.    *Perplexity's Employees and Marketing in New York Are Jurisdictionally Significant.*

Defendant attempts to minimize, or ignore altogether, the responsibilities of its employees and Campus Strategists in New York, its promotion and advertising of its highly interactive website in New York, and the substantial marketing it directs at New York—like the "Discover New York with Perplexity" webpage, the promoted Times Square billboard, the branded Cybertruck in Times Square, and the "Campus Strategists" program.  Def.'s Mem. 9–10.

It does this by arguing that each of these activities, separately, is insufficient to establish personal jurisdiction.  However, the assessment of personal jurisdiction does not rise or fall separately on each of these, and the Court must consider the totality of Perplexity's New York business activities to determine whether it transacts business in New York and has purposely availed itself of the forum.  *See Meirly*, 2019 WL 1375470, at *4.  The combination of Defendant's operation of the highly interactive website and all the other activity the SAC alleges, *supra* at Part I.A.1.a, plainly shows that Perplexity has availed itself of New York, transacts business here, and specifically targets New Yorkers with its marketing efforts.

Defendant nonetheless argues that it has only a "handful" or "small contingent of employees" in New York, and that there is no allegation in the SAC that its employees in New York are "responsible for the inclusion of particular content in the RAG index or for the allegedly infringing outputs."  Def.'s Mem. 9.  But Defendant ignores paragraph 25 of the SAC, which expressly alleges that its New York employees: "develop, implement, maintain, and promote the technology that Perplexity uses to gather and misappropriate Plaintiffs' copyrighted content," "develop and support the operation of the web-based and mobile application technology to sell or

14

otherwise provide answers and/or information to customers in New York," and "market Perplexity's products to customers and potential customers, including to business customers, which results in Perplexity contracting for the sale of goods and services to customers in New York."  SAC ¶ 25.  Defendant also fails to address Plaintiffs' allegation that Perplexity's Chief Strategy Officer is located in New York, *id*. ¶ 26, or that Perplexity continues to actively solicit and hire employees in New York to support all aspects of its business, including a "Machine Learning Engineer" to help "[b]uild groundwork infrastructure for retrieval," *id.* ¶ 27.  Moreover, Plaintiffs explicitly allege that all of Perplexity's New York employees, in some way or another, support and/or promote what Defendant indisputably operates as a business in New York—its "highly interactive web-based and mobile products where Perplexity sells information and 'answers' to customers . . . ."  *Id.* ¶ 28.

### iv.    *All of These Activities Are Directly Tied to Defendant's Core Business and Infringement.*

Lastly, Defendant appears to argue that each of these many allegations of business activity in New York somehow do not count in assessing personal jurisdiction because, according to Defendant (and in many instances it is wrong), Plaintiffs have not specifically alleged that each of these employees or activities is tied directly either to Perplexity's inputting of copyrighted content into its RAG databases or to causing or promoting any specific infringing output by its website or mobile application.  Def.'s Mem. 9–11.  This argument both misdescribes the nature and breadth of Plaintiffs' copyright infringement and trademark dilution claims, and it also misconstrues the Second Circuit's nexus requirement, which requires only that a plaintiff's claims not be wholly unrelated to or "completely unmoored" from a defendant's in-forum business activities.  *Peterson*, 121 F.4th at 1004 (citation omitted).  A plaintiff need not tie each and every alleged business activity to a specific and identified act of infringement.  "'A causal link between the defendant's

New York business activity and a plaintiff's injury' is not required." *Clean Coal Techs., Inc. v. Leidos, Inc.*, 2019 WL 5960202, at *4 (S.D.N.Y. Nov. 13, 2019) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 737 F.3d 161, 168 (2d Cir. 2013)).  Nevertheless, as shown above, Defendant's New York activities are directly tied to the claims in this case.[4]

### 2.    C.P.L.R. § 302(a)(3) – Perplexity Has Committed a Tort Outside of New York that Has Caused Harm in this Forum.

Separately and independently, the SAC also makes a *prima facie* showing of personal jurisdiction pursuant to C.P.L.R. § 302(a)(3).  Under *Penguin II*, if the Court were to find that Plaintiffs' "allegations [involve] a form of infringement that works an injury that is virtually impossible to localize," *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 220 (2d Cir. 2013), then the situs of the injury is New York, where Plaintiffs are at home, *see Penguin Grp. (USA) Inc. v. Am. Buddha*, 946 N.E.2d 159, 165 (N.Y. 2011) (*Penguin II*).  Moreover, here Plaintiffs allege that, as a result of Perplexity's infringement, they have "lost" and will continue to lose customers and licensing opportunities in New York, *see* SAC ¶¶ 44, 46, where a significant portion of their "customers are located," *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*, 2024 WL 1533189, at *12 (S.D.N.Y. Apr. 8, 2024); *see also Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467 (S.D.N.Y. 2008) (noting the injury supporting personal jurisdiction under § 302(a)(3) "has long been interpreted to include harm to a business in the New York market through lost sales or lost customers" ) (cleaned up).  Thus, Section 302(a)(3) jurisdiction exists under the distinct theories of both *Penguin II* and *Creative Photographers*.

---

[4]    For essentially the same reasons as above, the Court may exercise personal jurisdiction over Defendant in accordance with C.P.L.R § 302(a)(2) as a result of Defendant's tortious acts committed in New York.

Contrary to Perplexity's assertion, neither the Second Circuit's *Troma* case nor the Supreme Court's *Walden* decision bar the exercise of jurisdiction here. *See Walden v. Fiore*, 571 U.S. 277 (2014). *Troma* simply held that plaintiffs must "allege facts demonstrating a non-speculative and direct New York-based injury to its intellectual property rights." 729 F.3d at 220. In *Troma*, the plaintiff alleged only "generalized harm" from the defendant unlawfully distributing its movies in Germany, and there was no link between defendant's unlicensed distribution in Germany and New York other than plaintiff's domicile. *Id.* at 220. But here, Plaintiffs allege that a substantial portion of their readers, content consumers, and content licensees are in New York (which one might reasonably expect of *The Wall Street Journal* and the *New York Post*), *see* SAC ¶ 2, and Perplexity's infringement has caused significant harm in New York from lost click-based and subscriber revenue, and lost licensing opportunities, *see id.* ¶¶ 22, 24, 26, 43–44.

Finally, Perplexity is simply wrong that, post-*Walden*, a plaintiff's domicile in a copyright or trademark action cannot serve as the situs of the injury. *See* Def.'s Mem. 13. *Walden* held that an out-of-state tortfeasor with de minimis forum contacts cannot be haled into court in that forum "merely because it is the state in which the plaintiff's injury is felt." 5 McCarthy on Trademarks and Unfair Competition § 32:38 (5th ed.). There must be some indicia that the defendant targeted the forum such that it could reasonably foresee facing suit there. *See Miller*, 2021 WL 3934262, at *3–4. As shown above, *supra* Part I.A.1.a., Perplexity has considerable business contacts with New York, an active physical presence in New York, and specifically targets New York in multiple ways. *See Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 593 (S.D.N.Y. 2017) ("*Walden* simply says nothing about a defendant whose business activities within the forum . . . are alleged to have provided the impetus for the very wrongdoing . . . that caused

plaintiffs' injuries in the forum.").  Thus, the exercise of jurisdiction pursuant to Section 302(a)(3) is consistent with *Walden*.[5]

### B.    The Court's Exercise of Personal Jurisdiction Comports with Due Process.

The Constitution permits the exercise of jurisdiction over a nonresident corporation if it has sufficient "minimum contacts" with the forum such that litigating here "does not offend traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up).  Here, the "assertion of personal jurisdiction over" Perplexity "comports with due process for the same reasons that it satisfies New York's long-arm statute." *Chloe*, 616 F.3d at 171.  Perplexity has "purposefully avail[ed] itself of the privilege of conducting activities" in New York and Plaintiffs' claims "arise out of or relate to" Perplexity's contacts.  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021) (citation omitted).

Perplexity argues that Plaintiffs have not identified a nexus between Perplexity's many New York contacts (which it does not dispute) and Plaintiffs' claims, *see* Def.'s Mem. 8–13, but this assertion is roundly dispelled by Plaintiffs' arguments supporting New York long-arm jurisdiction, *see supra* Part I.A.1.  The SAC includes, *inter alia*, **uncontroverted** allegations that Perplexity advertises to New York users; transacts business in New York with customers here to whom it sells its allegedly infringing products; and has employees in New York who support the sale of that allegedly infringing product.  *See supra* Part I.A.1.a.  These contacts are more than "close enough" to Plaintiffs' claims "to support specific jurisdiction," *Ford Motor Co.*, 592 U.S.

---

[5]    Although Plaintiffs believe that they have satisfied the burden many times over of making a *prima facie* showing of personal jurisdiction, if for any reason the Court is not fully convinced of that, then Plaintiffs respectfully request that the Court permit Plaintiffs to conduct jurisdictional discovery.

at 371, and the exercise of jurisdiction is more than "reasonable . . . under the circumstances," *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012) (citation omitted).

## II.    THIS DISTRICT IS THE PROPER VENUE AND APPROPRIATE FORUM.

Venue is also proper in this District, and Perplexity does not offer a compelling reason why Plaintiffs' choice of forum should be disturbed.  Indeed, where venue is proper, Plaintiffs' choice of forum controls absent a *clear and convincing showing* that the balance of convenience and the interests of justice strongly favor transfer.  28 U.S.C. § 1404; *see New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010).  Given Perplexity's growing number of New York employees and operations, its New York customer base, and its recent success raising $500 million at a $9 billion valuation,[6] Perplexity has not demonstrated—let alone clearly and convincingly—that considerations of convenience and the interests of justice strongly favor disturbing Plaintiffs' choice of forum and transferring this matter to the Northern District of California ("N.D. Cal.").

### A.    Venue Is Proper in this District.

As a starting point, venue is proper in this District.  A copyright action "may be instituted in the district in which the defendant or his agent resides or may be found," 28 U.S.C. § 1400(a), and a "defendant may be found wherever that person is amenable to personal jurisdiction," *Cavu Releasing, LLC v. Fries*, 419 F. Supp. 2d 388, 394 (S.D.N.Y. 2005) (cleaned up).  For a trademark action, the general venue statute, 28 U.S.C. § 1391, provides that venue is proper in any judicial district "in which any defendant resides," which means, for a corporate defendant like Perplexity, "any judicial district in which such defendant is subject to the court's personal jurisdiction with

---

[6]    *AI Startup Perplexity Closes Funding Round at $9 Billion Value*, Bloomberg (Dec. 18, 2024),    https://www.bloomberg.com/news/articles/2024-12-18/ai-startup-perplexity-closes-funding-round-at-9-billion-value.

respect to the civil action in question." 28 U.S.C. § 1391(b), (c). Because the Court may exercise personal jurisdiction over Defendant, including because of its activities in this District, *see supra* Part I, venue is also proper in this District.

**B.    There Is No Basis for a Convenience Transfer.**

Where a party moves for a transfer pursuant to 28 U.S.C. § 1404, "a plaintiff's choice of forum is presumptively entitled to substantial deference," *Gross v. BBC*, 386 F.3d 224, 230 (2d Cir. 2004), and will not be disturbed absent "a 'clear and convincing' showing that transfer is warranted," *Garnish & Gather, LLC v. Target Corp.*, 2019 WL 6729152, at *1 (S.D.N.Y. Dec. 11, 2019). *See New York Marine*, 599 F.3d at 113–14. That presumption is even stronger where the chosen forum is also the plaintiff's home. *See Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003); *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 146 (2d Cir. 2000).

In addition to plaintiff's choice of forum, courts consider eight other factors in evaluating a venue transfer request. *See, e.g.*, *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008). "No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case." *Winter v. Am. Inst. of Med. Sci. & Edu.*, 242 F. Supp. 3d 206, 213 (S.D.N.Y. 2017) (citation omitted). Perplexity offers no compelling arguments in support of its Motion, and the Court should deny transfer based on the totality of these factors.

First, ***the convenience of the parties*** weighs decisively against transfer. Both Plaintiffs maintain their principal place of business in this District, and all three parties have offices in this District. *See Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 618 (S.D.N.Y. 2016) (noting that courts look to the parties' principal places of business and the location of their offices when analyzing this factor). Although Perplexity contends that litigating this case in New York would be inconvenient, it offers no specific rationale for why going to a courthouse one

express subway stop from its New York office would inconvenience Perplexity more than litigating this case in California would inconvenience Plaintiffs. *See Flood v. Carlson Restaurants Inc.*, 94 F. Supp. 3d 572, 578 (S.D.N.Y. 2015) ("A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." (citation omitted)); *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 435 (E.D.N.Y. 2012) (declining transfer outside of New York where two plaintiffs resided in New York, a third plaintiff consented to jurisdiction there, and the defendant resided outside of New York).

Second, *the relative means of the parties* weighs against transfer.  Perplexity is financially capable of litigating in New York, as it is reported that in December 2024, Perplexity raised $500 million of funding at a $9 billion valuation, despite having only 110 employees as of October 2024. Bloomberg, *supra* note 6; Pham. Decl. ¶ 6.

Third, *the forum's familiarity with the governing law* weighs against transfer.  The claims in this case are all based upon federal law, and the S.D.N.Y. hears significantly more intellectual property suits on average than the N.D. Cal.  *See, e.g.*, Federal Judicial Caseload Statistics 2024 Tables, U.S. Courts, Publication Table No. C-3, https://www.uscourts.gov/data-news/reports/statistical-reports/federal-judicial-caseload-statistics/federal-judicial-caseload-statistics-2024-tables (last visited Mar. 6, 2025) (demonstrating, in the most recent annual reporting period, that almost twice as many intellectual property cases were filed in the S.D.N.Y. (981 cases) than in the N.D. Cal. (597 cases)).

Fourth, *trial efficiency and the interests of justice* also weigh against transfer.  "[I]f there exists a forum that is presently able to resolve the parties' dispute more quickly than another forum, the plaintiff's decision to choose that venue should be afforded very considerable weight."

*Albright v. Terraform Labs, Pte. Ltd.*, 641 F. Supp. 3d 48, 56 (S.D.N.Y. 2022).  In choosing to file in this District, Plaintiffs chose a forum where civil cases are generally resolved faster than in the N.D. Cal.  *See* Administrative Office of U.S. Courts, U.S. Courts National Judicial Caseload Profile 11, 66 (Dec. 31, 2024), https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_distprofile1231.2024.pdf (showing that both civil filings per judgeship and time from filing to disposition in civil cases have been lower in the S.D.N.Y. than the N.D. Cal. for each of the last six years).

Fifth, ***the locus of operative facts*** does not favor transfer.  A case may have "several loci of operative facts."  *Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 697 (S.D.N.Y. 2009).  For example, for a product designed and developed primarily in California, but sold and supported in New York, each is a locus of operative facts.  *Id.*  Here, Perplexity admits that its Chief Strategy Officer, General Manager of Finance, Founding Lead for Enterprise Sales, and six technical staff all work in this District, Pham Decl. ¶ 2, and those engineers "are largely responsible for back-end infrastructure," including "maintaining Perplexity's website," *id.* ¶ 11. In addition, the SAC alleges that Perplexity conducts financing activities in New York, markets and sells its products to Plaintiffs' customers in New York, and provides Plaintiffs' content to users in New York.  SAC ¶¶ 38–44.  As a result, New York is a significant locus of operative facts for Plaintiffs' infringement claims, which arise out of events taking place in or near this District.

Additionally, in trademark infringement cases, courts often hold that the locus of operative facts is the initially chosen forum if acts of infringement, dilution, or unfair competition have occurred in that forum, thus making New York the locus of operative facts for Plaintiffs' trademark claim.  *See, e.g.*, *ESPN, Inc.*, 581 F. Supp. 2d at 549; *Kiss My Face Corp. v. Bunting*, 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003).

As for the remaining three factors—*the convenience to the witnesses*, *the location of relevant documents and relative ease of access to sources of proof*, and *the availability to compel the attendance of witnesses*—they are neutral. As for witnesses, while some of Perplexity's officers and employees who were involved in the design and creation of its products may be in California, its Co-Founder and Chief Strategy Officer, Johnny Ho, is a key witness in this case and he resides in New York. SAC ¶¶ 24, 26. Moreover, Plaintiffs anticipate that their witnesses, including those who are expected to testify about Plaintiffs' publications and copyrights, are located in this District, where Plaintiffs are headquartered.

Likewise, "[t]he location of relevant documents is largely a neutral factor in today's world of [electronic discovery]." *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007). And as for the ability to compel the attendance of witnesses, Perplexity has not identified any witness whom it believes will refuse to testify in New York. *See Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York*, 2020 WL 4194729, at *12 (S.D.N.Y. July 21, 2020).

### C.    Perplexity's Terms of Service Are Irrelevant.

Finally, Defendant argues that Plaintiffs' output claim is subject to the forum selection clause found in Section 10.7 of Perplexity's Terms of Service ("TOS"). Def.'s Mem. 24–25. This argument fails.

The forum selection clause in Perplexity's TOS does not apply to any of Plaintiffs claims. By its text, the forum selection clause applies only to disputes "arising out of or relating to" the TOS, Kao Decl. Ex. K, ECF 51-12, at 36 (TOS Sec. 10.7). None of Plaintiffs' claims arise out of or relate to the TOS. In particular, simply because Plaintiffs accessed Defendant's generative AI technology to investigate possible widespread infringement and/or collect evidence of infringement does not mean that the output claim arises out of or relates to the TOS. That claim

exists independently of Plaintiffs' use of the site.  Indeed, the output claim expressly concerns all instances in which Perplexity's generative AI technologies delivers Plaintiffs' copyrighted works to Perplexity users, including users in New York.

Plaintiffs' claims of infringement do not "arise out of or relate to" the TOS itself or even to *Plaintiffs'* "access to and use of" Perplexity's "content, tools, features, and functionality." *See* Kao Decl. Ex. K, ECF 51-12, at 1.  Rather, Plaintiffs' claims arise out of *Defendant's* acts of copyright and trademark infringement.  *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 391 (2d Cir. 2007) (holding that the plaintiff's copyright claims were not subject to the parties' forum selection agreement where the plaintiff could succeed on those claims regardless of what was contained in the agreement); *see also Sholopa v. Turk Hava Yollari A.O., Inc.*, 595 F. Supp. 3d 257, 263–64 (S.D.N.Y. 2022) (declining to apply a forum selection clause in an agreement covering "use" of a website to a lawsuit over conditions of carriage, regardless of the fact that the plaintiff purchased the ticket on the website).

In any event, Perplexity has not even attempted to show that Plaintiffs agreed to the TOS, much less that Plaintiffs ever even saw the TOS.  Indeed, a direct link to its TOS does not appear on Perplexity's homepage, where a user enters a query.  *See* Perplexity Home Page, http://www.perplexity.ai (last visited Mar. 11, 2025).

Most fundamentally, a terms of service typically governs a customer's use of a website, and may be relevant to forum selection for claims related to that use.  But it would create a hopeless mess of dueling and irrelevant terms of service claims if courts were to accept Defendant's invitation to expand a forum selection clause to govern claims that a defendant's product infringes another party's copyrights or illegally harms a third-party in some other way that is separate from that customer's everyday use of a defendant's website.  As even the name makes clear, a TOS—

terms of *service*—governs the terms of a company providing its *service* to customers and users; it cannot be allowed to morph beyond that into the terms of challenging the legality of the company's product.

Perplexity's unreasonably broad reading of its TOS would also unfairly restrict authors and publishers even from perhaps filing a claim (in light of an arbitration clause) and from even learning whether Perplexity copied their original works and made them accessible to Perplexity users—lest they subject themselves to suit in Perplexity's chosen forum.  The Court should reject Perplexity's request to apply the TOS's forum selection clause to this case and should give no weight to the clause in its venue transfer analysis.

## III.    THERE IS NO BASIS TO DISMISS THE TEN ADDITIONAL COPYRIGHT REGISTRATIONS.

Finally, the Court should deny Perplexity's motion to dismiss the ten copyright registrations pleaded for the first time in the First Amended Complaint ("FAC").

As a prerequisite to filing a copyright action, the Copyright Act requires that "registration [of the copyright] . . . has been made."  17 U.S.C. § 411(a).  The term "registration" was defined by the Supreme Court in *Fourth Estate Public Benefit Corporation v. Wall-Street.com, LLC*, to mean action by the Copyright Office.  586 U.S. 296, 302 (2019).  The Supreme Court characterized this as "akin to an administrative exhaustion requirement."  *Id.* at 301.  In short, a copyright holder cannot sue until the Copyright Office has processed the registration.

Plaintiffs did not sue to enforce their rights in any given copyright until the Copyright Office registered that copyright.  Specifically, Plaintiffs' Initial Complaint identified 326 Copyright Registrations (163 for each Plaintiff), each of which was registered before the Initial Complaint was filed.  ECF 1-1, ECF 1-2.  The FAC identified 336 Registrations—the 326 as originally pleaded, plus ten newly registered copyrights (the "Ten Additional Registrations"), all

of which were registered before Plaintiffs filed the FAC.  ECF 36-3, ECF 36-4.[7]  While registered

after the Initial Complaint was filed, the Ten Additional Registrations were issued *before* Plaintiffs

filed the FAC.[8]

     This sequencing complies with Section 411(a) and the Supreme Court's decision in *Fourth*

*Estate*.  Nonetheless, Perplexity claims that in order to assert infringement of the Ten Additional

Registrations in this action at all, Plaintiffs needed to have registered the Ten Additional

Registrations before they filed the *Initial* Complaint.[9]  This argument is unsupported by the

governing case law.

     For example, in *Malibu Media, LLC v. Baker*, Judge Moses held that the plaintiff was

permitted to assert *new* claims in an amended complaint for copyrights that were registered *after*

the initial complaint was filed but before the amendment was filed.  2020 WL 3978302, at *4 n.3

(S.D.N.Y. June 18, 2020), *report and recommendation adopted*, 2020 WL 3972736 (S.D.N.Y.

July 13, 2020).  Quoting the statutory language, Judge Moses held that "suit was not 'instituted'

as to the newly-pleaded copyrights until the filing of the Amended Complaint" and therefore "§

411(a) [was] satisfied as to all of them."  *Id.*  Likewise, in *Ubiquiti Networks, Inc. v. Cambium*

*Networks, Inc.*, 2019 WL 6034116, at *1 (N.D. Ill. Nov. 14, 2019), the court held that because the

copyright claim asserted for the first time in the amended complaint "was not prematurely filed,"

it could proceed.  This same logic was applied in *Philips N. Am. LLC v. KPI Healthcare, Inc.*, 2020

---

[7]    The registrations in the SAC are identical to the ones in the FAC.

[8]    Paragraph 97 of the Initial Complaint cites as a trademark violation an output of an August 17, 2024, *New York Post* article.  ECF 1 ¶¶ 96–102.  Because this article was cited only as a trademark violation, it is of no consequence that the copyright was registered at a later date.  *See* ECF 51-1.

[9]    Dismissal of Registration Number TX 9-436-972 should be denied also because the registration was issued the same day the Initial Complaint was filed.  *Compare* Kao Decl. 1 *with* ECF 1.

WL 3032765, at *3 (C.D. Cal. Jan. 24, 2020), which recognized the distinction between prematurely filed *defective* claims, and newly filed claims. The same distinction was applied, in favor of the copyright holder, in *Lickerish Ltd. v. Maven Coal., Inc.*, 2021 WL 3494638, at *1 (C.D. Cal. Jan. 29, 2021).

Perplexity relies almost exclusively on cases with a distinct fact pattern. The three main cases cited by Perplexity, *Malibu Media, LLC v. Doe*, 2019 WL 1454317, at *2–3 (S.D.N.Y. Apr. 2, 2019); *Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019); and *Deetsch v. Lei*, 2023 WL 6373073, at *9 (S.D. Cal. July 21, 2023) (together with its collected cases), all concern a plaintiff's attempt to *cure a defect*, because the original pleadings in those cases alleged infringement of specific copyrights for which the plaintiff had not yet obtained registrations. Perplexity either missed this critical distinction or ignored it.

Defendant also cites *Roblox Corp. v. WowWee Grp. Ltd.*, an out-of-district case that also described the issue as whether a plaintiff could "*cure*" its failure to comply with the exhaustion requirement through amendment. 660 F. Supp. 3d 880, 890 (N.D. Cal. 2023). The opinion's muddled analysis, again, targets a different fact pattern. Plaintiffs here did not attempt to "cure" a defective complaint. The FAC added *new* instances of infringement for registrations issued after the date of the Initial Complaint. While *Roblox* adopted an interpretation of *Fourth Estate* that equates "instituted" as the date an original complaint is filed, *id.*, the court recognized that other district courts in California held differently, *see id.* (citing *Lickerish Ltd.*, 2021 WL 3494638, at *1), and permitted an amendment. And tellingly, since *Roblox* was decided, no district court in New York has adopted (or even cited) its holding to bar a plaintiff's assertion by amendment of *new* claims of infringement for copyright registrations issued after the date of the original complaint.

Because neither the text of the Copyright Act nor the prevailing case law support Perplexity's position, its motion to dismiss the Ten Additional Registrations should be denied.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Perplexity's Motion should be denied.

Dated:  Washington, D.C.
       March 11, 2025

Respectfully submitted,

TORRIDON LAW PLLC


By: /s/ *Paul T. Cappuccio*
     William P. Barr *(pro hac vice)*
     Paul T. Cappuccio (4092508)
       *Counsel of Record*
     Justin M. Romeo *(pro hac vice)*
     Brett D. Katz (BK6685)
     Genevieve M. Kelly *(pro hac vice)*
801 Seventeenth Street NW, Suite 1100
Washington, DC 20006
Tel: 202.249.6900
pcappuccio@torridonlaw.com

*Counsel for Plaintiffs Dow Jones & Company, Inc. and NYP Holdings, Inc.*

**<u>CERTIFICATION OF COMPLIANCE</u>**

I certify that the foregoing Memorandum of Law complies with all formatting requirements of this Court and contains 8,739 words, including footnotes and headings but excluding the cover page, this certificate, the tables, and the signature blocks. I relied on the word count of the Microsoft Word computer program used to prepare this brief.

/s/ *Paul T. Cappuccio*
Paul T. Cappuccio

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2025, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system and thereby served upon all counsel of record.

/s/ *Paul T. Cappuccio*
Paul T. Cappuccio