UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOW JONES & COMPANY, INC. and NYP HOLDINGS, INC.,<br><br>        Plaintiffs,<br><br>  v.<br><br>PERPLEXITY AI, INC.,<br><br>        Defendant. | Civil Action No. 1:24-cv-07984-KPF<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

This Court should reject Plaintiffs' misguided attempt to retain home-field advantage in a case that unmistakably belongs in California. None of the supposedly unlawful conduct described in the SAC[1]—neither the assembling of Perplexity's RAG index nor the provision of allegedly infringing "answers" to anyone other than Plaintiffs—occurred in this District. Perplexity's limited business operations in New York are unrelated to Plaintiffs' copyright and trademark claims. Further, Perplexity *firmly* disputes Plaintiffs' baseless allegation that "a substantial number of customers in New York" have "receive[d] answers in New York that Plaintiffs allege are infringing." Opp. 2. Perplexity's answers are not knockoff handbags, fully-formed and ready to be sold off-the-shelf to customers. They are generated stochastically by unpredictable AI models, in real time, in response to each user's specific question, and no two outputs may be the same. The fact that, after an undisclosed number of attempts, Plaintiffs' employee allegedly managed to coax Perplexity to provide answers that Plaintiffs claim are infringing says nothing about whether any other user, in New York or elsewhere, has ever sought or received the same or similar answers, much less that Perplexity has targeted New York in a way that subjects it to specific personal jurisdiction for this lawsuit.

But even if they did, Plaintiffs do not dispute that this case could have been brought in the Northern District of California, and the convenience factors favoring that forum outweigh Plaintiffs' choice to file suit in this District. Finally, Plaintiffs concede several of their asserted copyrights were unregistered at the time the original Complaint was filed, so the copyright statute demands that those copyrights be dismissed.

---

[1] All defined terms have the same meaning as in Dkt. 48 ("Mot.").

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER PERPLEXITY

Plaintiffs concede Perplexity is not subject to this Court's general jurisdiction and argue only for specific personal jurisdiction. Opp. 4. Their arguments focus on whether New York's long-arm statute is satisfied, Opp. 5-18, and minimize the independent requirement that the exercise of specific jurisdiction *also* comport with due process, *id.* 18. Under either standard, however, Plaintiffs can't remedy their failure to establish the requisite connection between their claims and Perplexity's New York activity. Because "there is no such connection, specific jurisdiction is lacking regardless of the extent of [Perplexity's] unconnected activities in" New York. *Bristol-Myers Squibb Co. v. Super. Court of Cal.*, 582 U.S. 255, 264 (2017).

      A.      **Plaintiffs' claims are insufficiently connected to Perplexity's business activities in New York.**

That Perplexity transacts some business in New York is not enough to establish specific personal jurisdiction. Rather, "each claim asserted" must have a "substantial relationship to" Perplexity's transactions in New York, and the exercise of jurisdiction must also be constitutional. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). Plaintiffs failed to make that showing in the SAC, and their Opposition doesn't establish otherwise.

First, Plaintiffs argue that Perplexity's handful of employees and marketing activities in New York "in some way or another, support and/or promote what [Perplexity] indisputably operates as a business in New York—its 'highly interactive web-based and mobile products…'." Opp. 15. If that were the standard, any technology company with supporting employees in New York could be haled into court there for any claim related to interactive web services provided nationally, which is not the case. *See, e.g.*, *Corley v. Vance*, 365 F. Supp. 3d 407, 434-35 (S.D.N.Y. 2019) (finding claim against Facebook for disclosure of personal information didn't arise out of

2

business activity in New York, even though Facebook had two offices in New York and "has plainly availed itself of New York law").

*Lopez v. Shopify, Inc.*, 2017 WL 2229868 (S.D.N.Y. May 23, 2017), is also instructive, *see* Mot. 9, 11, and Plaintiffs' Opposition does not address it. In *Lopez*, the court "accept[ed] as undisputed" that defendants' e-commerce business "ha[d] multiple customers," "ran several promotional events," and had an "office, as opposed to a temporary rented workspace" in New York. *Id.* at *7. The plaintiff also alleged, and defendants did not dispute, that defendants "promote[d], advertise[d] and offer[ed] directly from [their] website … website designers from and in the New York City area." *Id.* The court even assumed that plaintiff "was injured in New York" by defendants' alleged copyright and trademark infringement, applying the *Penguin II* case Plaintiffs cite here. *Id.* (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 304 (2011)). Even still, the court found defendants' "contacts with New York may be substantial, but they do not 'relate to' [plaintiff's] claims in any meaningful way" and declined to exercise specific personal jurisdiction because it "would not comport with due process." *Id.* at *8. So too here. Plaintiffs have not established that Perplexity's New York operations relate to their claims "in any meaningful way."

### B. The availability of Perplexity's interactive service to New York users does not establish jurisdiction.

That Perplexity provides a "highly interactive" web service, Opp. 6, is not enough to hale Perplexity into this Court, as courts in this Circuit and nationwide have recognized. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002) (merely offering highly interactive website not "sufficient to sustain personal jurisdiction"); *accord Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 253 (2d Cir. 2007). "On today's internet, it is an extraordinarily rare website that is not interactive at some level." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 141 n.5 (4th

3

Cir. 2020) (cleaned up); *see also Kindig It Design, Inc. v. Creative Controls, Inc.*, 157 F. Supp. 3d 1167, 1174-75 (D. Utah 2016) (citing *Best Van Lines*, 490 F.3d at 252). More is required to "reveal[] specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890. There is no such evidence here. Perplexity is a global business with no designs on New York users as distinct from any other jurisdiction. *See* Pham Decl. ¶ 13. A rule that allows specific jurisdiction based only on users' ability to access an interactive website's services, as Plaintiffs advocate here, would subject technology companies to suit in every district where *any* user resides.

Importantly, Plaintiffs still provide no basis for their speculation that Perplexity generated and delivered allegedly infringing outputs to New York residents. Plaintiffs do not allege—nor could they—that *every* answer Perplexity provides infringes their copyrights or dilutes their trademarks. Thus, the mere fact that Perplexity may have subscribers in New York is beside the point, unless *allegedly infringing* answers were delivered to those New York subscribers. Recognizing this, Plaintiffs claim that Perplexity gives New York users answers that "are *in relevant instances* infringements of Plaintiffs' copyrighted works" and "*sometimes* … devalue[] Plaintiffs' valuable trademarks and cause[] confusion." SAC ¶ 42 (cited in Opp. 12).[2] But the only examples they can identify as having been received in New York were generated by one of Plaintiffs' own employees. Opp. 13-14; Gibson Decl. ¶ 7. It is well established that Plaintiffs "are not permitted to 'manufacture' personal jurisdiction over defendants by orchestrating an in-state web-based purchase of" allegedly infringing material. *Krepps v. Reiner*, 588 F. Supp. 2d 471, 479

---

[2] Plaintiffs argue that, because Perplexity did not submit an affidavit denying that it "has customers in New York who receive allegedly infringing answers in New York," the Court must accept that allegation. Opp. 12. Not so. That is a "legal conclusion couched as a factual allegation" and should not be accepted as true. *Allianz Global Investors GmbH v. Bank of Am. Corp.*, 457 F. Supp. 3d 401, 407 (S.D.N.Y. 2020) (citing *In re Terrorist Attacks on Sept. 11, 2001*, 714 F. 3d 659, 673 (2d Cir. 2013)).

(S.D.N.Y. 2008); *see also, e.g.*, *Mattel, Inc. v. Anderson*, 2005 WL 1690528, at *2 (S.D.N.Y. 2005) (no specific jurisdiction where plaintiff's investigator who purchased allegedly infringing goods in New York "cannot claim to have been confused as to with whom he was dealing").

Plaintiffs claim, with no evidence, that other, unnamed New Yorkers may have received similar allegedly infringing outputs. Opp. 13. But the Court should not credit speculation that "is not factually based or intuitively apparent." *Mantello v. Hall*, 947 F. Supp. 92, 102 (S.D.N.Y 1996) (granting motion to dismiss for lack of personal jurisdiction where plaintiff "merely surmises" that alleged torts took place in New York). Perplexity's service is fundamentally different from an internet storefront for infringing goods. The "answers" Perplexity provides in response to user queries are not ready-made physical products stocked on warehouse shelves, pre-packaged and ready to ship to a user's location when that user places an order. Rather, they are generated in real time in response to specific user inquiries by unpredictable artificial intelligence models that may respond to two identical queries in entirely different ways.[3] Even if another New York user not affiliated with Plaintiffs *had* independently and coincidentally entered the same or similar prompts, there is no basis to infer that they would have received the same responses.

Ultimately, exercising personal jurisdiction over Perplexity in New York is not "reasonable … under the circumstances." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012), because the challenged "conduct" in this case fails to "connect[]" Perplexity "to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (also stating that "where the plaintiff experienced a particular injury" is not relevant to personal jurisdiction). Perplexity's relevant fact witnesses and the bulk of pertinent evidence are located outside New York. And

---

[3] *See*, *e.g.*, Paul Battisson, *On Repeatability and the Application of AI Agents*, Medium, https://pbattisson.medium.com/on-repeatability-and-the-application-of-ai-agents-1d379ee5c128 (Dec. 9, 2024) (showing ChatGPT producing different responses to identical prompt).

5

Plaintiffs don't dispute that they could obtain the same relief in any federal court. As a matter of constitutional due process, then, this Court cannot exercise personal jurisdiction over Perplexity.[4]

## II. VENUE IN THIS DISTRICT IS IMPROPER

In addition to this Court's lack of jurisdiction, venue is improper under 28 U.S.C. §§ 1391(b) and 1400(a). Mot. 14-15. Plaintiffs cannot dispute that Perplexity does not reside in New York, and they fail to address (and therefore concede) the point that no "substantial part of the events or omissions giving rise to" Plaintiffs' claims occurred in this District for purposes of Section 1391(b). *See* Opp. 19-20.

## III. IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

At a minimum, the Court should exercise its discretion to transfer this case to the Northern District of California, consistent with the convenience and interest of justice factors under 28 U.S.C. § 1404(a). Mot. 18-24. Plaintiffs cannot dispute that jurisdiction and venue are proper in the Northern District of California. Indeed, Perplexity's home District is where Plaintiffs' infringement claims are centered, where the parties could most efficiently access the unwieldy and voluminous data that may be at issue, and where key witnesses, including third parties, are located. Plaintiffs' choice of this District cannot outweigh these other important factors.

### A. The locus of operative events is the Northern District of California.

Plaintiffs argue "New York is *a* significant locus of operative facts" based on Perplexity's satellite office and Plaintiffs' residence in this District. Opp. 22 (emphasis added). Plaintiffs are wrong. *The* singular locus of operative facts as to Perplexity's alleged infringement is the Northern

---

[4] Plaintiffs haven't established an entitlement to jurisdictional discovery, *see Donner v. Der Spiegel GmbH & Co.*, 747 F. Supp. 3d 681, 694 (S.D.N.Y. 2024), but if the Court is inclined to permit it, any such discovery should be limited.

District of California. By Plaintiffs' own allegations (SAC ¶ 18), that is where Perplexity developed and operates its technology and procures material as inputs for the RAG index. Mot. 19. Where, as here, plaintiffs allege "willfulness," evidence "regarding the design and development of the accused products … and the knowledge of the employees involved in that process" is central. *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 21 (S.D.N.Y. 2012); *see* SAC ¶¶ 134, 144, 148, 159, 166 (alleging willfulness).

Plaintiffs misconstrue the extent of Perplexity's operations in New York. Opp. 22. The handful of technical staff there is responsible for "back-end infrastructure," such as "maintaining Perplexity's website" (Pham Decl. ¶ 11), which is unrelated to Perplexity's alleged "cop[ying] and/or reproduc[ing]" of Plaintiffs' copyrighted works "into its RAG index." SAC ¶¶ 50, 53. Such activity establishes no "material connection between this district and the operative facts." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 260 F. Supp. 3d 401, 410 (S.D.N.Y. 2017). Fundamentally, Plaintiffs' efforts cannot obscure that the Northern District of California has the strongest relationship with this case.[5] *See CYI*, 913 F. Supp. 3d at 21-22.

### B. Transfer to the Northern District of California would provide better access to key evidence and witnesses.

Plaintiffs downplay the relevance of access to the voluminous data at the heart of this case. Opp. 23. But those records are obviously relevant—and cumbersome—in light of Plaintiffs' allegations that "Perplexity has copied *hundreds of thousands* of Plaintiffs' copyrighted articles for its RAG database." SAC ¶ 36. The "massive [] trove" of the RAG database, SAC ¶ 101, and

---

[5] To the extent Plaintiffs argue the locus of operative facts in trademark cases is *per se* Plaintiffs' initially chosen forum (Opp. 22), courts find this bright-line rule "not persuasive." *CYI*, 913 F. Supp. 2d at 21. Under that reasoning, "if there are roughly equivalent sales of an allegedly infringing product in multiple districts, each such district [would have] a roughly equivalent claim to being the locus of operative facts." *Id.* In any event, Plaintiffs bring only conclusory allegations of infringing sales in this District. *See, e.g.*, SAC ¶ 36.

the volume of allegedly infringing user outputs at issue, SAC ¶ 150, as well as the complex code underlying Perplexity's product, are all in the Northern District of California. Plaintiffs also fault Perplexity for failing to provide a full list of the witnesses who would be inconvenienced by travel to New York—even as they concede that key "officers and employees who were involved in the design and creation of its products" are in California. Opp. 23. In addition, Plaintiffs ignore that discovery will likely be sought from Perplexity's third-party LLM providers, such as OpenAI, Anthropic, and Meta, who are located in the Northern District of California. In the event that those entities decline to appear voluntarily, the Court would lack the subpoena power to compel their testimony in New York. *See* Fed. R. Civ. P. 45(c)(1)(A); *see also* Pham Decl. ¶ 5.

### C. Plaintiffs' choice of forum is outweighed by other factors.

Plaintiffs, understandably, emphasize the fact that they chose this forum. Opp. 20. But as Perplexity explained (and Plaintiffs do not dispute), a plaintiff's choice is entitled to little weight when "the operative facts have few meaningful connections to the plaintiff's chosen forum." *Harris v. Brody*, 476 F. Supp. 2d 405, 406 (S.D.N.Y. 2007). Despite Plaintiffs' best efforts to manufacture a meaningful connection to this case, those arguments do not hold water.

First, Plaintiffs ignore that remaining in New York poses similar—if not more significant—hardship for Perplexity and for non-parties than transfer purportedly would for Plaintiffs. Because both Perplexity and its third-party partners reside in the Northern District of California, transferring venue there would at most "shift the inconvenience" between parties, rendering this factor neutral.[6] *Idle Media, Inc. v. Create Music Grp., Inc.*, 2024 WL 5009713, at *16 (S.D.N.Y.

---

[6] That Perplexity rents office space in the District is irrelevant. Opp. 20-21. Plaintiffs acknowledge Perplexity doesn't reside in New York. Opp. 4 (declining to seek general jurisdiction). And, as Plaintiffs concede, the vast majority of Perplexity's witnesses and relevant evidence are in California. *See supra* Section III.B.

8

Dec. 6, 2024). And, as Plaintiffs' own authority recognizes, "the convenience to non-party witnesses is accorded more weight than that of party witnesses." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 617 (S.D.N.Y. 2016). Similarly, despite Plaintiffs' emphasis on Perplexity's valuation, Opp. 21, Perplexity is an early-stage startup with limited resources to transport its San Francisco-based witnesses and relevant evidence to New York. At best, this factor is neutral. Mot. 22-23.

The forum's familiarity with the governing law and trial efficiency are also neutral factors given the nascent posture of this litigation. No trial schedule has yet been set in this case, no formal discovery has occurred, and Perplexity has not answered the complaint. "[T]ransferring the case would not cause any prejudice to Plaintiff[s] or harm judicial economy." *Lowinger v. Rocket One Cap., LLC*, 2024 WL 2882622, at *8 (S.D.N.Y. June 5, 2024). Plaintiffs' aggregated case disposition statistics ignore that "[i]t is the complexity and difficulty of a particular case, as well as competing demands from other cases on a judge's docket … that combine to affect the timing of a trial of a particular action." *MasterObjects, Inc. v. Amazon.com, Inc.*, 2020 WL 6075528, at *5 (S.D.N.Y. Oct. 15, 2020). And the Northern District of California is just as familiar with the novel issues here given pending copyright litigation involving Perplexity's business partners and competitors, including a case where Plaintiffs are parties.[7]

Finally, Plaintiffs argue they are not bound by Perplexity's forum-selection clause because they "accessed" Perplexity's service only "to investigate ... and collect evidence of infringement." Opp. 23-25. But Plaintiffs identify no cases supporting any such rule. *Phillips v. Audio Active Ltd.*,

---

[7] *E.g.*, *In re Open AI ChatGPT Litig.*, No. 23-cv-3223 (N.D. Cal.); *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417 (N.D. Cal.); *Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-cv-03811 (N.D. Cal.); *Bartz v. Anthropic PBC*, No. 24-cv-05417 (N.D. Cal.); *Brave Software, Inc. v. News Corp.*, No. 25-cv-02503 (N.D. Cal.).

9

494 F.3d 378, 391 (2d Cir. 2007), is distinguishable: the court held there that a recording contract's forum-selection clause did not apply because plaintiff's copyright claims did not originate from the contract. Similarly, *Sholopa v. Turk Hava Yollari A.O., Inc.*, 595 F. Supp. 3d 257, 264 (S.D.N.Y. 2022), held that a customer's breach of contract claim, governed by an entirely separate contract, was not precluded by her assent to the website's terms. But Plaintiffs' output claims here arise *directly* and *entirely* from their use of Perplexity's service. *See generally* Gibson Decl. Because Plaintiffs accessed Perplexity's service for the express purpose of manufacturing predicate acts for their infringement claims, Opp. 13-14, they were users of Perplexity's service who generated outputs over which they are now suing—the precise subject of Perplexity's Terms.[8]

At bottom, Plaintiffs' arguments cannot distract from the fact that this case has no material connection to New York. It is not the locus (or even *a* locus) of operative facts for their core infringement allegations and it is not the most convenient place for this case to be litigated. In these circumstances, the importance of Plaintiffs' choice of forum is vastly diminished.

### IV. PLAINTIFFS' CLAIMS AS TO THE TEN UNTIMELY REGISTERED WORKS SHOULD BE DISMISSED

Plaintiffs do not dispute that the Copyright Act requires registration to be made as a prerequisite to filing a copyright action. They don't dispute that ten copyrighted works asserted in the SAC were unregistered when this action was initiated on October 21, 2024.[9] Instead, Plaintiffs attempt to distinguish the numerous cases where courts have rejected bids to add newly registered works to amended complaints. *See* Mot. 26-27; Opp. 26-27. But whether the strategy is framed as "curing a defect" or simply updating a pleading is irrelevant. Either way, permitting amendment

---

[8] Perplexity's Terms are readily accessible from the bottom of its homepage, like Plaintiffs' own Terms. *See* https://www.wsj.com/; https://nypost.com/.

[9] As to the work registered on October 21, Plaintiffs do not assert that registration decision was received *before* the Complaint was filed that day. *See* Opp. 26 n.9.

10

to allege later registrations "would make a meaningless formality out of *Fourth Estate*'s requirement that an application be approved prior to filing suit [since] a plaintiff could file suit at any time . . . and simply update the complaint when registration finally occurred." *Lee v. Black Ent'mt Television, LLC*, 2020 WL 1140795, at *1 (S.D.N.Y. Mar. 6, 2020); *see also Nwosuocha v. Glover*, 2023 WL 2632158, at *6 (S.D.N.Y. Mar. 24, 2023) (similar).

The statute is clear: "no civil action for infringement of the copyright in any United States work shall be instituted" until "registration … has been made." 17 U.S.C. § 411(a). And controlling Second Circuit law is equally clear: "[A]mending or supplementing a complaint does not bring a *new action*, it only brings a new complaint into an action that is already pending." *United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 172 (2d Cir. 2018) (emphasis added). Plaintiffs "instituted" this "action" when they filed the initial complaint, and "registration" for the ten works had not "been made" at that time. The Ten Additional Registrations should be dismissed.

## V.   CONCLUSION

For all these reasons, the Court should dismiss Plaintiffs' case or, in the alternative, transfer to the Northern District of California, and dismiss Plaintiffs' claims regarding the ten works that were not registered when this action began.

Dated:  March 25, 2025

Respectfully submitted,

By: */s/ James L. Day*_____
Cameron J. Gibbs
James L. Day (admitted *pro hac vice*)
Eugene Y. Mar (admitted *pro hac vice*)
Michelle Kao (admitted *pro hac vice*)
**FARELLA BRAUN + MARTEL LLP**
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
cgibbs@fbm.com
jday@fbm.com
emar@fbm.com
mkao@fbm.com
*Attorneys for Defendant Perplexity AI, Inc.*

**CERTIFICATION OF WORD COUNT**

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Rule 4.B of the Court's Individual Rules and Procedures for Civil Cases because it contains 3,499 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count. This memorandum of law also complies with the applicable formatting rules because it has been prepared in 12-point font and all text is double-spaced.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.

Dated: March 25, 2025                    */s/ James L. Day*_____
                                          James L. Day