UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOW JONES & COMPANY, INC. and NYP HOLDINGS, INC.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>PERPLEXITY AI, INC.,<br><br>                    Defendant. | Civil Action No. 24-cv-07984-KPF<br><br>**[PROPOSED]**<br>**STIPULATED DOCUMENT**<br>**PRODUCTION PROTOCOL** |

Plaintiffs Dow Jones & Company, Inc. and NYP Holdings, Inc., and Defendant Perplexity AI, Inc. (each a "Party," and collectively, "the Parties"), through counsel of record, hereby submit this Stipulated Document Production Protocol ("Protocol") for the Court to so order.

Whereas, for good cause shown, IT IS HEREBY ORDERED THAT:

**I.    General Provisions**

1.    The agreements set forth herein are without prejudice to the right of a Party to request additional information about, or production of, additional Electronically Stored Information ("ESI"), or object to such requests for information or production on grounds related to the particular request.  The Parties shall confer in good faith with regard to whether such additional efforts are reasonably required and, if so, who should bear the cost, and may seek assistance from the Court to resolve such disputes if agreement cannot be reached.  All disclosures and productions made pursuant to this Protocol are also subject to the Confidentiality and Protective Order and any other Orders that may be entered in this litigation.

2.    As used herein, the term "Responding Party" means the Party responding to a Request for Production and the term "Requesting Party" means the Party that made and served the Request for Production.

1

3.      This Protocol governs the discovery of all types of responsive documents (within the broadest meaning of the term "documents" under the Federal Rules of Civil Procedures and Federal Rules of Evidence), whether maintained as ESI or in hard copy, both of which shall be produced electronically in this litigation unless electronic production would be unreasonable, which the Parties contemplate will be the exception to the general practice of electronic production. The Parties will meet and confer in good faith to resolve any issues that may arise involving any potential non-electronic productions where production in electronic form would be unreasonable. Nothing herein shall alter the Parties' respective responsibilities to comply with the applicable Federal Rules of Civil Procedure and Local Rules.  Nothing herein establishes any agreement regarding the scope of the discovery in the litigation, or as to the relevance or admissibility of any documents or other evidence.

4.      The Parties shall make reasonable efforts to comply with, and resolve any differences concerning compliance with, this Protocol.  If a Responding Party cannot comply with any aspect of this Protocol, such Party shall inform the Requesting Party as to why compliance with the Protocol is unreasonable or not possible.  No Party may seek relief from the Court concerning compliance with this Protocol until it has attempted to confer with the other Party to this action to work toward compliance.

## II.    Identification of Responsive Documents

5.      <u>Preservation</u>. The Parties agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree as follows:

   a. For the avoidance of doubt, nothing herein shall require the Parties to take more than reasonable preservation efforts with respect to the Parties' backup systems

and/or disaster recovery systems, consistent with standard business practices for maintaining those systems.

b. The following data sources and data types are deemed for purposes of this Protocol not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B). Accordingly, ESI from these data sources and data types will be preserved, consistent with the Parties' legal obligations, but will not be searched, reviewed, or produced unless ordered by the Court upon a motion of a Party:

i. Voice messages which are not converted to a written format, such as transcription of the message to email. For the avoidance of doubt, the Parties are required to search existing written transcriptions of voice messages.

6. <u>Custodians</u>. The Parties agree to meet and confer in an attempt to reach agreement on the scope of relevant and proportional discovery within the meaning of Rule 26(b)(1), including identification of custodians. The Responding Party shall disclose to the Requesting Party the current employees, and former employees whose data is reasonably accessible, who the Responding Party believes in good faith to be most likely to possess ESI and other documents potentially responsive to the Requesting Party's Request for Production. The designation of the initial custodians is without prejudice to the right of a Requesting Party to identify custodians of a Responding Party to determine if such identified custodian(s) possess documents, information, or knowledge relevant to any Party's claims or defenses. For the avoidance of doubt, each Party may supplement their initial custodian lists as reasonably appropriate and will not be precluded from challenging the other Party's designation of custodians or lack thereof. The Parties will work in good faith to avoid duplication or redundancy in designating or identifying custodians.

7. <u>Supplementation of Production</u>.  The Parties shall supplement their productions as required under the Federal Rules of Civil Procedure and Local Rules of this Court (together, the "Rules").

8. <u>Custodial Data Sources</u>.  For each custodian who is identified pursuant to Paragraph 6 above, the Responding Party will produce responsive, non-privileged documents and ESI under that Party's possession, custody or control, consistent with the Rules.  Notwithstanding the foregoing, the identification of custodians will not alter or limit any Party's obligations under the Rules to produce responsive, non-privileged hard copy documents and ESI that the Party knows or has reason to believe exist, including but not limited to any documents the Responding Party intends to use to support its claims or defenses per Federal Rule of Civil Procedure 26(a)(1)(A)(ii).  The Parties acknowledge and agree that the identification of custodians under Paragraph 6 above is without prejudice to any Party's right to object to production of documents and ESI from that custodian on the basis of irrelevance, burden, or any applicable privilege, immunity, doctrine, or any other valid objection under the Rules.

9. <u>Noncustodial Data Sources</u>.  The Parties acknowledge that responsive, non-privileged information may reside in repositories that are not associated with any particular custodian, such as shared folders and/or shared drives.  The identification of custodians as set forth above does not relieve any Party of its obligation under the Rules to collect and produce such ESI and hard copy documents in such repositories to the extent such documents are non-privileged and responsive to discovery requests.

10. <u>Keyword Searching</u>.  The Parties agree that, in identifying responsive ESI from custodians, the Responding Party may limit its search of collected documents using keywords.  Any Party using such keyword limitation shall disclose its keyword list to the Requesting Party

and provide the Requesting Party with the opportunity to request supplementation of the Responding Party's keyword list. The Parties agree to negotiate in good faith concerning a process, including timing, for designating such keywords, including the exchange of any information necessary to identify relevant keywords and the testing and appropriate supplementation of keywords designated. The agreement as to keyword searching set forth herein does not apply to and does not relieve any Party of its obligation under the Rules to collect and produce responsive, non-privileged ESI that the Party knows or has reason to believe exists.

11. <u>No Responsiveness Presumption</u>. The fact that a document is associated with an identified custodian or captured by a search pursuant to an agreed-upon protocol does not mean that such document is responsive to a discovery request, relevant to this litigation, or will be produced.

12. <u>Technology Assisted Review</u>. If a Party intends to use Technology Assisted Review ("TAR") to cull or otherwise exclude ESI from collection, review, or production, the Parties shall meet and confer to agree on a TAR protocol, including validation and disclosure of TAR metrics. The Parties agree to meet and confer regarding using TAR on paper documents or structured data types. The Parties do not need to disclose the use of TAR solely for the purposes of sorting or prioritizing documents for review.

13. <u>Messaging Tools</u>. The Parties will disclose within 30 calendar days of the Court's approval of this Protocol: (a) any use by its custodians of enterprise messaging tools, such as Slack or MS Teams, including the type of subscription and retention settings in place, and (b) any use of SMS messages or other text messaging tools, such as iMessage, WhatsApp, or Signal, by its custodians to communicate on matters related to or arising from the subject matter of this litigation. In the event additional custodians are designated following the Court's approval of this Protocol,

the Parties shall disclose the foregoing information within 7 calendar days of the designation of the additional custodian, or within 30 calendar days of the Court's approval of this Protocol, whichever is later.

14. The Parties will meet and confer regarding issues relating to the parameters for collection of such data, the format of the production, and other unique issues to this type of data, including but not limited to the parsing of the conversations.

## III.  Format for Production of Electronically Stored Information

15. ESI shall be produced, as far as reasonably possible, in the following formats. The Parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

16. <u>TIFF Format</u>. The Parties will produce all documents created in standard office automation file formats (including but not limited to Microsoft Word or WordPerfect documents) and ESI that can practically be converted into TIFF format as Group IV single page TIFF format files imaged at 300 dpi. Every 500 TIFFs shall be grouped into a new folder; there shall not be a separate folder created for each document. Documents originally stored as native electronic files should be processed using a single time zone selected by the Producing Party, and the Producing Party will disclose that time zone to the Receiving Party. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape).

17. <u>Unique IDs</u>. The Parties will name each TIFF file with a unique name matching the Bates number labeled on the corresponding page. Each TIFF will contain a branded Bates number located on the lower right side of each image. Bates numbers shall not contain spaces between the prefix and the number. The Bates number must not obscure any part of the underlying image.

18.  <u>Image Load File</u>.  The Parties will provide an image load file (Opticon file) that contains document boundaries.

19.  <u>Confidentiality Endorsements</u>.  The Responding Party will brand any confidentiality or similar endorsements in a corner or along the top or bottom margins of the TIFF image.  Those endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number.  Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF or JPEG placeholder.

20.  <u>Document Text</u>.  For documents that were originally stored as native electronic files and which do not have redactions, the extracted, full text from the body of each document will be produced in a separate .txt file named for the beginning Bates number of the document.  For documents that were originally stored as native electronic files and which have redactions, Optical Character Recognition ("OCR") text will be produced from the redacted image(s) associated with each document as a separate .txt file for each page of the document named for the Bates number of the page.  Any redacted, privileged material should be clearly labeled to show that redactions exist on the TIFF image.  When a Party is unable to produce extracted full text, it will provide an explanation of that inability with its document production.

21.  <u>Special File Types</u>.  Spreadsheets (*e.g.,* Microsoft Excel) will be produced in native format unless redacted, in which instance, given the unique size and structure of Spreadsheets, the Parties shall meet and confer as to the production format that a Responding Party shall use in producing redacted Spreadsheets.  To the extent that they are produced in this action, audio, video, and multi-media files, and any other files which cannot be converted to TIFF format, will be produced in native format.  Native files shall be produced with a link in the NATIVEFILEPATH

field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Paragraph 36.  A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.  The file name of the native file will be identical to the Bates number of the placeholder, followed by the original file name and file extension.

22. The Parties shall take reasonable efforts to process presentations (*e.g.*, Microsoft PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF or JPEG image.

23. Certain categories of ESI are structurally complex and do not lend themselves to production as native format documents with links to a litigation database.  For example, in some instances renaming and/or linking a native document composed of subparts will render the document unusable.  After meeting and conferring, the Parties may agree to produce these types of documents in native form, accompanied with a Bates number and MD-5 hash value, but separate from a litigation support database.  In those instances, if a Requesting Party or its experts lack access to proprietary software needed to review the Responding Party's ESI in native format, the Parties will meet and confer to obtain a resolution which allows that Party to view the affected documents.

24. <u>Reproduction as Natives</u>.  The Parties agree that to the extent any Party seeks production in native format of specifically identified ESI produced originally in TIFF form, the Responding Party shall respond reasonably and in good faith to any such request.

25. <u>Source Code</u>.  Source code and certain other highly confidential technical materials shall be governed by the terms of the Parties' separately negotiated agreement(s).

26. <u>Databases and Other Structured Data</u>.  The Parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the Requesting Party and that its production does not impose an undue burden on the Responding Party, by, for example, requiring development of reports and/or software code to extract the information.  To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.  To the extent a Party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the Parties shall meet and confer to reach an agreement on alternative methods to enable the Requesting Party to view the ESI.

27. <u>Encrypted or Password-Protected ESI</u>.  Password-protected or otherwise encrypted documents must be produced in decrypted format wherever reasonably possible.  The Producing Party must make an attempt to unlock the document prior to production.  If the Producing Party is unable to decrypt a document using reasonable standard forensic techniques, the Producing Party shall retain a listing of such documents and, if possible, provide the Requesting Party a reasonable means to gain access to those native files (for example, by supplying passwords).  To the extent a document is not decryptable or otherwise accessible by the Requesting Party but is decryptable or otherwise accessible by the Producing Party, the Producing Party will provide the Requesting Party a description of the contents of the document.

28. <u>Production of Pictures/Images</u>.  Any photographic images created and/or maintained in electronic format will be produced in that format.

29. <u>Documents Warranting Different Formats/Variance</u>.  Recognizing that each Responding Party may experience production issues due to data systems or files that may not be

9

fully compatible with the technical specifications set forth herein or otherwise may warrant production in a different format, any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of documents or ESI.  The Parties will cooperate to arrange for the mutually acceptable production of such documents and no Party shall unreasonably object to any such variance.

30. Hyperlinks.  Hyperlinked documents, which for purposes of this Protocol shall mean documents shared through a Party's enterprise cloud-based document storage and sharing systems, such as Google Workspace, Microsoft Office's "Share Documents Via Link" feature, or similar document management systems, shall be produced and shall be produced with the relationship of the linked document and the document in which the hyperlink appears clearly indicated.  For avoidance of doubt, any hyperlinked documents shared from external parties and any hyperlinked documents that are not available within the scope of the collection phase shall presumptively not be collected, though the Parties agree to meet and confer in an effort to address issues related to such documents.  The Parties acknowledge that the copies of the hyperlinked documents produced under this provision shall be the version of the documents at the time the documents are collected for review for the purposes of this lawsuit, which may not be the same version of the document at the time the hyperlink was created or sent.

31. De-Duplication.  The Parties will perform duplicate consolidation, producing a single unique copy of a given email message and its attachments, or standalone file (based on MD5 or SHA-1 hash values at the document level), with references to each custodian/location in which a copy originally appeared as set forth in the metadata specifications below.  Documents shall be consolidated globally.  For e-mails with attachments, the hash value shall be generated based on

the parent-child document grouping. An email that includes content on the "bcc" or other blind copy field shall not be treated as duplicate of an email that does not include content in the "bcc" or other blind copy field, even if all remaining content in the email is identical. Deduplication shall not break apart families. The Responding Party will maintain references to all removed duplicate files, such that each custodian who possessed a copy of that consolidated file is reflected in a "Custodian" or equivalent metadata field.

32.  Thread Suppression. The Parties may also use email thread suppression to reduce duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread. If an email thread splits into two separate threads, then both threads shall be included in the production. If an email has an attachment and subsequent replies omit that attachment, then the original email with the attachment shall also be included in the production.

33.  Microsoft "Auto" Feature and Macros. Microsoft Office applications, including Word, Excel and PowerPoint, may contain "auto" feature settings that would cause a document date or similar information within the document, file names, file paths, etc. to automatically update when processed. If the Producing Party identifies "auto date", "auto file name", "auto file path" or similar features within the documents that would deliver inaccurate information for how the document was used in the ordinary course of business, a TIFF image branded with the words "Auto Date", "Auto File Name", "Auto File Path" or similar words that describe the "auto" feature shall be produced. Similarly, if a document contains a "macro", the document shall be branded with the word "Macro".

34.  Embedded Objects. Non-image files embedded within documents, such as spreadsheets within a PowerPoint, will be extracted as separate documents and treated like

11

attachments to the document in which they were embedded. Graphic objects embedded within documents or emails, such as logos, signature blocks, and backgrounds need not be extracted as separate documents.

35. <u>Compressed Files</u>. Compression file types (*e.g.,* .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element resulting in individual files. The container file itself shall not be produced.

36. <u>Document Metadata</u>. The Parties will produce extracted metadata for each document in the form of a Concordance .dat file, and include the following fields, except that if the field contains privileged information, the field should be left blank. The Parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) Bates_Begin, (b) Bates_End, (c) Attach_Begin, (d) Attach_End, (e) Custodian, (g) Conf_Desig, (h) Redacted, (i) Native_File, (j) TextFilePath, and (k) MD5, which should be populated by the Party or the Party's vendor. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| FIELD NAME | DESCRIPTION |
|---|---|
| Bates_Begin | The Bates label of the first page of the document |
| Bates_End | The Bates label of the last page of the document |
| Attach_Begin | The Bates label of the first page of a family of documents (*e.g.*, email and attachment) |
| Attach_End | The Bates label of the last page of a family of documents |
| Record_Type | The record type of a document (*e.g.*, email, attachment, efile, etc.) |
| File_Type | The file type of a document (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) |
| Time_Zone | The time zone used to process the document |
| Sent_Date | For email, the sent date of the message |
| Sent_Time | For email, the sent time of the message |

| FIELD NAME | DESCRIPTION |
| --- | --- |
| Received_Date | For email or calendar item, the received date of the message |
| Received_Time | For email or calendar item, the received time of the message |
| Create_Date | For efiles or attachments, the document's creation date or operating system creation date |
| Create_Time | For efiles or attachments, the document's creation time or operating system creation time |
| DateLastMod | For efiles or attachments, the document's last modified date or operating system last modified date |
| TimeLastMod | For efiles or attachments, the document's last modified time or operating system last modified time |
| Email_Subject | The subject of an email or the filename of an attachment or standalone e-file |
| Author | The author of a standalone efile or attachment |
| From | The sender of an email message |
| To | The recipients of an email message, in a semi-colon delimited, multi-value list |
| CC | The copyee(s) of an email message, in a semi-colon delimited, multi-value list |
| BCC | The blind copyee(s) of an email message, in a semi-colon delimited, multi-value list |
| Custodian_All | The custodian in whose file the document was found, and the custodians of any duplicates, in a semi-colon delimited, multi-value list |
| MD5 | The calculated MD5 hash value of the document |
| Native_File | The file path to the location of the native file if produced natively |
| Pagecount | The number of pages in the document |
| File_Name | The file name of an attachment to an email or a loose document not attached to an email |
| File_Ext | The file extension of an attachment to an email or a loose document not attached to an email |
| File_Size | Size of file in KB |
| FilePath | The directory structure or path where the original file was stored on the Party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path |
| TextFilePath | Path to extracted text/OCR file for document |

13

| FIELD NAME | DESCRIPTION |
|---|---|
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Redacted | Indication if the document includes redactions |
| Conf_Desig | The confidentiality designation, if any, for the document pursuant to any protective order in the case |
| Source_Party | Name of entity or Party producing the item |

Family relationships among e-mail and attachments will be maintained by ensuring that attachments immediately follow their parent e-mail, and setting the "begin attachment" and "end attachment" metadata fields appropriately. When a Party is unable to produce metadata for a particular field, it will provide an explanation of that inability with its document production, and/or provide a means in which the other Party can ascertain the connection between an email and an attachment.

Any redactions of metadata for privilege reasons shall be recorded on a privilege log in accordance with Section VI of this Protocol and the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

37.     Redaction.  If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced. However, to the extent that the text is searchable in the native format, the Responding Party will still provide searchable text for those portions of the document that have not been redacted. All metadata fields noted in this Protocol that do not contain privileged or protected information will be provided and will include all non-redacted data. A document's status as redacted does not relieve the Responding Party from providing all of the metadata required herein.

38.     For PowerPoint type files that are printed to TIFF for redaction and redacted (rather than redacted in native), the following printing options shall be enabled:

PowerPoint Print to TIFF Options

    1. Print notes pages

    2. Print hidden slides

    3. Print comments

39.     The Responding Party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible.

40.     <u>Retention of Documents</u>.  Each Party agrees to retain native electronic source documents for all ESI produced in this litigation.  Each Party agrees to use reasonable measures to maintain the native source documents in a manner so as to preserve the metadata associated with these electronic materials as it existed at the time of the original production in the event the review of such metadata becomes necessary.  Notwithstanding this, each Party understands and acknowledges that in some instances, producing the metadata of a document may change the metadata itself.  Each Party agrees that any metadata change that results from production to a Requesting Party is permissible.

41.     <u>Non-Party Documents</u>.  Any Party that issues a non-party subpoena shall timely notify other Parties when it receives non-party productions of documents, ESI or other responses from the non-party, and shall timely provide copies of all such productions in the format in which they were received from the non-party to the other Parties.  If the non-party produces documents or ESI that are not Bates labeled, the Receiving Party will Bates-label the documents or ESI before producing a copy to the other Parties if the produced documents or ESI are of the type so requiring consistent with other provisions of this Protocol.  Nothing in this Protocol precludes a Receiving

Party from reviewing a non-party production of documents or ESI and applying (if the non-party produced documents are without a confidentiality designation) or elevating a confidentiality designation (*e.g.*, elevating documents designated as "CONFIDENTIAL" to "HIGHLY CONFIDENTIAL") if the production contains confidential or extremely sensitive information as defined by the Confidentiality and Protective Order in this litigation.

## IV. Production of Paper Documents

42. Hard copy documents shall be produced, as far as reasonably possible, in the following formats:

43. <u>TIFF Format</u>.  The Parties will produce all documents originally maintained in paper files as Group IV single page TIFF format files imaged at 300 dpi.  Every 500 TIFFs shall be grouped into a new folder; there shall not be a separate folder created for each document.  They will name each TIFF file with a unique name matching the Bates number labeled on the corresponding page.  Each TIFF will contain a branded Bates number located on the lower right side of each image.  Bates numbers shall not contain spaces between the prefix and the number.

44. <u>Image Load File</u>.  The Parties will provide an image load file (Opticon file) that contains document boundaries.

45. <u>Document Text</u>.  The OCR text will be produced from the image(s) associated with each document as a separate .txt file for each page of the document named for the Bates number of the page.

46. <u>Document Metadata</u>.  The Parties will produce data for each document in the form of a .dat file including the following fields:

| FIELD NAME | DESCRIPTION |
|---|---|
| Bates_Begin | The Bates label of the first page of the document |
| Bates_End | The Bates label of the last page of the document |

16

| FIELD NAME | DESCRIPTION |
|---|---|
| Attach_Begin | The Bates label of the first page of a family of documents (*e.g.*, email and attachment) |
| Attach_End | The Bates label of the last page of a family of documents |
| Custodian | The custodian in whose file the document was found, and the custodians of any duplicates, in a semi-colon, delimited multi-value list |
| Pagecount | The number of pages in the document |
| Conf_Desig | The confidentiality designation, if any, for the document pursuant to any protective order in the case |

47.     Unitization of Documents.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized).  The Parties should re-unitize improperly unitized documents.

48.     Parent-Child Relationships.  Parent-child relationships (the association between an attachment and its parent document) should be preserved through, to the extent reasonably possible, child documents being produced immediately following the parent document and identified as they relate to the respective parent document.

V.     **Production Media**

49.     The Responding Party will transmit its ESI production using secure file-transfer protocol (sFTP) and shall ensure that the sFTP link remains active and accessible to the Requesting Party for a minimum of thirty (30) calendar days, and more as agreed upon by the Parties.  The Responding Party shall ensure that all passwords that the Requesting Party will need in order to access the production volume are transmitted to the Requesting Party.  In the alternative, the Responding Party will use the appropriate electronic media (CD, DVD, or hard drive) for its ESI production and will cooperate in good faith to use the highest-capacity available media to minimize

associated overhead. The Responding Party will label the physical media with the Responding Party, production date, media volume name, and document number range.

**VI.    Privilege Logs**

50.     Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

51.     The Parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines. Privilege logs may be produced on a rolling basis or after all productions are complete, but prior to the close of discovery.

52.     Communications involving work product associated with inside or outside counsel for the Parties related to this case that post-date October 21, 2024, need not be placed on a privilege log.

53.     In accordance with L. Civ. R. 26.2(c), the Parties shall meet and confer in advance of preparing privilege logs to discuss whether categorical or metadata privilege logs are appropriate in this action.

54.     Redactions to metadata for privilege reasons made pursuant to Paragraph 36 shall be recorded in a privilege log in accordance with this Section VI.

**VII.   No Waiver**

55.     Nothing in this Protocol requires disclosure of irrelevant documents or information or relevant documents or information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. By entering into this Protocol, the Parties do not waive any objections to the production, discoverability, relevance, admissibility, or confidentiality of documents and ESI, and expressly reserve the same.

56. A Responding Party's inadvertent production of ESI or hard copy documents that are not responsive to the Receiving Party's discovery requests shall not be deemed a waiver of relevance, admissibility, or materiality, and may be corrected by providing written notice to the Receiving Party.

57. Pursuant to Fed. R. Evid. 502(d) and the Confidentiality and Protective Order, the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or work-product-protection from discovery in this case or in any other federal or state proceeding.

**VIII. Scope of Agreement**

58. The Parties agree that this Protocol shall govern the conduct of ESI and hard copy document production with respect to the issues addressed in this plan. The Parties may seek to alter the scope and requirements of this Protocol for good cause by Order of the Court or by written agreement of the Parties. Nothing in this plan is intended to waive any privileges or, except as specifically provided herein, to impose obligations different from those contained in the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and/or the Court's Individual Rules of Practice in Civil Cases.

**AGREED:**

By: */s/ Brett D. Katz*
    William P. Barr (*pro hac vice*)
    Paul T. Cappuccio (4092508)
      *Counsel of Record*
    Justin M. Romeo (*pro hac vice*)
    Genevieve M. Kelly (*pro hac vice*)
    TORRIDON LAW PLLC
    801 Seventeenth Street NW, Suite 1100
    Washington, DC 20006
    Telephone: (202) 249-6900
    pcappuccio@torridonlaw.com
    jromeo@torridonlaw.com
    gkelly@torridonlaw.com

    Brett D. Katz (BK6685)
    TORRIDON LAW PLLC
    800 Westchester Avenue, Suite N-641
    Rye Brook, NY 10573
    Telephone: (646) 787-9290
    bkatz@torridonlaw.com

    Susan J. Kohlmann
    Alison J. Stein
    Gianni P. Servodidio
    JENNER & BLOCK LLP
    1155 Avenue of the Americas
    New York, NY 10036
    Telephone: (212) 891-1600
    skohlmann@jenner.com
    astein@jenner.com
    gservodidio@jenner.com

*Counsel for Plaintiffs Dow Jones & Company, Inc. and NYP Holdings, Inc.*

By: */s/ James L. Day*
    Cameron J. Gibbs
    James L. Day (*pro hac vice*)
    Eugene Y. Mar (*pro hac vice*)
    Michelle Kao (*pro hac vice*)
    FARELLA BRAUN + MARTEL LLP
    One Bush Street, Suite 900
    San Francisco, CA 94104
    Telephone: (415) 954-4400
    Facsimile: (415) 954-4480
    cgibbs@fbm.com
    jday@fbm.com
    emar@fbm.com
    mkao@fbm.com

*Counsel for Defendant Perplexity AI, Inc.*

Dated: July 31, 2025
    New York, New York

**SO ORDERED**

_____
Katherine Polk Failla
United States District Judge