UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOW JONES & COMPANY, INC. and
NYP HOLDINGS, INC.,

                             Plaintiffs,

                -v.-

PERPLEXITY AI, INC.,

                             Defendant.

---

24 Civ. 7984 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:[1]

　　This case stands at the crossroads of artificial intelligence and
intellectual property.  Plaintiffs Dow Jones & Company, Inc. ("Dow Jones") and
NYP Holdings, Inc. ("NYP Holdings") (collectively, "Plaintiffs") bring this action
against Defendant Perplexity AI, Inc. ("Perplexity"), alleging claims of copyright
infringement pursuant to 17 U.S.C. § 106, and false designation of origin and
trademark dilution pursuant to 15 U.S.C. § 1125.  Defendant moves to dismiss
Plaintiffs' Second Amended Complaint (the "SAC") in its entirety pursuant to
Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), or, in the alternative, to
transfer this action to the United States District Court for the Northern District
of California pursuant to 28 U.S.C. § 1404(a).  Defendant also moves for the
dismissal of ten of Plaintiffs' copyrighted works (the "Ten Additional Works")
pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth
in the remainder of this Opinion, the Court denies Defendant's motion in full.

---

[1]　　Emma Kruus, a rising second-year law student at New York University School of Law,
provided substantial assistance in the researching and drafting of this Opinion.

**BACKGROUND**[2]

A.    **Factual Background**

1.    **The Parties**

Dow Jones and NYP Holdings are news publishers owned by the same parent company, News Corporation ("News Corp").  (SAC ¶ 2).  Plaintiffs' publications include, among others, *The Wall Street Journal* and the *New York Post*.  (*Id.*).  Both companies are incorporated in Delaware with their headquarters and principal places of business in New York.  (*Id.* ¶¶ 16-17).  Plaintiffs contend that, as news publishers, the "revenues for their original content come predominantly from selling subscriptions to their digital publications and from online advertising that is presented when a consumer visits the publishers' website directly[.]"  (*Id.* ¶ 3).

Defendant, a Delaware corporation with its principal place of business in San Francisco, California, is a generative artificial intelligence ("AI") company that developed an "answer engine" called Perplexity.  (SAC ¶¶ 1, 4, 18).  Perplexity allegedly allows users to ask questions and receive a "coherent, easy-

---

[2]    This Opinion draws its facts from the Second Amended Complaint ("SAC" (Dkt. #46)), the well-pleaded allegations of which are taken as true for purposes of this Opinion, as well as certain exhibits attached to the SAC ("SAC, Ex. [ ]" (Dkt. #46)).  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009).  The Court also relies, as appropriate, on certain of the exhibits attached to the Declaration of Michelle Kao ("Kao Decl., Ex. [ ]" (Dkt. #51)), each of which is incorporated by reference in the SAC.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #48); to Plaintiffs' memorandum of law in opposition as "Pl. Opp." (Dkt. #54); and to Defendant's memorandum of law in reply as "Def. Reply" (Dkt. #56).

to-understand answer" based on "information from [other] authoritative sources." (*Id.* ¶¶ 4, 70). Perplexity's search engine relies on a retrieval-augmented generation ("RAG") database, comprised of "content from original sources," to provide answers to users. (*Id.* ¶¶ 5, 69). Specifically, the RAG indices are allegedly "comprised of content that [Perplexity] want[s] to use as source material from which to generate the 'answers' to user prompts and questions." (*Id.* ¶ 71). The information from the RAG database is then provided to a large language model ("LLM"), which "repackages the original, indexed content in written responses … to users." (*Id.* ¶ 5). The "publicly available content" that Perplexity sources includes "articles, websites, and journals[ ]" that the "AI compan[y] deem[s] trustworthy[,]" and the RAG technology "tells the LLM exactly which original content to turn into its 'answer.'" (*Id.* ¶¶ 70-71, 77).

### 2. The Alleged Infringing Uses

As news publishers, Plaintiffs own an extensive body of copyrighted materials that they have registered with the United States Copyright Office, both for *The Wall Street Journal* and the *New York Post.* (SAC ¶¶ 50, 53, 132-133, 142-143). Plaintiffs also own a number of federally registered trademarks for the marks "*The Wall Street Journal*," "*WSJ*," "*New York Post*," and "*NYP*." (*Id.* ¶¶ 51, 54). The relevant trademark registration numbers are Nos. 408,379; 1,960,159; 4,297,319; 4,297,321; 4,298,327; 3,981,663; 4,813,188; 1,526,818; 2,213,076; and 3,639,502, among others. (*Id.*). According to

Plaintiffs, these trademarks, "by virtue of their continued use[,] are incontestable." (*Id.*).

Plaintiffs allege that their copyrighted and trademarked materials are of particular importance in the digital age, as news publishers "rely overwhelmingly on digital content, including paid access to copyrighted content and content supported by advertising revenue." (SAC ¶ 59). Accordingly, Plaintiffs allege that they are seriously harmed by Defendant's product, which allows users to "Skip the Links" to the original publishers' website and instead access copyrighted content through Defendant's responses to users' queries. (*Id.* ¶¶ 1, 4). While this allegedly allows Defendant to "provide its users with accurate and up-to-date news and information[,]" Plaintiffs state that this impermissible use of copyrighted works "divert[s] customers and critical revenues away from [the] copyright holders." (*Id.* ¶ 1). Indeed, Plaintiffs claim that "a primary and express purpose of the products … Perplexity sells in New York is to encourage and allow its subscribers to 'Skip the Links' … to Plaintiffs' copyrighted articles[.]" (*Id.* ¶ 44).

Broadly speaking, Plaintiffs claim that Defendant violates copyright law in three distinct ways: *first*, by "copying a massive amount of Plaintiffs' copyrighted works as inputs into its RAG index"; *second*, by providing consumers with outputs that "contain full or partial verbatim reproductions of Plaintiffs' copyrighted articles"; and *third*, by "generat[ing] made-up text (hallucinations) in its outputs and attribut[ing] that text to Plaintiffs' publications using Plaintiffs' trademarks." (SAC ¶¶ 96, 105, 115). In support

of their claims, Plaintiffs provide an example in their SAC where a "Perplexity Pro" user asked Perplexity to generate the full text of a copyrighted *New York Post* article, and Perplexity generated a "verbatim reproduction of the article in full." (*Id.* ¶ 108). Plaintiffs include a photo of the allegedly infringing output in their SAC. (*Id.*). Plaintiffs also provide photo examples of hallucinations generated by Perplexity, in which Perplexity "fabricated" information not actually contained in the *New York Post* and *Wall Street Journal* articles that Perplexity cited. (*Id.* ¶¶ 116-117, 119-120). Plaintiffs claim that hallucinations such as these are "likely to cause confusion or mistake" for consumers. (*Id.* ¶ 121).

Plaintiffs also claim that Defendant's conduct "directly and foreseeably harms [Plaintiffs] in this State and District because Dow Jones and NYP Holdings own their copyrighted content and trademarks in New York and have a high concentration of customers in New York City." (SAC ¶ 43). Plaintiffs further assert that Defendant's conduct harms Plaintiffs by preventing them from licensing their copyrighted content, misappropriating advertising and subscription revenue, and damaging the value of Plaintiffs' trademarks. (*Id.* ¶¶ 122-128).

### 3. Defendant's Alleged Contacts with New York

Although Defendant is a Delaware corporation with its headquarters in California, Plaintiffs allege that Defendant has significant contacts with this forum. To begin, Plaintiffs claim that Defendant is registered to do business in New York. (SAC ¶ 22). Plaintiffs also claim that Defendant "uses and/or

possesses real property" and "office space" in this District.  (*Id.* ¶ 23).

Defendant allegedly employs "numerous individuals" in New York, including

high-level employees such as "its Co-Founder and Chief Strategy Officer" and

its "Founding Sales Lead and General Manager of Finance."  (*Id.* ¶ 24; Pl.

Opp. 8).  These employees, based in New York, are alleged to "develop,

implement, maintain, and promote the technology that Perplexity uses to

gather and misappropriate Plaintiffs' copyrighted content."  (SAC ¶ 25).  These

employees also allegedly "market Perplexity's products to customers and

potential customers, ... which results in Perplexity contracting for the sale of

goods and services to customers in New York."  (*Id.*).

　　　In addition to these existing contacts, Plaintiffs allege that Defendant is

"actively seeking to expand its New York presence by hiring additional

employees."  (SAC ¶ 27).  For instance, Defendant had "four active job listings"

for positions in New York available on its website as recently as September

2024.  (*Id.*).  The available positions are for a Machine Learning Engineer,

Engineering Manager, Senior Backend Software Engineer, and a Site Reliability

Engineer.  (*Id.*).  Key functions of these employees include "'[d]evelop[ing],

train[ing], and optimiz[ing] machine learning models for recommendation

systems' and '[b]uild[ing] groundwork infrastructure for retrieval.'"  (*Id.*).

Finally, Plaintiffs contend that Defendant "recruits and maintains a network of

'Campus Strategists' at New York colleges and universities" to "[l]ead growth

and marketing on campus[.]"  (*Id.* ¶ 30).  As compensation for their efforts,

Defendant provides these Campus Strategists with certain benefits, including a "[f]ree Perplexity Pro account." (*Id.*).

Separately, Plaintiffs contend that Defendant "aggressively promotes and advertises its products and services in this State and District[.]" (SAC ¶ 38). Plaintiffs claim that "Perplexity's website specifically targets customers in New York with promotional material tailored to a New York audience, including a web page inviting visitors to 'Discover New York with Perplexity.'" (*Id.*). Plaintiffs provide additional examples of advertisements allegedly targeting New York consumers, including a photograph Defendant posted on its Instagram of a "massive billboard in Times Square which read 'Congratulations Perplexity on 250 million questions answered last month[,]'" and a picture posted on X of a "Tesla Cybertruck emblazoned with Perplexity's name parked in Times Square." (*Id.* ¶¶ 39-40).

## B. Procedural Background

Plaintiffs initiated the instant action on October 21, 2024, with the filing of the initial Complaint. (Dkt. #1). On November 12, 2024, Defendant filed a motion for an extension of time to file an answer, which request the Court granted. (Dkt. #17, 19). On December 11, 2024, prior to Defendant's filing of its response to the Complaint, Plaintiffs filed their First Amended Complaint (the "FAC") with seven attached appendices. (Dkt. #36). Defendant proceeded to file a letter motion request for a pre-motion conference on its anticipated motion to dismiss the FAC, which request Plaintiffs opposed. (Dkt. #39, 40). The Court granted the motion for a pre-motion conference on January 3, 2025,

and scheduled the conference for January 14, 2025. (Dkt. #41). During the January 14, 2025 pre-motion conference, the Court set a briefing schedule for Defendant's anticipated motion to dismiss, which schedule included an opportunity for Plaintiffs to further amend the FAC. (January 14, 2025 Minute Entry).

On January 28, 2025, in accordance with the Court's schedule, Plaintiffs filed the SAC, the operative complaint in this action. (Dkt. #46). On February 18, 2025, Defendant filed its motion to dismiss or, in the alternative, to transfer this action to the Northern District of California. (Dkt. #47, 48). Plaintiffs filed their memorandum of law in opposition of Defendant's motion to dismiss on March 11, 2025. (Dkt. #54). On March 25, 2025, Defendant filed its reply to Plaintiffs' opposition. (Dkt. #56).

## DISCUSSION

### A. The Court Denies Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)

#### 1. Applicable Law

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). If a court does not conduct an evidentiary hearing on the issue of personal jurisdiction, as is the case here, "the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (per curiam) (quoting *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez,*

171 F.3d 779, 784 (2d Cir. 1999) ("*Bank Brussels I*")).  A plaintiff makes such a showing through "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *Robertson-Ceco*, 84 F.3d at 567 (alterations adopted) (quoting *Ball* v. *Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  The plaintiff's jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor."  *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).  Where a court does not hold an evidentiary hearing on the jurisdictional question, it may, nevertheless, consider matters outside the pleadings, "including accompanying affidavits, declarations, and other written materials."  *Vasquez* v. *Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 245 n.1 (S.D.N.Y. 2020); *see also Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

### 2.    Analysis

Plaintiffs assert two claims of copyright infringement pursuant to 17 U.S.C. § 106 (Counts I and II) and one claim for false designation of origin and dilution of Plaintiffs' trademarks pursuant to 15 U.S.C. § 1125 (Count III).  "A court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question[s]."  *Lugones* v. *Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 234 (S.D.N.Y. 2020) (quoting *Cohen* v. *Facebook, Inc.*, 252 F. Supp. 3d 140, 148 (E.D.N.Y. 2017) (citing *Arrowsmith* v. *United Press Int'l*, 320 F.2d 219, 221 (2d

Cir. 1963))); *cf. Moreira* v. *Societe Generale, S.A.*, 125 F.4th 371, 397 n.17 (2d

Cir. 2025) (noting that courts may proceed to consider merits of claim "where,

as here, the personal jurisdictional challenges are based on factual allegations

that are, in this early posture, still under development" (quoting *ONY, Inc.* v.

*Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013) (internal

quotation marks and citation omitted))).  Accordingly, the Court begins its

analysis by addressing Defendant's motion to dismiss Plaintiffs' claims for lack

of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2),

before turning to Defendant's motions to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(3), to transfer pursuant to 28 U.S.C. § 1404(a), and to

dismiss certain copyright infringement claims pursuant to Federal Rule of Civil

Procedure 12(b)(6).

Defendant's primary argument under Rule 12(b)(2) is that the SAC

should be dismissed because Plaintiffs have not established a sufficient

connection between their infringement claims and Defendant's contacts with

this state.  (Def. Br. 9).  Plaintiffs counter that, based on, *inter alia*, Defendant's

business activities, marketing efforts, and customer base in New York,

Plaintiffs have sufficiently alleged personal jurisdiction.  (Pl. Opp. 7-8).  For the

reasons that follow, the Court agrees with Plaintiffs and finds that it has

personal jurisdiction over Defendant with respect to all claims asserted in the

SAC.

### a. The Court Has Personal Jurisdiction over Defendant Under New York's Long-Arm Statute

To determine whether the exercise of personal jurisdiction over a defendant is proper, a court conducts a two-part inquiry. *First*, since neither the Copyright Act nor the Lanham Act provides for nationwide service of process, this Court must look to the personal jurisdiction rules of the forum state. *See Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) ("*Licci II*"); *Sunward Elecs., Inc.* v. *McDonald*, 362 F.3d 17, 22 (2d Cir. 2004); *Fort Knox Music Inc.* v. *Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000). *Second*, the court must examine whether the exercise of personal jurisdiction comports with due process protections established under the United States Constitution, as set forth in *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945), and its progeny. *See Licci II*, 732 F.3d at 168. Plaintiffs argue that the Court has specific jurisdiction over Defendant under New York Civil Practice Law & Rules ("CPLR") §§ 302(a)(1), 302(a)(2), and 302(a)(3). (Pl. Opp. 5).[3] The Court considers each basis for personal jurisdiction in turn.

---

[3] New York's long-arm statute allows for general jurisdiction, "which may arise from a foreign defendant's overall course of business in the [forum] state." *See Beskrone* v. *Berlin*, 656 F. Supp. 3d 496, 506 (S.D.N.Y. 2023); CPLR § 301. The Supreme Court has made clear that to be subject to general jurisdiction in a particular forum state, a defendant's "affiliations with the State [must be] so 'continuous and systematic' as to render [it] essentially at home" there. *Daimler AG* v. *Bauman*, 571 U.S. 117, 119 (2014) (second alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011)). The "at home" fora for a corporation "are its place of incorporation and principal place of business." *Ford Motor Co.* v. *Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Daimler*, 571 U.S. at 137). Defendant has its headquarters and principal place of business in the Northern District of California and, as such, is not subject to general jurisdiction in New York. Indeed, Plaintiffs do not argue that Defendant is subject to general jurisdiction in New York. (*See generally* Pl. Opp.).

### i.    CPLR § 302(a)(1)

CPLR § 302(a)(1) provides, in relevant part, that a court may exercise personal jurisdiction "over any non-domiciliary ... who in person or through an agent ... transacts any business within the state," so long as the cause of action "aris[es] from" that transaction.  CPLR § 302(a)(1).  Accordingly, a court may exercise personal jurisdiction over a non-domiciliary if two conditions are met: "first, the non-domiciliary must transact business within the state; second, the claims against the non-domiciliary must arise out of that business activity."  *Aquiline Cap. Partners LLC* v. *FinArch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (internal citations and quotation marks omitted).  Courts in this District assess activity based on "the totality of circumstances concerning the party's interactions with, and activities within, the state." *Seiden* v. *Baker Tilly Hong Kong Ltd.*, No. 23-1254, 2024 WL 4441582, at *2 (2d Cir. Oct. 8, 2024) (summary order) (quoting *Bank Brussels I,* 171 F.3d at 787).

### (a)    Transacting Business in New York

Considering the "totality of the circumstances," the Court finds that Defendant clearly "transacts business" in New York.  *Bank Brussels I*, 171 F.3d at 787; CPLR § 302(a)(1).  Indeed, Defendant conducts business in New York in a manner similar to that of a traditional business: Defendant is registered to do business in New York; rents an office in New York; employs staff, including a "Chief Strategy Officer," in New York; recruits employees to work in New York; and specifically targets New York with advertisements.  (SAC ¶¶ 22-27, 38-40). *See, e.g.*, *Wahlhuetter* v. *CollegeHumor.com, LLC*, No. 19 Civ. 1501 (LGS) (BCM),

2021 WL 6205506, at *5 (S.D.N.Y. Nov. 29, 2021) (finding registering to do business and maintaining office space in New York sufficient to meet the "transacts business" prong of § 302(a)(1)), *report and recommendation adopted*, No. 19 Civ. 1501 (LGS), 2022 WL 19701 (S.D.N.Y. Jan. 3, 2022); *Corley* v. *Vance*, 365 F. Supp. 3d 407, 434 (S.D.N.Y. 2019) (finding that Facebook transacted business in New York because it was "registered to do business in New York, the company ha[d] two offices in New York," and "7% of its global workforce [wa]s located" in New York).

While such factual allegations are sufficient to establish that Defendant transacts business in New York, the Court also notes that in cases such as this one, where a defendant conducts business over the internet, the Second Circuit has recognized that the "sliding scale" framework established in *Zippo Manufacturing Co.* v. *Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), is helpful in analyzing personal jurisdiction "insofar as it helps to decide whether the defendant 'transacts any business' in New York[.]" *Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 252 (2d Cir. 2007). Under this framework, "[a]t one end of the scale, [is] a 'passive' website that 'merely provides information that is accessed by individuals in New York[.]'" *Allstar Mktg. Grp. LLC* v. *andnov73*, No. 20 Civ. 9069 (PKC), 2023 WL 5208008, at *2 (S.D.N.Y. Aug. 14, 2023) (quoting *EnviroCare Techs., LLC* v. *Simanovsky*, No. 11 Civ. 3458 (JS) (ETB), 2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012); *Zippo*, 952 F. Supp. at 1124). Such a website, in and of itself, would not support the exercise of personal jurisdiction. *Id.* By contrast, "[f]ully 'interactive' websites, which are

13

used to purposefully sell goods or services in New York, or charge membership fees to registered users in New York, can be sufficient to trigger jurisdiction under § 302(a)(1) where the cause of action arises out of such purposeful activity." *Creative Photographers, Inc.* v. *Grupo Televisa, S.A.B.*, No. 23 Civ. 7106 (LJL), 2024 WL 1533189, at *7 (S.D.N.Y. Apr. 8, 2024) ("*Creative Photographers I*") (quoting *Philpot* v. *Kos Media LLC*, No. 16 Civ. 1523 (AT) (BCM), 2017 WL 2270248, at *10 (S.D.N.Y. Apr. 21, 2017), *report and recommendation adopted*, No. 16 Civ. 1523 (AT), 2017 WL 2269531 (S.D.N.Y. May 23, 2017)). Courts in this District have found websites to be "highly interactive" when they "allow[ ] a buyer in New York to submit an order online[.]" *See, e.g.*, *McGraw-Hill Glob. Educ. Holdings, LLC* v. *Khan*, 323 F. Supp. 3d 488, 494 (S.D.N.Y. 2018) (finding jurisdiction where the defendants "distribute digital copies of Plaintiffs' works to customers for a fee" (quoting *Audiovox Corp.* v. *S. China Enter., Inc.*, No. 11 Civ. 5142 (JS) (GRB), 2012 WL 3061518, at *3 (E.D.N.Y. July 26, 2012)) (citing *Hsin Ten Enter. USA, Inc.* v. *Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000))).

Plaintiffs point out that Defendant runs a "highly interactive" website, where it conducts its "business of selling 'answers' … that either are reproductions or detailed summaries of Plaintiffs' copyrighted works[.]" (SAC ¶ 28; Pl. Opp. 9). Indeed, Defendant's website enables users to ask questions, receive answers, purchase "Perplexity Pro subscriptions," and learn about "active job listings for positions specifically based in New York[.]" (SAC ¶¶ 27, 32, 36). These features are sufficient to demonstrate that Defendant operates

14

an interactive website.  *See, e.g.*, *Citigroup Inc.* v. *City Holding Co.*, 97 F. Supp.

2d 549, 565 (S.D.N.Y. 2000) (finding jurisdiction where a website allowed users

to "chat" online with representatives and apply for loans); *Capitol Recs., Inc.* v.

*MP3tunes, LLC*, No. 07 Civ. 9931 (WHP), 2008 WL 4450259, at *4 (S.D.N.Y.

Sept. 29, 2008) (finding website "interactive" because New York users could pay

for "premium services").

Defendant does not contest that it operates a "highly interactive" website

(Def. Reply 3), but claims that "more is required" when jurisdiction is based on

digital contacts (*id.* at 4 (citing *Neogen Corp.* v. *Neo Gen Screening, Inc.*, 282

F.3d 883, 890 (6th Cir. 2002))).  Defendant is of course correct that "mere

interactivity is not enough to support jurisdiction under Section 302(a)(1)."

*Capitol Recs., LLC* v. *VideoEgg, Inc.*, 611 F. Supp. 2d 349, 358 (S.D.N.Y. 2009).

Instead, "[t]he correct inquiry is whether defendant's services were targeted at

New York residents, and whether New York residents used those services."

*Coll. Essay Optimizer, LLC* v. *Edswell, Inc.*, No. 14 Civ. 8586 (LAK), 2015 WL

5729681, at *5 (S.D.N.Y. Sept. 30, 2015).  Defendant's advertising efforts,

which specifically targeted New York, are sufficient to meet this threshold.  *See*

*Miller* v. *Netventure24 LLC*, No. 19 Civ. 7172 (LGS) (BCM), 2021 WL 3934262,

at *4 (S.D.N.Y. Aug. 6, 2021) (finding jurisdiction where defendant targeted New

York viewers by "publishing articles about New York, illustrated by

photographs, taken in New York, depicting New York scenes and residents"),

*report and recommendation adopted*, No. 19 Civ. 7172 (LGS), 2021 WL 3931928

(S.D.N.Y. Sept. 2, 2021); *see also VideoEgg*, 611 F. Supp. 2d at 360 (finding

15

fact that defendant "sought to participate in advertising campaigns specifically directed at New York" sufficient to establish that defendant transacted business in the state).

For example, Defendant's website features a page that states, "Discover New York with Perplexity." (SAC ¶ 38). This page goes on to state "[w]hether you're in Times Square or exploring Central Park, Perplexity's got you covered to find the best restaurants, hotels, attractions, and activities in New York." (*Id.*). Defendant's brand was also displayed on a billboard in Times Square with the message, "Congratulations Perplexity on 250 million questions answered last month[,]" and a photo of the billboard was posted to Defendant's Instagram account. (*Id.* ¶ 39). Finally, Defendant's CEO posted a photo on X depicting a Tesla Cybertruck in Times Square with "Perplexity" written on the side of the truck. (*Id.* ¶ 40). Defendant alleges that these advertisements did not target New York users specifically, and were instead targeted to "out-of-town visitors" or were "paid for and placed by a third party[.]" (Def. Br. 10). The Court is not convinced. Taking Plaintiffs' factual assertions as true, the Court finds that advertisements urging users to "Discover New York," and a Cybertruck branded with the company name are enough to demonstrate that Defendant targeted New York users and "purposefully avail[ed] itself of the privilege of conducting activities within New York." *Creative Photographers I*, 2024 WL 1533189, at *6 (internal quotation marks omitted and alteration adopted); *see Miller*, 2021 WL 3934262, at *4.

16

> **(b)** **The Nexus Between Plaintiffs' Claims and Defendant's Transaction of Business in New York**

As discussed, it is not enough for Defendant merely to conduct business in New York; Plaintiffs' claims must also "arise out of [Defendant's] business activity." *Aquiline Cap. Partners LLC*, 861 F. Supp. 2d at 386 (quoting *CutCo Indus., Inc.* v. *Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). "A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Creative Photographers I*, 2024 WL 1533189, at *7 (quoting *Best Van Lines, Inc.*, 490 F.3d at 246 (internal quotation marks omitted)). "A connection that is 'merely coincidental' is insufficient to support jurisdiction." *Sole Resort, S.A. de C.V.* v. *Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (quoting *Johnson* v. *Ward*, 4 N.Y.3d 516, 520 (2005)). That being said, "[t]his analysis is 'relatively permissive' and 'varies according to the nature and elements of the particular causes of action pleaded.'" *Peterson* v. *Bank Markazi*, 121 F.4th 983, 1004 (2d Cir. 2024) (quoting *Licci ex rel. Licci* v. *Lebanese Canadian Bank*, 960 N.Y.S.2d 695, 702-03 (2012) ("*Licci I*")), *cert. denied sub nom. Clearstream Banking, S.A.* v. *Peterson*, No. 24-1154, 2025 WL 1727409 (U.S. June 23, 2025). The Second Circuit has noted that "[t]he determination of whether an articulable nexus exists is to be made 'in light of all the circumstances,' and only requires that the legal claim 'not [be] completely unmoored' from 'the defendant's New York business activity[.]'" *Id.* (internal citations omitted) (quoting *Licci II*, 732 F.3d at

168-69).  "In effect, the 'arise-from' prong limits the broader 'transaction-of-business' prong to confer jurisdiction only over those claims in some way arguably connected to the transaction."  *Licci I*, 960 N.Y.S.2d at 702-03.

In arguing for dismissal, Defendant attempts to silo each category of its contacts with New York to show that no individual act is sufficient to confer personal jurisdiction.  (Def. Br. 9-12).  Specifically, Defendant states that its "small contingent of employees in New York is not sufficiently connected to Plaintiffs' claims"; that "none of th[e] isolated allegations [of advertising] shows that Perplexity affirmatively targeted users in New York, let alone that any advertising is related to Plaintiffs' input or output infringement claims"; and that the "mere availability" of Defendant's interactive website in New York is insufficient to connect Plaintiffs' claims to Defendant's contacts.  (*Id.* at 9-10, 12).  The Court ultimately finds these arguments unpersuasive.  Rather, after evaluating jurisdiction for each claim not only based on the quantity of Defendant's contacts with New York, but also the quality of those contacts, the Court concludes that jurisdiction is proper.  *See Grand River Enters. Six Nations, Ltd.* v. *Pryor*, 425 F.3d 158, 166 (2d Cir. 2005); *Fischbarg* v. *Doucet*, 9 N.Y.3d 375, 380 (2007).

The Court begins by finding that Plaintiffs' first claim of copyright infringement, which concerns "copying of … Plaintiffs' copyrighted works as inputs into its RAG index," is sufficiently connected to Defendant's contacts with New York.  (SAC ¶ 96).  As discussed, Plaintiffs allege that Defendant, without authorization, willfully copied Plaintiffs' copyrighted materials "that it

has been able to access with its own or with third parties' web crawlers" for use as inputs into Defendant's RAG database.  (SAC ¶ 134).  Defendant rejoins that these allegations are unrelated to Defendant's contacts with New York because "[t]he majority of the engineers that work on and develop the search engine and RAG index … are based at the San Francisco headquarters[.]"  (Def. Br. 4). While it may be true that many of the RAG engineers are based in San Francisco, Defendant does not dispute that its Co-Founder and Chief Strategy Officer works in New York, and that "engineers located in New York are largely responsible for back-end infrastructure," which includes "maintaining Perplexity's website."  (Pham Decl. ¶ 11; Def. Reply. 7-8).  These facts are noteworthy because, as Plaintiffs point out, their claim for copyright infringement is based on the allegedly illegal inputs into the RAG index, which are inextricably linked to the unlawful "answers" sold on Defendant's website. (Pl. Opp. 8-9).  In other words, these inputs are significant because they cause Defendant's website to produce answers that are reproductions or detailed summaries of Plaintiffs' copyrighted works.

These allegations, especially when viewed in conjunction with Defendant's other actions, such as registering its business in New York, renting office space, recruiting New York employees, and targeting New York residents through advertising, share a sufficient "nexus" with Plaintiffs' claims such that jurisdiction is properly established.  *See McGraw-Hill*, 323 F. Supp. 3d at 494-95 (finding personal jurisdiction where defendants' "highly interactive" website allowed prospective customers in New York to browse and purchase

19

"unauthorized digital copies of Plaintiffs' works"); *Brown* v. *Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 358 (S.D.N.Y. 2014) (finding jurisdiction under CPLR § 302(a)(1) where internet company "avail[ed] itself of the benefits of transacting business in the State by marketing services to and entering transactions with New York-based customers").

For many of the same reasons, this Court also has jurisdiction over Plaintiffs' second claim: that "[Defendant] … utilizes Plaintiffs' copyrighted content, accessed through its RAG process, to produce outputs or 'answers' to users' queries," and that "[t]he outputs or 'answers' to users' queries contain and/or are derived from Plaintiffs' copyrighted content[.]" (SAC ¶¶ 146-147). While Defendant asserts that Plaintiffs' "infringing output" arguments do not "arise from" Defendant's contacts because Plaintiffs have not proven that "*any* user in New York has accessed any of Plaintiffs' copyrighted content," the Court disagrees. (Def. Br. 11 (emphasis in original)). While certain courts in this District have required plaintiffs to demonstrate specifically that a consumer in the forum bought a product from a defendant's website, *see Creative Photographers, Inc.* v. *Grupo Televisa, S.A.B.*, 763 F. Supp. 3d 618, 633 (S.D.N.Y. 2025) ("*Creative Photographers II*") (collecting cases) (finding no jurisdiction where plaintiff alleged that "[i]nfringing [w]ebsites made subscriptions or print materials available for sale," but did not "allege that either website ever made a sale in New York"), in other instances, courts have found jurisdiction where the "[p]laintiffs' submissions indicate that it is likely that the [defendants] made sales into the New York market that are not

20

documented in [the] [p]laintiffs' papers," *WowWee Grp. Ltd.* v. *Meirly*, No. 18

Civ. 706 (AJN), 2019 WL 1375470, at *4 (S.D.N.Y. Mar. 27, 2019); *see also Mrs.*

*U.S. Nat'l Pageant, Inc.* v. *Miss U.S.A. Org., LLC*, 875 F. Supp. 2d 211, 224-25

(W.D.N.Y. 2012) ("The focus, for purposes of determining whether personal

jurisdiction exists, should be on the *defendants'* activities and intent vis-à-vis

the state in question, not on whether any particular consumers from that state

have responded to defendants' solicitations." (emphasis in original)).  Such is

the case here, where Defendant allegedly had a New York-specific page titled

"Discover New York with Perplexity"; was featured on a billboard in Times

Square that read "Congratulations Perplexity on 250 million questions

answered last month"; and maintains a "network of 'Campus Strategists'" who

were all given Perplexity Pro accounts.  (SAC ¶¶ 30, 38-39).  Furthermore,

Defendant's ties to this State are bolstered by its other contacts — such as

employees and marketing efforts — which demonstrate that "some degree of

commercial activity" related to its website has occurred in New York.  *Alibaba*

*Grp. Holding Ltd.* v. *Alibabacoin Found.*, No. 18 Civ. 2897 (JPO), 2018 WL

2022626, at *4 (S.D.N.Y. Apr. 30, 2018) (quoting *ISI Brands, Inc.* v. *KCC Int'l,*

*Inc.*, 458 F. Supp. 2d 81, 87-88 (E.D.N.Y. 2006)).[4]

---

4　　Defendant relies heavily on *Lopez* v. *Shopify, Inc.*, No. 16 Civ. 9761 (VEC) (AJP), 2017
WL 2229868, at *8 (S.D.N.Y. May 23, 2017), in arguing that its contacts are not
sufficient to establish jurisdiction.  However, that case is readily distinguishable.  In
*Lopez*, the plaintiff sued the defendant for actions taken by a third party on the
defendant's website.  *Id.* at *1.  Accordingly, while the court found that the defendant
conducted business in New York, it found no "nexus" existed between those dealings
and the claims because the plaintiff failed to show that the defendant's connection to
the alleged direct infringer "was the proximate result of [its] dealings in New York."  *Id.*
at *8.  There is no such issue here, where Plaintiffs allege that Defendant's conduct in

Finally, and again using a similar analysis, the Court finds that Plaintiffs' claim of false designation of origin and dilution of Plaintiffs' trademarks under 15 U.S.C. § 1125 "arises out of" Defendant's contacts with New York. Plaintiffs' trademark claim alleges that Defendant's application "misrepresent[s] Plaintiffs' work [by] falsely attributing content … to Plaintiffs' trademarked publications." (SAC ¶ 158). As with Plaintiffs' copyright claims, Defendant's contacts relate to Defendant's website, which is the source of the alleged dilution of Plaintiffs' trademarks. (*Id.* ¶ 160). And Defendant's employees in New York, both current and prospective, work to "support the operation of the … technology that Perplexity uses[,]" "[d]evelop, train, and optimize machine learning models for recommendation systems," and "[b]uild groundwork infrastructure for retrieval[.]" (*Id.* ¶¶ 25, 27). These New York-based employees include high-level employees, such as Defendant's Co-Founder and Chief Strategy Officer. (*Id.* ¶ 24). Finally, Defendant targets New York with advertisements to encourage users to visit Defendant's website, where Defendant allegedly provides the trademarked material. (*Id.* ¶¶ 38-40).

Accordingly, Plaintiffs' claims "arise from" Defendant's business in New York and Defendant is subject to personal jurisdiction in this forum pursuant to CPLR § 302(a)(1).

---

building, maintaining, and growing its website is connected with the infringing "outputs" that Defendant's website produces.

### ii.    CPLR § 302(a)(3)[5]

While the Court has already found personal jurisdiction under one prong of New York's long-arm statute, for completeness, it considers whether Defendant's contacts are also sufficient to confer jurisdiction under CPLR § 302(a)(3), which provides that courts may have personal jurisdiction over a defendant that:

> commits a tortious act without the state causing injury to person or property within the state … if he [i] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or [ii] expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

CPLR § 302(a)(3).  To establish jurisdiction under § 302(a)(3), Plaintiffs must show that:

> [i] the defendant committed a tortious act outside New York; [ii] the cause of action arose from that act; [iii] the tortious act caused an injury to a person or property in New York; [iv] the defendant expected or should reasonably have expected the act to have consequences in New York; and [v] the defendant derived substantial revenue from interstate or international commerce.

*Helio Logistics, Inc.* v. *Mehta*, No. 22 Civ. 10047 (NSR), 2023 WL 21887, at *7 (S.D.N.Y. Jan. 3, 2023) (quoting *Spin Master Ltd.* v. *158*, 463 F. Supp. 3d 348,

---

[5]    Plaintiffs allege in the SAC that this Court also has jurisdiction pursuant to CPLR § 302(a)(2), but offer no substantial arguments in their briefing to support jurisdiction under this section.  Accordingly, the Court does not consider whether jurisdiction exists under that subsection.

365 (S.D.N.Y. 2020), *adhered to in part on reconsideration,* No. 18 Civ. 1774

(LJL), 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020)).

**(a)    Defendant "Committed a Tortious Act
Outside New York"**

For purposes of element one, "in the case of web sites displaying

infringing marks[,] the tort is deemed to be committed where the web site is

created and/or maintained." *Citigroup Inc.*, 97 F. Supp. 2d at 567 (citing *Nat'l*

*Football League* v. *Miller,* No. 99 Civ. 11846 (JSM), 2000 WL 335566, at *2

(S.D.N.Y. Mar. 30, 2000); *Am. Network, Inc.* v. *Access Am./Connect Atl., Inc.*,

975 F. Supp. 494, 497 (S.D.N.Y. 1997); *Hearst Corp.* v. *Goldberger,* No. 96 Civ.

3620 (PKL) (AJP), 1997 WL 97097, at *10 (S.D.N.Y. Feb. 26, 1997)).  Defendant

alleges that "Perplexity's search engine was primarily created and developed at

Perplexity's headquarters in San Francisco," and Plaintiffs agree that

Defendant is primarily based in California.  (Def. Br. 3-4).  Defendant also

claims "Perplexity's servers and data are … located outside of New York, in

Northern Virginia[]" and that "Perplexity hosts its search engine's source code

internally at its San Francisco headquarters." (*Id.* at 4).  Therefore, for the

purposes of § 302(a)(3), the Court finds that Defendant's website was "created"

and is primarily "maintained" outside of New York.  *Citigroup Inc.*, 97 F. Supp.

2d at 567.[6]

---

[6]    The Court notes that this analysis by no means undermines the Court's findings as
they relate to § 302(a)(1).  The parties agree that Defendant is headquartered in San
Francisco and that a significant contingent of its workforce is based there.  (*See* SAC
¶ 18).  Nevertheless, Defendant's website is also maintained in New York, and there is a
nexus between Defendant's actions in New York and Plaintiffs' claims.  *See supra*
Section A.2.a.i.

> **(b)    The Cause of Action Arose from Defendant's Act**

As for the second element, that "the cause of action arose from th[e] act," Plaintiffs' causes of action are alleged to have arisen from Defendant's products, including their website and applications. *Helio Logistics, Inc.*, 2023 WL 21887, at *7.

> **(c)    The Tortious Act Caused an Injury to a Person or Property in New York**

The third element of Section 302(a)(3) requires that the act at issue caused injury to a person or property in New York. For copyright infringement cases, "[i]njury within the state includes harm to a business in the New York market in the form of lost sales or customers." *Citigroup Inc.*, 97 F. Supp. 2d at 568 (citing *Am. Network, Inc.*, 975 F. Supp. at 497). "Furthermore, in trademark infringement cases, the injury requirement [of CPLR § 302(a)(3)] is satisfied by harm and threatened harm resulting from actual or potential confusion and deception of internet users in [the state]." *Energy Brands Inc.* v. *Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467 (S.D.N.Y. 2008) (citing *Pitbull Prods., Inc.* v. *Universal Netmedia, Inc.*, No. 07 Civ. 1784 (RMB) (GWG), 2008 WL 1700196, at *7 (S.D.N.Y. Apr. 4, 2008)). Here, Plaintiffs claim that the "revenues for their original content come predominantly from selling subscriptions to their digital publications and from online advertising that is presented when a customer visits the … website[,]" and that Defendant's "business model … deprive[s] Plaintiffs of critical revenue sources." (SAC ¶¶ 3-4). As a result of Defendant's actions, Plaintiffs state that they "have lost and

25

will continue to lose revenue and profits from the [New York] market for content licensing, subscribers, visitors, and users." (*Id.* ¶ 46). This is sufficient to show injury in New York for purposes of § 302(a)(3). *See Citigroup Inc.*, 97 F. Supp. 2d at 568 ("Injury within the state … is satisfied by [the plaintiff's] claim[s] that its actual and potential customers in New York are confused or deceived when they view and interact with [the defendant's] web sites." (citing *Am. Network, Inc.*, 975 F. Supp. at 497; *Nat'l Football League*, 2000 WL 335566, at *2)); *see also Sound Around Inc.* v. *Shenzhen Keenray Innovations Ltd.*, No. 22 Civ. 6943 (HG), 2023 WL 4163115, at *4 (E.D.N.Y. June 23, 2023) (finding third prong met when plaintiff alleged that it lost "continued sale[s] and positive review[s]" of its product as a result of defendant's acts).

In reaching its conclusion about the third element of the test set forth above, the Court considers guidance from the Second Circuit and the New York Court of Appeals in certain digital copyright infringement cases, such as "digital piracy" cases. *See Penguin Grp. (USA) Inc.* v. *Am. Buddha*, 16 N.Y.3d 295, 302-08 (2011) ("*Penguin II*") (answering a certified question from the Second Circuit regarding the situs of injury in copyright digital piracy cases); *Troma Ent., Inc.* v. *Centennial Pictures Inc.*, 729 F.3d 215, 218-21 (2d Cir. 2013) (further clarifying the scope of *Penguin II*). In *Penguin II*, the defendant uploaded four copyrighted books onto its website, "making them available free of charge to anyone via the [i]nternet." *Freeplay Music, LLC* v. *Nian Infosolutions Priv. Ltd.*, No. 16 Civ. 5883 (JGK) (RWL), 2018 WL 3639929, at *7

(S.D.N.Y. July 10, 2018) (restating the facts of *Penguin II*), *report and recommendation adopted*, No. 16 Civ. 5883 (JGK), 2018 WL 3632524 (S.D.N.Y. July 31, 2018); *see also Penguin II*, 16 N.Y.3d at 304-05. The Court of Appeals in *Penguin II* determined that "a New York copyright owner alleging infringement sustains an in-state injury pursuant to § 302(a)(3)(ii) when its printed literary work is uploaded without permission onto the [i]nternet for public access." *Penguin II*, 16 N.Y.3d at 304.

As support for its decision, the *Penguin II* Court relied on two factors: *First*, the Court noted that "the instantaneous availability of [ ] copyrighted works ... for anyone, in New York or elsewhere, with an [i]nternet connection to read and download the [copyrighted works] free of charge" makes it difficult to pinpoint the situs of injury. *Penguin II*, 16 N.Y.3d at 304-05. *Second*, the Court stated that "a New York copyright holder whose copyright is infringed suffers something more than ... indirect financial loss ... [f]or instance, one of the harms arising from copyright infringement is the loss or diminishment of the incentive to publish or write." *Id.* at 305 (internal citations omitted). Finally, the *Penguin II* Court stated that "the absence of any evidence of the actual downloading of [the plaintiff's] four works by users in New York [wa]s not fatal to a finding that the alleged injury occurred in New York." *Id.* at 306.

Two years after *Penguin II*, the Second Circuit decided *Troma Entertainment, Inc.* v. *Centennial Pictures Inc.*, 729 F.3d 215 (2d Cir. 2013). In *Troma*, the plaintiff "authorized an agent to obtain a distribution license with a German film distributor," but "[i]nstead of carrying out what he was charged to

do, the agent licensed the film rights to a German entity after falsely [asserting] that the agent personally owned the rights." *Nian*, 2018 WL 3639929, at *9 (citing *Troma*, 729 F.3d at 216-18) (recounting the facts of *Troma*). While the plaintiff was based in New York, "[n]one of the operative events ... took place in New York." *Id.* The Second Circuit distinguished *Troma* from *Penguin II* by emphasizing that *Penguin II* was based on the "convergence of two factors" — the widespread availability of copyrighted works and the "unique bundle of rights granted to copyright owners." *Troma*, 729 F.3d at 219 (quoting *Penguin II*, 16 N.Y.3d at 304-05). The *Troma* Court found that the plaintiff's claim was one that could be "circumscribed" to a particular location and that the plaintiff argued only that the defendants had "in essence, usurped two potential licensing agreements in Germany." *Troma*, 729 F.3d at 220.

In the wake of these decisions, courts have construed *Penguin II* very narrowly, such that it is "controlling only in digital piracy cases." *Morningstar Films, LLC* v. *Nasso*, 554 F. Supp. 3d 525, 534-35 (E.D.N.Y. 2021) (collecting cases). This narrow reading of *Penguin II* is displayed in a series of cases involving plaintiff Freeplay Music, LLC (collectively, the "*Freeplay* Cases"), where courts in this District have declined to exercise jurisdiction in copyright cases pursuant to CPLR § 302(a)(3). *See Freeplay Music, LLC* v. *Gibson Brands, Inc.*, 195 F. Supp. 3d 613 (S.D.N.Y. 2016); *Freeplay Music, LLC* v. *Dave Arbogast Buick-GMC, Inc.*, No. 16 Civ. 442 (NRB), 2017 WL 449913 (S.D.N.Y. Jan. 18, 2017); *Freeplay Music, LLC* v. *Rigol Techs. USA, Inc.*, No. 18 Civ. 10980 (ER), 2020 WL 564232 (S.D.N.Y. Feb. 4, 2020); *Nian*, 2018 WL 3639929. The

plaintiff in the *Freeplay* Cases is a company that holds "the copyrights to numerous songs and sound recordings." *Arbogast*, 2017 WL 449913, at *1. In each case, the plaintiff had alleged generally that the defendants "exploited" the plaintiff's copyrighted works by "copying and publicly performing the works through digital transmissions on YouTube, even though [the defendants] did not receive a license to exploit the copyrighted material." *Id.* at *5 (internal quotation marks and citations omitted). In each *Freeplay* Case, the particular court followed *Troma* and held that the facts were distinguishable from *Penguin II* because

> [the plaintiff] has not alleged the type of "digital piracy" at issue in *Penguin II*, i.e., that [the] defendant uploaded the copyrighted material so that third parties could download unlicensed versions over the Internet. Nor has [the plaintiff] alleged that it suffers any injury when third parties view [the defendant's] videos or hear the copyrighted material.

*See, e.g.*, *id.* at *6. Similarly, in *Nian*, the Court held that the plaintiff "allege[d] only that it was deprived of license fees from [the defendant]." *Nian*, 2018 WL 3639929, at *11.

Applying the "two factors" set forth in *Penguin II*, this Court finds this case is closer to *Penguin II* than *Troma* and its progeny, and thus determines that the situs of injury is New York. Regarding the first *Penguin II* factor, Plaintiffs assert that users on Defendant's website can access "full or partial verbatim reproductions of Plaintiffs' news, analysis, and opinion articles," as well as "paraphrases or summaries of those copyrighted works that similarly serve as substitutes for accessing Plaintiffs' copyrighted works on Plaintiffs'

own websites and/or licensed websites." (SAC ¶ 8). Defendant itself admits that its service "is publicly available in both free and paid versions[,]" "generates [outputs] for users everywhere[,]" and "is fundamentally different from an internet storefront for infringing goods." (Def. Br. 4, 21; Def. Reply 5). Therefore, like the defendant in *Penguin II*, Defendant has allegedly uploaded copyrighted material that any third party could access unlicensed versions of over the internet. *Arbogast*, 2017 WL 449913, at *6. Unlike the *Freeplay* Cases, Plaintiffs do not allege that they were simply "deprived of license fees from [Defendant]." *Nian*, 2018 WL 3639929, at *11. Thus, like *Penguin II*, the "crux of [Plaintiffs'] claimed injury cannot be easily circumscribed to a specific location" because of "the widespread availability of copyrighted works." *Alibaba Grp. Holding Ltd.*, 2018 WL 2022626, at *8; *Troma*, 729 F.3d at 219, 220 (quoting *Penguin II*, 16 N.Y.3d at 304-05); *see also Rogers* v. *Ecolor Studio*, No. 11 Civ. 4493 (ARR) (RER), 2013 WL 752256, at *2 (E.D.N.Y. Feb. 7, 2013) (relying on *Penguin II* to find jurisdiction where defendants allegedly "tortiously infringed Plaintiff's copyright by recreating the protected work and making it available on their commercial website and on YouTube"), *report and recommendation adopted*, No. 11 Civ. 4493 (ARR), 2013 WL 750120 (E.D.N.Y. Feb. 27, 2013).

*Second*, Defendant's actions harm Plaintiffs' "unique bundle of rights granted to copyright owners." *Penguin II*, 16 N.Y.3d at 305. Like in *Penguin II*, and unlike in *Troma* and the *Freeplay* Cases, Plaintiffs here claim that (i) their revenues "come predominantly from selling subscriptions to their digital

publications and from online advertising that is presented when a consumer visits the news publishers' website directly or clicks on a search-engine or other link that brings the consumer to the website," and (ii) "Plaintiffs and other publishers … make significant revenue from licensing their content to others[.]" (SAC ¶ 3). In *Arbogast*, the court distinguished *Penguin II* because "[the plaintiff] d[id] not allege that it was deprived of revenue or potential customers when the videos were viewed on the [i]nternet by third parties." *Arbogast*, 2017 WL 449913, at *5. In this case, by contrast, Plaintiffs do assert that they will lose advertising and subscription revenue when their copyrighted works are produced as outputs to users' queries because users will "skip" Plaintiffs' website. (SAC ¶¶ 1, 3, 44).

Finally, in *Penguin II*, the Court stated that "one of the harms arising from copyright infringement is the loss or diminishment of the incentive to publish or write." *Penguin II*, 16 N.Y.3d at 305. In their SAC, Plaintiffs state that they "rely on the effort, talent, skills, and experience of accomplished journalists, editors, and other professional staff who meticulously investigate and skillfully write news stories … [to] break news stories that they believe will change the world for the better." (SAC ¶ 2). Plaintiffs further claim that "[u]ndermining the financial incentives to create original content will result in less content being generated and/or less quality content being generated[.]" (*Id.* ¶ 12). In other words, like the "digital piracy" issue in *Penguin II*, Plaintiffs have sufficiently alleged that they will suffer harm that is "something more than … indirect financial loss[.]" *Penguin II*, 16 N.Y.3d at 305. Thus, for the

reasons set forth above, the Court follows the two factors set forth in *Penguin II* and finds the situs of injury to be New York, where Plaintiffs hold the copyright to their works.

> **(d)    Defendant Should Reasonably Expect the Act to Have Consequences Within the Forum State**

"The fourth element, whether a defendant expects or should reasonably expect the act to have consequences within the forum state, is an 'objective rather than subjective [test].'" *Travel Leaders Grp., LLC* v. *Corley*, No. 19 Civ. 1595 (GBD) (JLC), 2019 WL 6647319, at *4 (S.D.N.Y. Dec. 5, 2019) (alteration in original) (quoting *Kernan* v. *Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999)). Foreseeability "relates to forum consequences generally and not to the specific event which produced injury within the state." *Id.* (quoting *Am. Network, Inc.*, 975 F. Supp. at 497; *Parker Waichman Alonso LLP* v. *Orlando Firm, P.C.*, No. 09 Civ. 7401 (CM), 2010 WL 1956871, at *10 (S.D.N.Y. May 14, 2010)). "In analyzing this element, New York courts require some discernible effort by the defendant to directly or indirectly serve the New York market." *Id.* (quoting *Parker Waichman Alonso LLP*, 2010 WL 1956871, at *10 (citing *Kernan*, 175 F.3d at 241)).

It is reasonably foreseeable that the creation and maintenance of a website built on "Skip[ping] the Links" would lead to consequences in the forum state. *See Parker Waichman Alonso LLP*, 2010 WL 1956871, at *10 ("Defendant should have reasonably expected its act to have consequences in New York when it used its infringing website to attract and service business

32

across the nation, including in New York." (internal quotation marks omitted and alterations adopted)).  And as discussed, Defendant has taken a "discernible effort" to serve the New York market via advertising and employment initiatives, and as such "should reasonably have expected the act to have consequences in New York." (SAC ¶¶ 38-40).  *See VideoEgg, Inc.*, 611 F. Supp. 2d at 364 (finding "foreseeability" where defendant "communicated directly with potential New York advertisers[ ] and expressed willingness to participate in advertising campaigns that targeted New Yorkers").

### (e) Defendant Derived Substantial Revenue from Interstate or International Commerce

Finally, Plaintiffs must show that Defendant "derived substantial revenue from interstate or international commerce." *Helio Logistics, Inc.*, 2023 WL 21887, at *7.  According to Plaintiffs, "[a]s of October 2024, [Defendant] had over 15 million monthly active users." (SAC ¶ 41).  Defendant admits that its search engine is "available to users nationwide[,]" and that "its sales and marketing operations ... aim to reach globally[.]" (Def. Br. 12).  Therefore, Defendant "derive[s] substantial revenue from interstate or international commerce." *Helio Logistics, Inc.*, 2023 WL 21887, at *7.

In sum, the Court is mindful of the complexities posed by personal jurisdiction in the age of the internet and artificial intelligence.  *See Citigroup Inc.*, 97 F. Supp. 2d at 565 (noting that "technological advances affecting the nature of commerce require the doctrine of personal jurisdiction to adapt and evolve along with those advances").  Nevertheless, the Court finds that Defendant's extensive contacts with this state — such as hiring key employees

in New York, leasing office space in New York, and targeting New York users with advertisements and New York-specific webpages, coupled with offering an interactive website and mobile app in New York — are sufficient to establish jurisdiction pursuant to CPLR §§ 302(a)(1) and 302(a)(3). In doing so, the Court has not, as Defendant fears, opened Defendant to liability "in every district where *any* user resides." (Def. Reply 4 (emphasis in original)). Rather, the Court has evaluated jurisdiction based on the totality of circumstances presented by this case and, when viewing the facts in the light most favorable to Plaintiffs, found the jurisdictional threshold to be met.

### iii.    Due Process

While the Court has found that jurisdiction is proper pursuant to New York's long-arm statute, the Court must also find that its exercise of jurisdiction comports with the federal constitutional requirements of due process. "Due process considerations require that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Licci II*, 732 F.3d at 169 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Put differently, due process is not violated when a defendant is "haled into court in a forum State based on his own affiliation with the state[.]" *Walden* v. *Fiore*, 571 U.S. 277, 286 (2014). The due process analysis proceeds in two steps. *First*, a court evaluates whether the defendant has sufficient minimum contacts with the forum; and *second*, the court considers whether, in light of various factors, the exercise of jurisdiction would comport with fair play and substantial justice.

34

*See Charles Schwab Corp.* v. *Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018); *Chloé* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

To have minimum contacts with a forum, a company must have purposefully availed itself of the privilege of doing business there and "foresee[n] being haled into court there." *Licci II*, 732 F.3d at 170 (citing *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) ("*Bank Brussels II*")(internal quotation marks omitted)). Importantly, "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. Here, the Court has already determined that Defendant has sufficient contacts with the forum under two different prongs of New York's long-arm statute. Generally, if a defendant meets the contacts requirement under the long-arm statute, it also meets the minimum contacts requirement under the constitutional analysis. *See, e.g.*, *Am. Girl, LLC* v. *Zembrka*, 118 F.4th 271, 279 (2d Cir. 2024) ("For the same reasons that [the defendant's] engagement with New York satisfies § 302(a)(1), it also satisfies the minimum contacts requirement." (citing *Chloé*, 616 F.3d at 171)). Such is the case here, as Defendant allegedly advertises to New York customers, sells its product to New York customers, and has an office in New York where employees support the sale of the allegedly infringing product. *See supra* Section A.2.a. This is sufficient to meet the minimum contacts requirement under the constitutional analysis.

Next, the Court must "determine whether the exercise of personal jurisdiction is reasonable under the Due Process Clause." *Peterson*, 121 F.4th at 1006 (quoting *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 273 (2d Cir. 2023) (quoting *MacDermid, Inc.* v. *Deiter*, 702 F.3d 725, 730 (2d Cir. 2012), *cert. denied sub nom. BASF Metals Ltd.* v. *KPFF Inv., Inc.*, 144 S. Ct. 681 (2024))). To do so, a court considers:

> [i] the burden that the exercise of jurisdiction will impose on the defendant; [ii] the interests of the forum state in adjudicating the case; [iii] the plaintiff's interest in obtaining convenient and effective relief; [iv] the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and [v] the shared interest of the states in furthering substantive social policies.

*Id.* (quoting *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th at 273 (quoting *Robertson-Ceco Corp.*, 84 F.3d at 568)). When a defendant has the requisite minimum contacts with the forum state, it may still defeat jurisdiction on due process grounds if it can "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Camacho* v. *Vanderbilt Univ.*, No. 18 Civ. 10694 (KPF), 2019 WL 6528974, at *7 (S.D.N.Y. Dec. 4, 2019) (quoting *Licci II*, 732 F.3d at 173 (quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 477 (1985))).

Defendant does not argue that the exercise of jurisdiction is unreasonable pursuant to the factors listed above. Rather, Defendant simply reiterates that the exercise of jurisdiction would not be "reasonable … under the circumstances because the challenged conduct in this case fails to connect

Perplexity to the forum in a meaningful way." (Def. Reply 5 (internal quotation marks and citations omitted and alterations adopted)). The Court has already determined that Defendant's contacts are meaningfully connected to Plaintiffs claims. Nonetheless, and again for completeness, the Court considers the reasonableness factors set forth in *Peterson*, 121 F.4th at 1006, and determines that "the balance weighs in favor" of Plaintiffs, *Elsevier*, 77 F. Supp. 3d at 347-48.

"With respect to the first factor — the burden imposed on Defendant in having to litigate this action in New York — the Court finds this factor incapable of tilting the scales given modern advances in communication and transportation." *Camacho*, 2019 WL 6528974, at *8 (citing *Bank Brussels II*, 305 F.3d at 129-30). While Defendant claims that it is "an early-stage startup with limited resources for cross-country litigation," Plaintiffs allege that Defendant recently raised $500 million and is valued at $9 billion. (Def. Br. 23; Pl. Opp. 21). Therefore, given that the burden on Defendant provides "only weak support, if any" to a showing of unreasonableness, the Court finds this factor insufficient to defeat jurisdiction. *Bank Brussels II*, 305 F.3d at 129.

Second, New York, the state in which Plaintiffs are headquartered, has a "manifest interest in providing effective means of redress for its residents." *Camacho*, 2019 WL 6528974, at *8 (quoting *Burger King*, 471 U.S. at 473). More pointedly, "New York has a clear interest in protecting in-state consumers from confusion resulting from the misappropriation of trademarks or trade

dress[.]"  *Alibaba Grp. Holding Ltd.*, 2018 WL 5118638, at *5 (internal quotation marks omitted).  This factor thus favors Plaintiffs.

The third factor, Plaintiffs' "interest in obtaining convenient and effective relief," again favors Plaintiffs.  Both sides assert that "key witnesses" are located in the parties' respective fora.  (Def. Br. 21-22; Pl. Opp. 23).  As such, the location of witnesses bears no substantial weight on the reasonableness inquiry.  *See, e.g.*, *Zonshayn* v. *Sackler Sch. of Med. (N.Y.)*, 648 F. Supp. 3d 485, 495 (S.D.N.Y. 2023) (finding reasonableness factor to be neutral where witnesses were located in both Israel and New York).  Furthermore, "maintaining the action here would be convenient and efficient for Plaintiff[s] because [they] … are located here."  *Camacho*, 2019 WL 6528974, at *8 (citing *Chloé*, 616 F.3d at 173); *see also Heritage Lace, Inc.* v. *Underwraps Costume Corp.*, No. 18 Civ. 9796 (JPO), 2019 WL 3858585, at *4 (S.D.N.Y. Aug. 16, 2019) (noting that plaintiff "'has an interest in obtaining relief for past and future violations of its copyrights' in state where defendant has 'purposefully established contacts … by offering goods for sale to consumers'" (quoting *Rovio Ent., Ltd.* v. *Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 543 (S.D.N.Y. 2015))).

The Court finds the last two factors to be neutral.  Both New York and California have an interest in the efficient resolution in controversy, which arises under federal law.  *See Heritage Lace, Inc.*, 2019 WL 3858585, at *5.  And both jurisdictions have an interest in further developing the substantive law of personal jurisdiction in internet and AI-related cases.  *See Camacho*, 2019 WL 6528974, at *8 (citing *Chloé*, 616 F.3d at 173).

Consequently, the Court finds that the exercise of jurisdiction over

Defendant comports with due process under the Constitution.

**B.    The Court Denies Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(3)**

**1.    Applicable Law**

The Court next considers Defendant's motion to dismiss pursuant to

Rule 12(b)(3).  "The legal standard for a motion to dismiss for improper venue

[pursuant to Federal Rule of Civil Procedure 12(b)(3)] is the same as a motion

to dismiss for lack of personal jurisdiction."  *Casville Invs., Ltd.* v. *Kates*, No. 12

Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Gulf Ins.

Co.* v. *Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)).  As before, the plaintiff

bears the burden, but need only make a *prima facie* showing that venue is

proper.  *Id.*  Further, the court is obligated to credit the plaintiff's factual

averments as true, construe the pleadings in the light most favorable to the

plaintiff, and resolve all doubts in the plaintiff's favor.  *Id.* (citing *Robertson-

Ceco Corp.*, 84 F.3d at 567; *Boehner* v. *Heise*, 410 F. Supp. 2d 228, 240

(S.D.N.Y. 2006); *Porina* v. *Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir.

2008); *Martinez* v. *Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012),

*aff'd*, 740 F.3d 211 (2d Cir. 2014)).

**2.    Analysis**

"Whether venue is 'wrong' or 'improper' depends exclusively on whether

the court in which the case was brought satisfies the requirements of federal

venue laws."  *Atl. Marine Constr. Co.* v. *U.S. Dist. Ct. for W. Dist. of Tex.*, 571

U.S. 49, 55 (2013).  Plaintiffs assert and Defendant contests that venue in this

District is proper pursuant to 28 U.S.C. §§ 1400(a) (for the copyright claims) and 1391(b) (for the trademark claim).  The Court finds that venue in this District is proper under both provisions.

### a.    Venue Is Proper Under 28 U.S.C. § 1400(a)

Plaintiffs' first two claims, for copyright infringement, arise under 17 U.S.C. § 106, venue for which is governed by 28 U.S.C. § 1400(a).  This provision states that "proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found."  28 U.S.C. § 1400(a); *see also Atl. Marine Constr. Co.*, 571 U.S. at 55 n.2 (citing 28 U.S.C. § 1400 as the governing venue statute for copyright and patent suits); *Heritage Lace, Inc.*, 2019 WL 3858585, at *2.  Pursuant to § 1400(a), when "the defendant is an entity, it is 'deemed to reside' in a district where it is 'subject to the court's personal jurisdiction with respect to the civil action in question.'" *Heritage Lace, Inc.*, 2019 WL 3858585, at *2 (quoting 28 U.S.C. § 1391(c)(2)); *see also VideoEgg, Inc.*, 611 F. Supp. 2d at 365.  Because the Court has determined that it has personal jurisdiction over Defendant, venue is proper in this District for Plaintiffs' copyright claims.  *See Heritage Lace, Inc.*, 2019 WL 3858585, at *5.

### b.    Venue Is Proper Under 28 U.S.C. § 1391(b)

Plaintiffs' third claim, for false designation of origin and trademark dilution, arises under 15 U.S.C. § 1125.  Venue for trademark infringement is governed by the more general provisions of 28 U.S.C. § 1391.  *See* 28 U.S.C.

§ 1391(a) (stating that "[e]xcept as otherwise provided by law ... this section shall govern the venue of all civil actions brought in district courts of the United States"). "If a case falls within one of § 1391(b)'s districts, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine Constr. Co.*, 571 U.S. at 50. 28 U.S.C. § 1391(b) provides that a civil action may be brought in:

> [i] a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [ii] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or [iii] if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). As mentioned above, a corporate defendant "resides" in a district where it is "subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2); *Glob. Merch. Servs., Ltd.* v. *Sunfrog, LLC*, No. 17 Civ. 10154 (AKH), 2018 WL 11223365, at *5 (S.D.N.Y. Aug. 9, 2018) ("Under § 1391(b)(1), venue is proper where the defendant is a 'resident,' which in turn is defined (for all entities, incorporated or not, with 'the capacity to sue or be sued') ... as the judicial district in which the entity is subject to the court's jurisdiction."). Therefore, since this Court has jurisdiction over Defendant, venue is proper in New York under § 1391(b)(1).

Since the Court finds that venue is proper in New York under § 1391(b)(1), it need not decide whether venue is proper under § 1391(b)(2).

*See, e.g.*, *Hall* v. *S. Orange*, 89 F. Supp. 2d 488, 493 (S.D.N.Y. 2000) (noting that § 1391(b) "clearly offers two possibilities for an appropriate venue," and that "[v]enue is proper if either one of those conditions is met"); *see also Caliko, SA* v. *Finn & Emma, LLC*, No. 21 Civ. 3849 (VEC), 2022 WL 596072, at *5 (S.D.N.Y. Feb. 28, 2022) ("Because the Court has personal jurisdiction over Defendant in this District, venue is proper under § 1391(b)(1). Accordingly, the Court need not consider other grounds for venue; Defendant's motion to dismiss for lack of venue is denied."); *Dolan* v. *Connolly*, No. 13 Civ. 5726 (GBD) (GWG), 2014 WL 1876524, at *6 (S.D.N.Y. May 8, 2014) (stating that "[b]ecause we have found that venue is proper under 28 U.S.C. § 1391(b)(1), we need not address the parties' arguments about whether venue would be proper under § 1391(b)(2)"), *report and recommendation adopted*, No. 13 Civ. 5726 (GBD), 2014 WL 3057973 (S.D.N.Y. June 27, 2014), *aff'd in part, vacated in part and remanded on other grounds*, 794 F.3d 290 (2d Cir. 2015).

## C. The Court Denies Defendant's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

### 1. Applicable Law

As a fallback position to its arguments for dismissal, Defendant argues that the Court should transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In making determinations of convenience

under Section 1404(a), district courts have "broad discretion" to consider "notions of convenience and fairness … on a case-by-case basis." *D.H. Blair & Co., Inc.* v. *Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)). "There is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup, Inc.*, 97 F. Supp. 2d at 561 (citing *S&S Mach. Corp.* v. *Gen. Motors Corp.*, No. 93 Civ. 3237 (CSH), 1994 WL 529867, at *7 (S.D.N.Y. Sept. 28, 1994)).

When deciding a motion to transfer pursuant to Section 1404(a), courts undertake a two-step inquiry. *See Enigma Software Grp. USA, LLC* v. *Malwarebytes Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017). *First*, courts must determine if the action "might have been brought in the district to which transfer is sought." *Smart Skins LLC* v. *Microsoft Corp.*, No. 14 Civ. 10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks and citations omitted). A case might have been brought in another forum "if 'at the time the suit was brought, the defendants were subject to jurisdiction and venue was proper' in that district." *Id.* (quoting *Giuliani, S.p.A.* v. *Vickers, Inc.*, 997 F. Supp. 501, 502 (S.D.N.Y. 1998)).

*Second*, the court must determine "whether the convenience of the parties and witnesses and the interests of justice favor transfer." *In re Seroquel XR (Extended Release Quetiapine Fumarate) Litig.*, No. 19 Civ. 8296 (CM), 2020 WL 5587416, at *3 (S.D.N.Y. Aug. 12, 2020) (citing *P.E.A. Films, Inc.* v. *Metro-Goldwyn-Mayer, Inc.*, No. 14 Civ. 726 (JSR), 2014 WL 6769377, at *1 (S.D.N.Y.

43

Nov. 12, 2014)).  Courts in this Circuit have identified the following non-exhaustive factors as relevant for conducting a transfer inquiry:

> [i] the convenience of the witnesses, [ii] the convenience of the parties, [iii] the location of relevant documents and the relative ease of access to sources of proof, [iv] the locus of operative facts, [v] the availability of process to compel the attendance of unwilling witnesses, [vi] the relative means of the parties, [vii] the forum's familiarity with governing law, [viii] the weight accorded to plaintiff's choice of forum, and [ix] trial efficiency and the interests of justice.

*Enigma Software Grp. USA, LLC*, 260 F. Supp. at 407 (quoting *Everlast World's Boxing Headquarters Corp.* v. *Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013)).  "There is 'no rigid formula for balancing these factors and no single one of them is determinative.'" *Power Play 1 LLC* v. *Norfolk Tide Baseball Club, LLC*, No. 17 Civ. 4831 (WHP), 2018 WL 357304, at *4 (S.D.N.Y. Jan. 9, 2018) (quoting *Citigroup Inc.*, 97 F. Supp. 2d at 561).  Instead, courts are to exercise their "broad discretion" when deciding whether to transfer venue.  *Id.*  Further, when evaluating these factors, the court "may consider factual material outside of the pleadings." *Id.* (citing *Mohsen* v. *Morgan Stanley & Co.*, No. 11 Civ. 6751 (PGG), 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013); *Orb Factory, Ltd.* v. *Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998)).

### 2.    Analysis

#### a.    This Action Could Have Been Brought in the Northern District of California

Defendant asserts, and Plaintiffs do not contest, that this action could have been brought in the Northern District of California.  (Def. Br. 16-17).  Defendant maintains its principal place of business in San Francisco and as

44

such, is subject to personal jurisdiction in the Northern District of California, making venue proper in that district.  *See* 28 U.S.C. §§ 1391(b), 1400(a).  Since venue is proper in both New York and California, the Court next considers whether, for reasons of convenience and fairness, this case should be transferred to the Northern District of California.

> **b.    Transfer to the Northern District of California Is Not Appropriate**

After analyzing the factors considered under Section 1404(a), the Court concludes that, in light of the totality of the circumstances, transfer to the Northern District of California is not warranted or required in the interest of justice.

> **i.    Plaintiffs' Choice of Forum**

"[P]laintiff's choice of forum is entitled considerable weight, and should not be disturbed unless the balance of the several factors is strongly in favor of the defendant." *Alpha Indus., Inc.* v. *Alpha Clothing Co. LLC*, No. 21 Civ. 87 (KPF), 2021 WL 2688722, at *12 (S.D.N.Y. June 30, 2021) (quoting *City of Pontiac Gen. Emps.' Ret. Sys.* v. *Stryker Corp.*, No. 10 Civ. 376 (RWS), 2010 WL 2035130, at *3 (S.D.N.Y. May 21, 2010)).  This is especially true "where the chosen forum is also the plaintiff's home state." *Chanel, Inc.* v. *Shiver & Duke LLC*, No. 21 Civ. 1277 (MKV), 2022 WL 3868113, at *4 (S.D.N.Y. Aug. 30, 2022) (citing *Pollux Holding Ltd.* v. *Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003); *Atl. Recording Corp.* v. *Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009)).  The "degree of deference given to a plaintiff's forum choice varies with the circumstances," *Maverick Fund, L.D.C.* v. *Lender Processing*

*Servs., Inc.*, No. 13 Civ. 5474 (DLC), 2013 WL 6467889, at *2 (S.D.N.Y. Dec. 10, 2013) (quoting *Iragorri* v. *United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc)), but in this case, Defendant has not shown that other convenience factors outweigh Plaintiffs' choice of forum.

### ii.        Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." *See Doe* v. *McAdam Fin. Grp. LLC*, No. 22 Civ. 113 (GHW) (SN), 2022 WL 3579700, at *10 (S.D.N.Y. Aug. 3, 2022) (quoting *Steck* v. *Santander Consumer USA Holdings Inc.*, No. 14 Civ. 6942 (JPO), 2015 WL 3767445, at *6 (S.D.N.Y. June 17, 2015)), *report and recommendation adopted*, No. 22 Civ. 113 (GHW), 2022 WL 3578569 (S.D.N.Y. Aug. 19, 2022); *Lehrer* v. *J&M Monitoring, Inc.*, No. 20 Civ. 6956 (KMK), 2022 WL 2392441, at *10 (S.D.N.Y. July 1, 2022).  "The operative facts in infringement cases usually relate to the design, development and production of an infringing product." *AEC One Stop Grp., Inc.* v. *CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 530 (S.D.N.Y. 2004) (citing *MasterCard Int'l Inc.* v. *Lexcel Sols., Inc.*, No. 03 Civ. 7157 (WHP), 2004 WL 1368299, at *6 (S.D.N.Y. June 16, 2004)); *Cartier* v. *D & D Jewelry Imports*, 510 F. Supp. 2d 344, 346-47 (S.D.N.Y. 2007).

Defendant alleges that "[t]he majority of the engineers that work on and develop the search engine and RAG index on a daily basis are based at the San Francisco headquarters." (Def. Br. 4).  In its briefing, Defendant also asserts that its "data [is] held on Perplexity's servers in Virginia."  (*Id.* at 21).  Plaintiffs counter that key employees, such as the "Chief Strategy Officer, General

Manager of Finance, Founding Lead for Enterprise Sales, and six technical staff all work in this District." (Pl. Opp. 22).

Based on the assertion that the search engine and RAG index are primarily developed in California, and that Defendant is headquartered in California, the Court agrees that this factor appears to favor Defendant. However, this finding is not determinative, and holds considerably less weight when considered in relation to Plaintiffs' claim for trademark infringement. After all, "[i]n actions alleging trademark infringement or unfair competition, courts in this district have held the locus of operative facts to be in the initially chosen forum if acts of infringement, dilution, or unfair competition occur in that forum." *ESPN, Inc.* v. *Quiksilver, Inc.*, 581 F. Supp. 2d 542, 549 (S.D.N.Y. 2008) (quoting *Kiss My Face Corp.* v. *Bunting*, No. 02 Civ. 2645 (RCC), 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003)); *see also Student Advantage, Inc.* v. *Int'l Student Exch. Cards, Inc.*, No. 00 Civ. 1971 (AGS), 2000 WL 1290585, at *7 (S.D.N.Y. Sept. 13, 2000). This is especially so in cases such as this one, where a defendant's submission makes clear that its sales are nationwide. *See ESPN, Inc.*, 581 F. Supp. 2d at 550 ("[I]f the allegedly infringing products are sold within the Southern District of New York, even if sold elsewhere, there exists a sufficient connection with this District." (quoting *Kiss My Face Corp.*, 2003 WL 22244587, at *3)); *see also Tan* v. *Shein Distrib. Corp.*, No. 23 Civ. 8469 (LGS), 2024 WL 165196, at *3 (S.D.N.Y. Jan. 16, 2024) (noting that the consideration accorded the locus of operative fact is "substantially diminished"

47

when viewed in light of "[d]efendant's submission that its sales were nationwide" (quoting *Alpha Indus. Inc.*, 2021 WL 2688722, at *8)).

### iii.    Convenience of Witnesses and Availability of Process

The location of witnesses and the availability of process are neutral factors. Both Plaintiffs and Defendant allege that important witnesses are located in their preferred fora. (Pl. Opp. 23; Def. Br. 21-22). While Defendant asserts that "the Court would lack the subpoena power to compel their testimony in New York in the event [third-party] witnesses decline to appear voluntarily[,]" it has provided no reason why such witnesses would decline to appear. (Def. Br. 22). *See Stonegardens Advisory LLC* v. *DeepMedia.AI*, No. 24 Civ. 2178 (PAE), 2024 WL 5047628, at *13 (S.D.N.Y. Dec. 9, 2024) (finding location of witnesses factor to be neutral where "[n]either party has identified particular witnesses likely to present attendance challenges"); *SEC* v. *Milton*, No. 21 Civ. 6445 (AKH), 2022 WL 3156180, at *8 (S.D.N.Y. Aug. 8, 2022) (finding location of witnesses to be neutral where "Defendant has offered no explanation as to why any of his witnesses would be unwilling to travel"); *Flood* v. *Carlson Rests., Inc.*, 94 F. Supp. 3d 572, 580 (S.D.N.Y. 2015) ("[W]here, as here, the moving party does not adduce evidence indicating that its witnesses would be unwilling to testify, the availability of process factor is of reduced value in the transfer analysis." (citing *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006))).

### iv.    Convenience of the Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." *W.P.V.* v. *United States*, No. 21 Civ. 4436 (JPC), 2023 WL 1991426, at *5 (S.D.N.Y. Feb. 14, 2023) (quoting *Flood*, 94 F. Supp. 3d at 578). "The parties' convenience becomes a neutral factor in the transfer analysis if transferring venue would merely shift the inconvenience to the other party." *Flood*, 94 F. Supp. 3d at 578 (quoting *Koslofsky* v. *Santaturs, Inc.*, No. 10 Civ. 9160 (BSJ), 2011 WL 10894856, at *3 (S.D.N.Y. Aug. 18, 2011)). Because Plaintiffs would find it easier to litigate in New York, and Defendant would find it easier to litigate in California, this factor is neutral.

### v.    The Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Regarding the location of relevant documents, "in an era of electronic maintenance and transmission of discovery," this factor is of limited importance. *Stonegardens Advisory LLC*, 2024 WL 5047628, at *13; *see also Milton*, 2022 WL 3156180, at *8; *ESPN, Inc.*, 581 F. Supp. 2d at 548. This is so "given the availability of electronic discovery." *YLD Ltd.* v. *Node Firm, LLC*, No. 15 Civ. 855 (JPO), 2016 WL 183564, at *2 n.1 (S.D.N.Y. Jan. 14, 2016) (citing *Am. Eagle Outfitters, Inc.* v. *Tala Bros. Corp.*, 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006)). Accordingly, the Court finds that this factor neither materially favors nor disfavors transfer as discovery will likely occur electronically.

### vi.　　　Relative Means of the Parties

The relative means factor is also neutral.  Both Plaintiffs and Defendant are large companies financially capable of litigating in New York or California. (Pl. Opp. 21; Def. Br. 23).  *See Smart Skins LLC*, 2015 WL 1499843, at *9 (noting "the relative means of parties 'carries little weight … when the party arguing to transfer is a corporation.'" (quoting *Atl. Recording Corp.*, 603 F. Supp. 2d at 697)); *see also Excellent Home Care Servs., LLC* v. *FGA, Inc.*, No. 13 Civ. 5390 (ILG) (CLP), 2014 WL 652357, at *5 (E.D.N.Y. Feb. 19, 2014) (stating that "the parties' relative means is a less significant factor since both parties are corporations").

### vii.　　　Familiarity of Governing Law

Although Plaintiffs contend that the "S.D.N.Y. hears significantly more intellectual property suits on average than the N.D. Cal.," this Court finds that the comparative familiarity with governing law factor is neutral.  (Pl. Opp. 21). "Where an action raises questions of federal law, either forum is equally capable of hearing and deciding those questions," and this Court has no doubt in its sister court's ability to adjudicate this matter.  *Alpha Indus. Inc.*, 2021 WL 2688722, at *11 (internal quotation marks omitted); *Tianhai Lace USA Inc.* v. *Forever 21, Inc.*, No. 16 Civ. 5950 (AJN), 2017 WL 4712632, at *7 (S.D.N.Y. Sept. 27, 2017) ("In copyright cases, the forum's familiarity with the governing law is generally given little to no weight." (citing *Atl. Recording Corp.*, 603 F. Supp. 2d at 697)).

###### viii.    Trial Efficiency and the Interests of Justice

The Court next turns to the question of trial efficiency and the interests of justice, as Plaintiffs argue that differences in docket conditions between New York and California counsel in favor of transfer.  (Pl. Opp. 21-22).  "Courts in this District generally tread[ ] lightly on the issue of comparing calendar congestion across federal districts[.]"  *Alpha Indus., Inc.*, 2021 WL 2688722, at *8 (internal quotation marks omitted and alterations in original).  That said, even if not determinative, "docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight."  *Id.* at *8 (quoting *Miller* v. *Bombardier Inc.*, No. 93 Civ. 376 (PKL), 1993 WL 378585, at *5 (S.D.N.Y. Sept. 23, 1993)).  Plaintiffs have submitted statistics indicating that "both civil filings per judgeship and time from filing to disposition in civil cases have been lower in the S.D.N.Y. than the N.D. Cal. for each of the last six years."  (Pl. Opp. 22).  However, Defendant states that these statistics "ignore that [i]t is the complexity and difficulty of a particular case, as well as competing demands from other cases on a judge's docket ... that combine to affect the timing of a trial of a particular action."  (Def. Reply 9 (internal quotation marks omitted and alteration in original)).  Moreover, there would be no risk of harm to either party presented by transfer, given "[t]his case is in its early stages of litigation."  *SEC* v. *Brda*, No. 24 Civ. 4806 (KPF), 2024 WL 4817475, at *9 (S.D.N.Y. Nov. 18, 2024) (citations omitted).  Thus, even if the "trial efficiency and interests of justice" factor slightly disfavors transfer, "the Court will afford these statistics limited weight."  *Id.* (citing *City of*

51

*Pontiac Gen. Emps. Ret. Sys.* v. *Dell Inc.*, No. 14 Civ. 3644 (VSB), 2015 WL
12659925, at *7 (S.D.N.Y. Apr. 30, 2015)).

### ix.      Forum Selection Clause

Finally, Defendant argues that "the forum-selection clause in Perplexity's
terms of service favors transfer." (Def. Br. 24).  In particular, Defendant claims
that the terms of service apply because "Plaintiffs used Perplexity's service to
generate the output examples cited in the SAC." (*Id.*).  However, Defendant has
not sufficiently alleged any of the factors typically required to prove that a
forum selection clause is valid, *viz.*, that "[i] the clause was reasonably
communicated to the party resisting enforcement; [ii] the clause was
mandatory and not merely permissive; and [iii] the claims and parties involved
in the suit are subject to the forum selection clause." *Hoar* v. *Launch Pad
Payment Servs. Corp.*, No. 24 Civ. 6195 (CM), 2025 WL 1380994, at *4
(S.D.N.Y. May 12, 2025) (quoting *Altvater Gessler-J.A. Baczewski Int'l. (USA)
Inc.* v. *Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009)).

Defendant asseverates that Plaintiffs accepted the forum selection clause
when they used Defendant's website.  However, Plaintiffs only used this
product to "plead their output claims." (Def. Br. 24).  In other words, Plaintiffs
were not "users" of Defendant's website in the general sense of the term.  Since
Defendant has not shown that the forum selection clause factors are met, the
Court finds that the clause should not be given "controlling weight" because
the parties did not "agree to a forum selection clause." *Atl. Marine Constr. Co.*,
571 U.S. at 63-64.  More broadly, the Court does not find a forum selection

clause argument to be compelling where Plaintiffs only accepted a forum selection clause to investigate the possible infringement of their copyrighted works. *See Phillips* v. *Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (noting that plaintiff may rebut presumption of enforceability by making sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching" (quoting *M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972))).

### x.        Balancing the Factors

In sum, the only two non-neutral factors are Plaintiffs' choice of forum and the locus of operative facts. Though the locus of operative facts weighs slightly in favor of Defendant, the Court does not find this factor sufficient to override Plaintiffs' choice of forum. Though Defendant developed its website in California, this Court has not found, as demonstrated in the personal jurisdiction and venue analyses, that the "connection between the case and [Plaintiffs'] chosen forum is minimal." *Everlast*, 928 F. Supp. 2d at 748 (quoting *Chiste* v. *Hotels.com L.P.*, 756 F. Supp. 2d 382, 401 (S.D.N.Y. 2010)); *see also Gibson Brands, Inc.*, 195 F. Supp. 3d at 617-20 (declining to transfer case out of plaintiff's home forum even though locus of operative facts was outside New York and all other factors, except convenience to witnesses, were neutral). Moreover, New York is Plaintiffs' "home state where [they] engage[] in ongoing business activity." *Gibson Brands, Inc.*, 195 F. Supp. 3d at 620. Finally, "transferring this case to [California] would only serve to shift the

inconveniences of one party and its witnesses to the other." *Chanel, Inc.*, 2022 WL 3868113, at *5 (citing *Calabrese* v. *Teoco Corp.*, 637 F. Supp. 2d 160, 163 (S.D.N.Y. 2009) ("Where transfer would merely shift the inconvenience from one party to the other, plaintiff's choice of forum is not to be disturbed.")). Therefore, the Court, in its discretion, ultimately finds that the factors weigh against transfer to the Northern District of California.

### D.   The Court Denies Defendant's Motion to Dismiss Untimely Registered Works Pursuant to Rule 12(b)(6)

#### 1.   Applicable Law

Defendant's final motion is one for dismissal of certain of Plaintiffs' claims. When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiffs' claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

On a motion to dismiss, "[t]he Court may consider any written instrument attached to the [c]omplaint as an exhibit, any statements or documents incorporated by reference in the [c]omplaint, documents that are 'integral' to the [c]omplaint even if they are not incorporated by reference, and matters of which judicial notice may be taken." *Donoghue* v. *Gad*, No. 21 Civ. 7182 (KPF), 2022 WL 3156181, at *2 (S.D.N.Y. Aug. 8, 2022) (citing *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

### 2.    Analysis

17 U.S.C. § 411(a) states that "no civil action for infringement of the copyright in any United States work shall be instituted until ... registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).  The Supreme Court, in turn, has held that "registration" occurs "when the Copyright Office registers a copyright."  *Fourth Est. Pub. Benefit Corp.* v. *Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019).  In this case, Plaintiffs filed their initial complaint alleging copyright infringement for 326 copyrighted works.  (Pl. Opp. 25).  Each of these copyrighted works was registered with the Copyright Office at the time of filing.  (*Id.*).  Plaintiffs subsequently registered ten additional works (the "Ten Additional Works") with the Copyright Office and filed their FAC alleging copyright infringement for 336 total works.  (*Id.* at 25-26).  These works were registered with the Copyright Office at the time the FAC was filed.  (*Id.*).

The parties disagree on whether the Ten Additional Works, which were registered with the Copyright Office after the filing of the initial complaint but before the filing of the FAC, can be included in this action. Defendant asserts that Plaintiffs are precluded from bringing these claims by the Supreme Court's decision in *Fourth Estate Public Benefit Corp.* v. *Wall-Street.com, LLC*, which held that Section 411(a) "bars plaintiffs from amending a complaint to include claims for works that the Copyright Office had not registered before the initial complaint was filed." (Def. Br. 26 (citing *Malibu Media, LLC* v. *Doe*, No. 18 Civ. 10956 (JMF), 2019 WL 1454317, at *2-3 (S.D.N.Y. Apr. 2, 2019))). Plaintiffs counter that "[w]hile registered after the Initial Complaint was filed, the Ten Additional Registrations were issued *before* Plaintiffs filed the FAC." (Pl. Opp. 26 (emphasis in original)).

Generally, where a plaintiff initiates a lawsuit alleging copyright violations for works that have not been registered with the Copyright Office, the court must dismiss the claims for works that were not registered at the time of the filing of the complaint. *See Doe*, 2019 WL 1454317, at *2-4 (dismissing the plaintiff's claims where the copyrighted works were not registered when the initial complaint was filed but were registered at the time of the amended complaint); *Deetsch* v. *Lei*, No. 22 Civ. 1166 (RSH) (BLM), 2023 WL 6373073, at *8-10 (S.D. Cal. July 21, 2023) (dismissing plaintiff's copyright claims without leave to amend because plaintiff filed copyrights with Copyright Office after filing initial complaint and "had not obtained registration of the works at issue before filing the [c]omplaint"); *Malibu Media, LLC* v. *Baker*, No. 18 Civ. 3263

(JGK) (BCM), 2020 WL 3978302, at *4 (S.D.N.Y. June 18, 2020) (dismissing plaintiff's infringement claims regarding seven works that were included in initial complaint but registered after filing of that complaint), *report and recommendation adopted*, No. 18 Civ. 3263 (JGK), 2020 WL 3972736 (S.D.N.Y. July 13, 2020).  In each of the aforementioned cases, the initial complaint included claims for works that were not yet registered.  In other words, the plaintiffs in these cases sought to cure a "defect" caused by the failure to "secur[e] registration of the underlying copyright."  *Bureau Fashion Week LLC* v. *Nataliya Nova LLC*, No. 24 Civ. 233 (GMN) (EJY), 2025 WL 720992, at *3 (D. Nev. Mar. 5, 2025).  And the courts in these cases reasoned that Section 411(a) serves to prohibit an amended complaint from adding copyright claims that, "although timely as of the date of their addition to the action, would have been premature when the action was 'instituted.'"  *Doe*, 2019 WL 1454317, at *3 n.2.  As one court noted, "permitting amendment to cure a claimant's failure to register its copyright before suing would undermine the objectives animating the Supreme Court's decision in *Fourth Estate*."  *Izmo, Inc.* v. *Roadster, Inc.*, No. 18 Civ. 6092 (NC), 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019).

However, some federal courts have allowed plaintiffs to amend a complaint to include copyright infringement claims for works registered after the initial complaint was filed, where the underlying complaint did *not* include infringement claims for those works.  *See Philips N. Am. LLC* v. *KPI Healthcare, Inc.*, SACV 19-1765 (JVS) (JDEx), 2020 WL 3032765, at *3 (C.D. Cal. Jan. 24, 2020) (stating that "§ 411(a) does not preclude the amendment of an existing

lawsuit to add a newly asserted claim for copyright infringement as long as the copyright issued before the amendment asserting the infringement claim was filed"); *see also Lehrman* v. *Lovo, Inc.*, No. 24 Civ. 3770 (JPO), 2025 WL 1902547, at *15 (S.D.N.Y. July 10, 2025) (allowing the plaintiff to amend the complaint "as the original complaint in this action did not include any copyright claims").

Of particular relevance to the instant suit, "some districts *have* permitted the amendment of pleadings to add a claim of copyright infringement related to a later-obtained registration so long as the original complaint was timely filed and only concerned claims related to existing registrations." *Francis* v. *Nelson*, No. SA-24 Civ. 1130 (JKP), 2025 WL 1839462, at *2 (W.D. Tex. Mar. 12, 2025) (emphasis in original) (internal citations omitted); *see also Baker*, 2020 WL 3978302, at *4 n.3 (stating that § 411(a) is satisfied where the "Amended Complaint alleged, for the first time, that defendant infringed five additional copyrights" because "[t]wo of the five were not registered when the original Complaint was filed, but all of them were registered by the time of the amendment"); *Ubiquiti Networks, Inc.* v. *Cambium Networks, Inc.*, No. 18 Civ. 5369 (GF), 2019 WL 6034116, at *1 (N.D. Ill. Nov. 14, 2019) (stating that a claim for "infringement based on [a copyright] not brought in [the] original complaint" could be asserted in an amended pleading); *Lickerish Ltd.* v. *Maven Coal., Inc.*, No. 20 Civ. 5621 (FMO) (EX), 2021 WL 3494638, at *1 (C.D. Cal. Jan. 29, 2021) ("The court agrees with those courts that have concluded that *Fourth Estate* does not preclude the amendment of an existing lawsuit to add a

newly asserted claim for copyright infringement as long as the copyright issued before the amendment asserting the infringement claim was filed." (internal quotation marks and citations omitted)).

Considering this complicated backdrop, this Court is most persuaded by the reasoning provided in a recent decision in this District. *See Neu Productions Inc.* v. *Outside Interactive, Inc.*, No. 23 Civ. 4125 (LAK) (GWG), 2024 WL 1161498, at *5-7 (S.D.N.Y. Mar. 19, 2024), *report and recommendation adopted*, No. 23 Civ. 4125 (LAK), 2024 WL 2992351 (S.D.N.Y. June 13, 2024). In *Neu Productions*, the initial complaint "contain[ed] claims for both works with timely-obtained registrations and works with untimely-obtained registrations[.]" *Id.* at *6. The court held that "where the practical effect of dismissal would be to cause plaintiffs to file a case against the same defendant that raised the same claims as to the new registrations[,]" leave to amend should be granted. *Id.* at *6. The *Neu Productions* court clarified that in *Baker*, where the plaintiff was denied leave to amend, the entire case was decided with no expectation that a second action would be filed. *Id.* at *6 (citing *Baker*, 2020 WL 3978302, at *5).

Applying that logic to the instant case, the Court notes that 326 of Plaintiffs' copyrights were properly registered at the time Plaintiffs filed the initial complaint. (Pl. Opp. 25). Plaintiffs subsequently amended their complaint to include ten *new* copyrighted works. (*Id.* at 25-26). As such, this case is more like *Francis*, *Ubiquiti*, and *Lickerish*, where the plaintiffs added new claims, than *Baker* and *Doe*, where the plaintiffs attempted to "cure" a

complaint that was premature when filed. *Compare Francis*, 2025 WL 1839462, at *2, *Ubiquiti Networks, Inc.*, 2019 WL 6034116, at *1, *and Lickerish Ltd.*, 2021 WL 3494638, at *1, *with Baker*, 2020 WL 3978302, at *4, *and Doe*, 2019 WL 1454317, at *2-4. Like in *Neu Productions*, if this Court dismissed the Ten Additional Works, Plaintiffs could either refile their entire lawsuit or file separate claims for the Ten Additional Works and then seek consolidation. *See Francis*, 2025 WL 1839462, at *1-3 (allowing the plaintiffs to consolidate their copyright claims where the second suit alleged copyright infringement of a work not registered at the time of the first suit). As did the court in *Neu Productions*, this Court finds that such a decision "would not serve the principle of efficiency underlying the 'exhaustion' requirement motivating *Fourth Estate*." *Neu Productions*, 2024 WL 1161498, at *6. Finally, like the court in *Neu Productions*, this Court understands "the concern … that routinely permitting the filing of an amended complaint to allege a late registration would make a meaningless formality out of *Fourth Estate's* [precondition] requirement … [since] a plaintiff could file suit at any time … and simply update the complaint when registration finally occurred." *Neu Productions*, 2024 WL 1161498, at *7 (internal quotation marks and citations omitted and second alteration in original). Nonetheless, given that each of Plaintiffs' 326 claims alleged in the initial complaint were timely, and the Ten Additional Works were timely as to the FAC, this Court does not find that Plaintiffs' Ten Additional Works must be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss, or, in the alternative, transfer venue, is DENIED in full. The parties are hereby ordered to meet and confer, and submit a proposed case management plan on or before **September 19, 2025.**

The Clerk of Court is directed to terminate the pending motion at docket entry 47.

SO ORDERED.

Dated:    August 21, 2025
          New York, New York

_____
          KATHERINE POLK FAILLA
          United States District Judge