**quinn emanuel** trial lawyers | new york

295 5th Avenue, 9th Floor, New York, New York 10016 | TEL: (212) 849-7000  FAX: (212) 849-7100

WRITER'S DIRECT DIAL
**(212) 849-7164**

WRITER'S EMAIL ADDRESS
**andrewschapiro@quinnemanuel.com**

October 30, 2025

**VIA ECF AND EMAIL (FAILLA_NYSDCHAMBERS@NYSD.USCOURTS.GOV)**
Honorable Katherine Polka Failla
U.S. District Court for the Southern District of New York
40 Foley Square, Room 2013
New York, New York 10007

Re:   *Dow Jones & Co. v. Perplexity AI, Inc.*, No. 24-cv-07984-KPF

Dear Judge Failla:

On behalf of Defendant Perplexity AI, Inc., we write in response to Plaintiffs' October 27, 2025 request for an informal conference regarding Plaintiffs' requests to inspect Perplexity's source code for virtually every aspect of its search engine technology. The Court should deny Plaintiffs' request.

First, this case does not involve source code infringement. Perplexity has repeatedly asked Plaintiffs to articulate the relevance of source code to their claims, to no avail. Even in their Letter, Plaintiffs fail to "connect the dots" in any meaningful way between the infringements they allege and the source code to justify the significant burden Perplexity would bear to produce it.

Second, Plaintiffs' rush to unilaterally declare an impasse has deprived the parties of an opportunity to achieve a negotiated resolution that avoids the extensive burden of collecting and making source code available for inspection. Perplexity is collecting technical documents that describe relevant elements of its products' architecture that should obviate Plaintiffs' purported need for source code. Perplexity repeatedly offered Plaintiffs the opportunity to first review the non-source code information, but Plaintiffs rejected this proposal out of hand. Further, no impasse has been reached because Perplexity stated it would "further consider Plaintiffs' requests," but Plaintiffs filed their Letter ***before*** their unilaterally imposed, arbitrary deadline for a response to their last meet-and-confer correspondence regarding this issue. Perplexity respectfully requests the Court deny Plaintiffs' request for a discovery conference to permit the parties to explore less burdensome means to satisfy any legitimate need for technical information Plaintiffs can identify.

***Perplexity and Its Answer Engine.*** As Plaintiffs concede, Perplexity "indexes . . . the internet," Letter at 1, as search engine companies like Google have done for decades, to provide a remarkable and transformative AI-powered internet search tool—an answer engine—that enables the public to obtain relevant and accessible factual answers to questions. Plaintiffs, two affiliated news publishers, allege Perplexity's provision of search results infringes the copyrights and trademarks owned by *The Wall Street Journal* and *New York Post*.

***Plaintiffs' Failure to Articulate Relevance.*** That the parties have not made more progress on this discovery dispute is a function of Plaintiffs' repeated failure to explain their need for source code or its relevance in anything but a circular "it is relevant because it is relevant" manner.

Plaintiffs have repeatedly argued they need to inspect Perplexity's source code to understand how the product works. It is a truism that source code enables an understanding of how a software product works. But what is conspicuously absent from Plaintiffs' meet-and-confer efforts, as well as their Letter, is an explanation of why Plaintiffs need to know how the software works at the granular level provided by source code to determine if Plaintiffs' copyrighted works were infringed.

Contrary to Plaintiffs' (still vague) arguments for relevance in their Letter, source code is not inherently relevant to this case. Plaintiffs erroneously conflate this case with the over 50 copyright lawsuits that have been filed against large language model ("LLM") AI developers. But unlike the defendants in those lawsuits, Perplexity does not build foundational LLMs or use copyrighted or other works to train an LLM to create a chatbot that generates outputs in response to user prompts (such as ChatGPT or Claude). Rather, its answer engine technology relies on several LLM products to interpret and relationally understand user queries and create responses to users in natural language. Perplexity's technology passes relevant text to these LLMs for them to craft a synthesized, contextually rich, and coherent answer. Perplexity neither uses these third-party LLMs as a source for content nor accesses the databases of copyrighted or other works on which the LLMs were trained.

Plaintiffs' nevertheless request to inspect source code based, in part, on Perplexity's "use of multiple large language models." Letter at 1. But this request overlooks that source code for the foundational LLM models resides with and is controlled by third parties, not Perplexity. Similarly, RFP 38 asks for "third-party Web Scraper" code that Perplexity does not possess. With respect to Plaintiffs' request for source code showing "how Perplexity . . . processes a user query, including identifying the content needed to respond to that query," *id.* at 2, this process includes contextualizing the query, which does not involve ***Perplexity***'s use of Plaintiffs' copyrighted content.

Plaintiffs' cited authorities do not aid their cause because in those cases relevance was either not disputed or was clearly established after a careful inquiry into the issue. They were not based on conclusory and facile assertions that source code is relevant to show how software works.[1] *See Amimon, Inc. v. Shenzhen Hollyland Tech Co.*, No. 20-CV-9170 (ER), 2023 WL 2478159, at *21 & n. 5 (S.D.N.Y. Mar. 13, 2023) (relevance not disputed; moreover, allegedly infringed copyrighted work was source code); *TOMRA of N. Am., Inc. v. Count & Crush, LLC*, No. 118CV1266-LEK-DJS, 2021 WL 9860240, at *3 (N.D.N.Y. Apr. 20, 2021) (finding source code relevant after probing relevance at argument, because claims and defenses depended in part on whether product malfunctions were result of user error or product programming); *UMG Recording, Inc. v. Escape Media Grp., Inc.*, No. 11 CIV. 8407, 2014 WL 5089743, at *14 (S.D.N.Y. Sept. 29, 2014) (finding appropriate sanction for intentional spoliation of source code—which expert testimony established

---

[1] Plaintiffs' list of other "AI copyright cases" (containing no court orders) involving source code inspection is similarly unavailing. Plaintiffs provide no analysis of (i) whether the request for source code was opposed; (ii) the stated relevance for source code in those cases; or (iii) the meaningful differences between the nature of the alleged copyright infringement by chatbots and the nature of the copyright infringement alleged here.

could have contradicted defendants' argument against summary judgment—was preclusion of argument); *see also Uni-Sys., LLC v. U.S. Tennis Ass'n*, No. 17CV147-KAM-CLP, 2017 WL 4081904, at *6 (E.D.N.Y. Sept. 13, 2017) (relevance of source code to how stadium roof operated and whether components constituted trade secrets confirmed in part by requesting party's production of its own source code).

***Production of Requested Source Code Is Overly Burdensome and Not Proportionate to the Needs of the Case.*** Any minimal relevance supported by Plaintiffs' assertions that source code is needed to show "how Perplexity's generative AI products function" is not proportional to the needs of the case in light of the burden of making source code available for inspection. Although Plaintiffs portray source code inspection as a simple matter of pressing "copy" in a developer tool to replicate an entire code base, Perplexity's code does not reside in a "centralized repository" as Plaintiffs assume. Letter at 3. Identifying, extracting, and organizing code from the distributed codebase and conducting a security review, would require significant time and engineering resources that could disrupt ongoing development operations. For example, Plaintiffs requested "[a]ll (current and historical) Source Code Material … for Perplexity Bot and/or other Web Scrapers owned and/or developed by You" (RFP 39), but the components that aggregate and process publicly available content are not kept separately or labeled as "web scraper" code. To find it, Perplexity engineers would need to carefully review large sections of the program and sort out which portions of the code read websites—a time consuming and difficult task. Unless and until Plaintiffs can articulate a compelling need for source code that cannot be addressed by the technical documentation Perplexity has offered, Perplexity should not be saddled with this burden.

***Plaintiffs' Failure to Exhaust Meet-and-Confer Efforts.*** The Court should also deny Plaintiffs' request for a discovery conference as premature because Plaintiffs have not exhausted meet-and-confer efforts. On October 21, 2025, Plaintiffs sent a seven-page letter raising various discovery-related issues, including its demands for source code (as to which it self-servingly announced an impasse even though Perplexity stated it would "further consider" Plaintiffs' request) and demanded a response by October 28, 2025. Plaintiffs then filed their Letter on October 27, 2025. Had Plaintiffs permitted Perplexity to respond, they would have known that Perplexity will soon be producing substantially equivalent technical information about the categories for which they are seeking burdensome and sensitive source code information. Although Plaintiffs roundly reject such offers as insufficient because non-source code documentation may be "curated" to conceal "bad facts," Letter at 3, this bald speculation is unfounded, and ignores the many compelling reasons businesses have for maintaining accurate—and not selectively "curated"—technical documentation.

Perplexity respectfully contends that Plaintiffs should at least review this technical documentation before deeming it inadequate, and that the Court should deny Plaintiffs' request for a discovery conference until Plaintiffs can articulate a concrete need for source code (as opposed to a generalized desire to know how Perplexity's products work) that is not met by such non-source code documents. *See Viacom Int'l Inc. v. Youtube Inc*., 253 F.R.D. 256, 260-61 (S.D.N.Y. 2008) (denying motion to compel source code inspection because non-source code discovery was sufficient for plaintiffs to "learn how the Video ID program works"); *Edmar Financial Co. v. Currenex, Inc.*, 347 F.R.D. 641, 649 (S.D.N.Y. 2024) ("the potential availability of alternate means to obtain the information" weighs against discovery of source code).

Respectfully submitted,

Andrew H. Schapiro
*Counsel for Defendant Perplexity AI, Inc.*

cc: All counsel of record (via ECF)