1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711

**JENNER&BLOCK** LLP

February 23, 2026

Gianni Servodidio
Tel +1 212 891 1620
Fax +1 212 891-1699
GServodidio@jenner.com

**<u>VIA ECF AND ELECTRONIC MAIL</u>**
Hon. Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007
Failla_NYSDChambers@nysd.uscourts.gov

Re:    *Dow Jones & Co., Inc., et al. v. Perplexity AI, Inc.*, Civ. No. 24-7984 (KPF)

Dear Judge Failla:

I write on behalf of Plaintiffs Dow Jones & Company, Inc. and NYP Holdings, Inc., in the above-referenced case to request that the Court schedule an informal conference to compel Defendant Perplexity AI, Inc. ("Perplexity") to search for and produce documents responsive to Plaintiffs' Requests for Production ("RFPs") regarding Defendant's decision-making on which tools to use to scrape content and how Defendant optimizes its products to substitute for Plaintiffs' works. The parties have met and conferred on these issues extensively[1] and are at an impasse.

**Decision-making on Web Scrapers.** Plaintiffs' RFP 4 seeks documents concerning Perplexity's testing and evaluation of third-party web scrapers (that is, the tools by which Defendant scrapes data from a webpage). Perplexity refused to produce *any* documents on this topic, arguing that "the manner in which Perplexity obtains content is irrelevant." Def.'s Resps. & Objs. to Pls.' First Set of RFPs at 11. Despite that position being meritless on its face, in an effort to resolve this matter informally, Plaintiffs narrowed RFP 4 to seek only documents discussing or referencing: (i) whether the web scraper obtains the full text of webpages in more or less verbatim form; and (ii) whether the web scraper circumvents or respects access controls such as paywalls and bot-blocking software.

Despite this narrowing, Defendant continues to assert that its decision-making regarding its scraping practices—and indeed "all web crawlers"—is irrelevant. Def. Jan. 28, 2026 Ltr. at 2. That position is meritless. How Perplexity scrapes and copies news content—directly or indirectly—and then places the content into its RAG database is core to Plaintiffs' case. *See* SAC ¶ 102, Dkt. 46 (alleging, among the "numerous" ways Perplexity copies copyrighted content, "Perplexity may also crawl and scrape content using a third-party crawler under its direction and control"). And its decision-making regarding whether (and how much) to copy verbatim bears directly on infringement and fair use. *See Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 188-89 (2d Cir. 2024) (evaluating the purpose of wholesale copying to determine the third fair use factor); *see also Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 554-56, 561 (2013) (considering the amount of content scraped in conducting a fair use analysis). Likewise,

---

[1] This includes at least ten letters, emails, and a meet and confer on these topics since August 28, 2025.

Hon. Katherine Polk Failla
February 23, 2026
Page 2

the manner in which content is obtained, such as by bypassing technical access controls, such as paywalls and bot-blocking software, is probative of willfulness for the purposes of damages and relevant to the fair use defense. *See Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1025-26 (N.D. Cal. 2025) (holding that illegally pirating books negates a fair use defense, and noting that "bad faith" acquisition of content would "matter for determining willfulness"); *Cobb v. Am. Urb. Radio Networks LLC*, 2025 WL 641437, at *5 (S.D.N.Y. Feb. 27, 2025) ("The propriety of a defendant's conduct 'is an integral part of the analysis under the first factor[.]'").[2] Moreover, Defendant has never substantiated any possible claim that producing responsive materials to the narrowed scope of Plaintiffs' RFP would result in any undue burden. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (objecting party must demonstrate burden "by submitting affidavits or offering evidence revealing the nature of the burden" (citation omitted)). RFP 4, as narrowed, is targeted to core issues and is plainly proportional to the needs of the case. Accordingly, Plaintiffs respectfully request that the Court compel Defendant to search for and produce all responsive documents in its possession, custody and control.

**Perplexity's Optimization of Its Products.** Through RFPs 31, 44, 61, 63, and 65, Plaintiffs seek information concerning how Perplexity measures, tests, and optimizes its products to maximize user engagement. These requests encompass, for example, documents reflecting whether and how the availability of high-quality news content affects user engagement; whether engagement increases when sources—such as preeminent news outlets—are cited or when users are provided with access to paywalled material (such as *The Wall Street Journal* or the *New York Post Sports+*). These requests also encompass Perplexity's design choices with respect to its user interface, such as how Perplexity views click-throughs to cited sources for its business purposes, and how it configures the user experience accordingly. Together, these RFPs target key information regarding Perplexity's efforts to attract users and keep users on its platform, rather than directing users to the third-party websites from which the content was originally copied, including Plaintiffs' websites.[3]

All of the requested documents plainly meet the low threshold for relevance. *Delta Air Lines, Inc. v. Lightstone Grp., LLC*, 2021 WL 2117247, at *2 (S.D.N.Y. May 24, 2021). As alleged in the Second Amended Complaint, Defendant engages in the wholesale copying of news content in

---

[2] None of this is hypothetical. Defendant has been sued in this district for allegedly using third-party scraping tools that circumvent standard access controls. *See* Compl., *Reddit, Inc. v. SerpApi LLC*, No. 1:25-cv-8736 (S.D.N.Y. Oct. 22, 2025), Dkt. 1 (alleging violations of the DMCA, unjust enrichment, and civil conspiracy for circumventing technological methods controlling access to a copyrighted work); *see also, e.g.*, Am. Compl. ¶ 73, *N.Y. Times v. Perplexity AI, Inc.*, No. 1:25-cv-10106 (S.D.N.Y. Feb. 6, 2026), Dkt. 36 (alleging Perplexity circumvents newspaper website's access controls as part of copyright claims); Compl. ¶¶ 66-70, *Encyclopædia Britannica, Inc. v. Perplexity AI, Inc.*, No. 1:25-cv-7546 (S.D.N.Y. Sept. 10, 2025), Dkt. 1 (similar). Reddit in particular described Defendant as "more akin to a 'North Korean hacker,'" which "will apparently do anything to get the … data it desperately needs to fuel its 'answer engine.'" *See* Compl. ¶ 1, *Reddit, Inc.*, No. 1:25-cv-8736.

[3] In a narrowed proposal, Plaintiffs specifically requested production of (1) the metrics Perplexity uses to measure the performance and success of its Products, such as subscription conversions, repeat visits, time on page, clicks to cited sources, recirculation, clicks on ads, other measures of user satisfaction, etc., (2) reports and analysis regarding the same; (3) all testing or assessments Perplexity conducts on how the nature of Outputs interplay with the above-noted metrics, including but not limited to whether user satisfaction is higher (i) when longer outputs are provided, (ii) when verbatim content is provided from cited sources, or (iii) if paywalled content is provided, etc., and (4) the results of such testing and assessments. Pls. Dec. 30, 2025 Ltr.

Hon. Katherine Polk Failla
February 23, 2026
Page 3

order to offer its subscribers a substitute product that usurps the market for Plaintiffs' original works. *See, e.g.*, SAC ¶ 4. Perplexity has alleged that its copying should be excused as fair use. *See* Ans. at 27, Dkt. 80. The "most important" factor in assessing fair use is whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994); *Fox News Network, LLC v. Tveyes, Inc.,* 883 F.3d 169, 179 (2d Cir. 2018).

The manner in which Defendant tests and optimizes its product directly bears on the critical issue of "market substitution" at the crux of the fair use analysis. For example, evidence that Perplexity tailors its outputs to maximize engagement by utilizing news content, particularly in ways that reduce the need for users to visit the original source, goes directly to that analysis. Moreover, Perplexity has inevitably made design choices, for instance, concerning how it displays cited sources (whether prominently, or not), which could dramatically affect click-through rates. Such tracking and influencing of how often users "click" on the original "cited sources" would directly show the extent to which Perplexity's admonition that its users should "Skip the Links" resulted in the reduction in referral traffic to Plaintiffs' websites. *See Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 765 F. Supp. 3d 382, 400 (D. Del. 2025) (holding that defendant's AI search tool was "meant to compete with [plaintiff] by developing a market substitute" for legal research services and therefore weighed in favor of market harm); *Hachette Book Group, Inc.*, 115 F.4th at 189 (relevant question is whether the secondary work "usurps the market for the first by offering a competing substitute" (citation omitted)). Ultimately, Perplexity's own testing of the effects of different characteristics of its "answers" and different designs of its user interface will be important evidence related to market substitution.

Perplexity's sole counterproposal is to artificially limit its production to "user metrics and testing related to the use of *copyrighted works*." *See* Def. Feb. 5, 2026 Email (emphasis added). This position should be rejected. As a practical matter, Defendant should not be permitted to exclude otherwise responsive discovery materials based on its unliteral determination of whether certain source material or outputs encompass copyright-protected material. Indeed, it is not clear whether Perplexity's internal testing takes into account whether content is copyrighted. But even setting that aside, Defendant's testing and metrics around user engagement are relevant irrespective of whether they pertain to copyrighted content. As Plaintiffs allege, Defendant's wholesale ingestion of Plaintiffs' content to fuel a RAG index that provides users with unfettered access to the latest news is copyright infringement (and not fair use) regardless of whether particular outputs themselves embody copyrighted materials in whole or in part. SAC ¶¶ 134-137. Moreover, if Defendant separately tracks user metrics related to outputs containing non-copyrighted material, such information would be directly relevant to show how such outputs perform in relation to those which contain wholesale verbatim content (or detailed summaries of such) stolen from Plaintiffs and other news organizations. Plaintiffs therefore request that the Court compel Perplexity to search for and produce all such responsive documents in its possession, custody and control.

*     *     *

For these reasons, Plaintiffs request a conference and that the Court compel Perplexity to produce the aforementioned documents. We thank the Court for its continued attention to this matter.

Hon. Katherine Polk Failla
February 23, 2026
Page 4

Respectfully submitted,

*/s/ Gianni P. Servodidio*
Gianni P. Servodidio
*Counsel for Plaintiffs*

cc:    All Counsel of Record via ECF