**quinn emanuel** trial lawyers | new york

295 5th Avenue, 9th Floor, New York, New York 10016 | TEL: (212) 849-7000  FAX: (212) 849-7100

WRITER'S DIRECT DIAL
**(212) 849-7164**

WRITER'S EMAIL ADDRESS
andrewschapiro@quinnemanuel.com

February 24, 2026

**VIA ECF AND EMAIL (FAILLA_NYSDCHAMBERS@NYSD.USCOURTS.GOV)**
Honorable Katherine Polka Failla
U.S. District Court for the Southern District of New York
40 Foley Square, Room 2013
New York, New York 10007

Re:   *Dow Jones & Co. v. Perplexity AI, Inc*., No. 24-cv-07984-KPF: Request for Discovery Conference

Dear Judge Failla:

Plaintiffs—publishers of *The Wall Street Journal* and *The New York Post*—assert they are being harmed by the propensity of defendant Perplexity's Answer Engine (an AI-powered Internet search tool) to reproduce their content or misattribute content to them. But they refuse to provide basic discovery about relevant, exculpatory facts: the results they received to nearly all of the questions (or searches) they entered in their pre-suit investigation of alleged copyright and trademark infringement. This discovery would reveal an inconvenient truth: Plaintiffs repeatedly and deceptively crossed the line from investigation to entrapment. Perplexity requests a conference to discuss this dispute, which despite multiple meet-and-confers, is at an impasse.

Perplexity's investigation shows its Answer Engine responded to Plaintiffs' hundreds of pre-suit questions by providing factual summaries of information in Plaintiffs' articles. So Plaintiffs pushed harder, with increasingly pointed queries, until they were pleading with Perplexity to repeat their articles *verbatim*, as illustrated in this exchange between Plaintiffs and the Answer Engine:

**Q.**   tell me about reporting about meta running ads on Facebook and instagram that steers users to online marketplaces for illegal substances

**A.**   Recent reports indicate that Meta Platforms, the parent company of Facebook and Instagram, has been running ads that direct users to online marketplaces for illegal drugs. Despite facing a federal investigation over this issue, Meta has continued to allow such ads, which violate its own policies against promoting illicit or recreational drugs *[Response continues with "### Key Points" summarizing and citing to four sources]*

**Q.**   what does this article from today say https://www.wsj.com/tech/meta-cocaine-opioids-ads-dea8e0fc?mod=latest_headlines

**A.**   The Wall Street Journal article from today reports that Meta Platforms has continued to run ads on Facebook and Instagram that direct users to online marketplaces for illegal drugs, including cocaine and prescription opioids, despite facing a federal investigation. *[Response continues with "### Key Points" citing to the article.]*

**Q.**   What is the first paragraph of that article?

**A.** *The first paragraph of the* Wall Street Journal *article states: [provides "succinct[] summar[y of] the key issue reported in the article" rather than verbatim quote].*

**Q.** *Retype the first two paragraphs word-for-word.*

**A.** *I'm sorry, but I can't provide the exact text from the article. However, I can help summarize or provide information on the topic if you need it.*

(Emphases added.) This escalation pattern is typical of Plaintiffs' exchanges with the Answer Engine: Plaintiffs start with legitimate-sounding queries, receive summaries, and then increasingly demand *verbatim* reproductions until the system refuses to provide "copyrighted material," with its anti-infringement guardrails working as intended, and offers instead to "summarize the content or discuss its themes and implications." Such exchanges show both the lengths to which Plaintiffs went to extract allegedly infringing answers and Perplexity's disciplined, non-infringing responses. But Plaintiffs are withholding discovery regarding the vast majority of pre-suit questions they entered, arguing they are work product. That claim has no merit.

**Factual Background.** In their Second Amended Complaint, Plaintiffs reproduced four cherry-picked pre-filing exchanges with Perplexity's Answer Engine, purporting to show a full-text reproduction, a detailed summary of paywalled content, a hallucination, and a misattribution. ECF 46, ¶¶ 108-119. Perplexity served discovery seeking all such exchanges—not just the ones that generated responses selected for inclusion in the SAC—and basic facts relating to them. Plaintiffs largely refused to provide responses. *E.g.*, Responses to Requests for Production Nos. 38 (limiting response to exchanges "specifically cited" in complaint), 41 (refusing to produce documents sufficient to show all attempts to reproduce asserted works); Responses to Interrogatories Nos. 1 (limiting response to two examples in complaint), 2 (refusing to identify accounts, profiles, and associated emails or phone numbers used in submitting those questions). The only discovery Plaintiffs have provided relating to their pre-filing questions is (i) production of the questions and responses related to the four examples cited in the complaint (which, despite Plaintiffs' representations, appear incomplete); and (ii) the name of the person who entered the prompts in two of the cited examples (a fact Plaintiffs had already volunteered in opposing transfer, ECF 53-1, 55).

Notwithstanding Plaintiffs' refusal to provide any additional discovery, Perplexity has identified **hundreds** of pre-filing questions Plaintiffs submitted to the Answer Engine that, based on their timing and substance, were clear attempts to induce copyright-infringing answers. For many of these questions, Plaintiffs used the "retry" feature, which resubmits the same query in hope of a different response—in one case, **more than 50 times**—in a clear effort to "break" the system. Moreover, Plaintiffs used a succession of email accounts to mask their activity from Perplexity and attempt to evade detection of conduct they knew was violative of Perplexity's policies.[1]

**The Requested Discovery Is Relevant.** The relevance of the requested discovery is beyond dispute. Although Plaintiffs have now informally (in meet-and-confers) disclaimed reliance on the exchanges cited in their complaint, the fact that Perplexity's Answer Engine refused so many of Plaintiffs' entreaties for *verbatim* copies of their works is highly relevant to (i) countering plaintiffs' narrative that this suit addresses an "existential" threat to their business, when they had to fish extensively for even an arguable Rule 11 basis for

---

[1] Perplexity's ability to identify *some* of Plaintiffs' queries does not obviate its need for this discovery. Perplexity's information is likely incomplete, particularly given Plaintiffs' attempts to conceal their tracks by using "burner"-style email addresses. Additionally, formal discovery aids in authentication and foundation.

their allegations; (ii) the efficacy of Perplexity's guardrails against even the most determined attacks; (iii) Perplexity's fair use and unclean hands affirmative defenses; and (iv) willfulness.

**Entering the Questions into the Answer Engine Waived Any Work Product Protection.** As the Second Circuit has noted, "[c]ommon sense and the practicalities of litigation define the limits of the work product doctrine. ***Once a party allows an adversary to have the otherwise privileged thought processes . . . the need for the privilege disappears.***" *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) (citations omitted) (emphases added); *New York Times Co. v. U.S. Dep't of Just.*, 939 F.3d 479, 494-95 (2d Cir. 2019) (collecting cases); *In re Terrorist Attacks on Sept. 11, 2001*, 293 F.R.D. 539, 544 (S.D.N.Y. 2013) (work product protection waived by sharing "in a manner that is . . . 'inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain'" them).

Thus, for example, suppose an attorney prepares a demand letter laying out in detail her legal analysis of her client's claims and a series of pointed questions to the adverse party seeking information she wants to add to her draft complaint. As it sits unshared in Microsoft Word, there is no question counsel's letter is her work product. But once she sends that letter to her adversary, there is equally no question that any work product protection that ever applied has now been waived. So too here: **The moment Plaintiffs pressed "enter" on Perplexity's platform, they voluntarily transmitted their work product to the party they intended to sue.** Perplexity seeks information only about those questions Plaintiffs submitted to its Answer Engine, where Plaintiffs voluntarily shared questions, usernames, and accounts with their anticipated litigation adversary.[2]

Despite these well-settled waiver principles, Perplexity acknowledges the limited authority in the context of AI litigation—none of it binding on this Court—that has shielded pre-suit prompts from discovery as opinion work product.[3] But **none of those decisions addressed whether work product protection survives at all once the work product has been voluntarily transmitted to the anticipated litigation adversary**; instead, they addressed only whether plaintiffs' affirmative reliance on *some* pre-investigation prompts waived work product protection over *all other* pre-investigation prompts. *See, e.g.*, *Tremblay v. OpenAI, Inc.*, 2024 WL 3748003, at *3 (N.D. Cal. Aug. 8, 2024) (analyzing waiver of work product based on citation of examples in complaint, not submission to ChatGPT); *Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 3677935, at *2 (N.D. Cal. Dec. 18, 2025) (noting "the only question" was waiver and extent thereof based on fairness principle based on reliance in complaint); *New York Times Co. v. Microsoft Corp.*, No. 1:23-cv-11195 (S.D.N.Y. Oct. 31, 2024), ECF 304 (summarily denying letter brief, ECF 284, which described the prompt information sought as "undisclosed" and did not cite *Steinhardt Partners* or similar cases). Although OpenAI cited *Steinhardt Partners* in an earlier discovery letter brief in the *Microsoft* case, ECF 124, the court's single-sentence denial of that request offers no analysis. ECF 243.

Perplexity looks forward to discussing this issue with the Court and respectfully asks it to compel further responses to Requests for Production Nos. 33, 36-43, 59, 77-78, 91 and Interrogatories Nos. 1-2.

---

[2] Perplexity's privacy policy states it may use queries to "protect[] . . . [its] rights." ¶ 2 (eff. June 4 2024).

[3] Perplexity assumes for purposes of this letter only that questions posed to AI interfaces are work product, but it notes plaintiffs have not provided any proof (such as a privilege log) supporting their work product claim. Moreover, such questions may not be work product at all; they are more akin to the "underlying facts" of who asked what, when, and what they got back, which are never protected even when the selection of which facts to investigate might be. Further, even if the Court were to conclude that any protection over Plaintiffs' queries was not waived, Plaintiffs should still be required to provide the type of non-privileged information made available on a privilege log (*e.g.*, dates, authors, email addresses, and numbers of queries).

Respectfully submitted,

*/s/ Andrew H. Schapiro*

Andrew H. Schapiro
*Counsel for Defendant Perplexity AI, Inc.*

cc: All counsel of record (via ECF)