February 26, 2026

WRITER'S DIRECT DIAL
**(212) 849-7164**

WRITER'S EMAIL ADDRESS
**andrewschapiro@quinnemanuel.com**

**VIA ECF AND EMAIL (FAILLA_NYSDCHAMBERS@NYSD.USCOURTS.GOV)**
Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
40 Foley Square, Room 618
New York, New York 10007

Re:     *Dow Jones & Co. v. Perplexity AI, Inc.*, No. 24-cv-07984-KPF

Dear Judge Failla:

On behalf of Defendant Perplexity AI, Inc., I write in response to Plaintiffs' February 23, 2026 request for an informal conference related to their requests for production ("RFPs") regarding (1) third-party web crawlers and (2) "performance benchmarks." Plaintiffs' request is unnecessary and premature because Perplexity has already agreed to produce responsive documents that are relevant to Plaintiffs' claims concerning Perplexity's internet search tool, the answer engine.

***Third-Party Web Crawlers* (RFP No. 4).** RFP No. 4, states:

> For each third-party Web Scraper used to gather Content for Your RAG Database(s), all Documents concerning Your testing of the Web Scraper's functionality, the Content provided to You by the Web Scraper, and any work done by You to refine and/or modify such Content, including but not limited to any vectorization and/or indexing.

Contrary to Plaintiffs' assertion that Perplexity "refused to produce *any* documents on this topic," ECF 100 at 1, Perplexity has agreed to produce or has produced documents that are directly responsive to this RFP, including documents concerning web crawling and indexing (RFP Nos. 37, 52), obtaining sources for answers (RFP Nos. 15, 69, 70, 80, 81), and the RAG index itself (RFP Nos. 12–15, 52, 70). Pursuant to the February 17, 2026 Databases Order, ECF 98, Perplexity has already provided its entire RAG Database to Plaintiffs, containing information on "the Content provided … by the Web Scraper, and any work done … to refine and/or modify such Content, including ... any vectorization and/or indexing" that RFP No. 4 seeks.

Plaintiffs now demand documents concerning Perplexity's "decision-making on which tools to use to scrape content." ECF 100 at 1. That request is plainly outside the scope of the RFP. Whereas RFP No. 4 seeks information about the web crawlers Perplexity actually "used to gather Content for [the] RAG Database(s)," Plaintiffs' request in their letter brief is for pre-selection evaluation of and "decision-making on which tools to use," even if Perplexity never actually used them.

Plaintiffs' impermissibly-expanded request is also overbroad. ***First***, discovery in copyright cases should be limited to the works in suit, yet Plaintiffs seek information relating to any "text of

webpages," including webpages they do not own. ECF 100 at 1. *See Psihoyos v. Pearson Educ., Inc.*, 2010 WL 11889066, at *1 (S.D.N.Y. Dec. 7, 2010) (plaintiff's request for all photographs in any of defendant's textbooks, beyond the four photographs in the complaint, was "grossly overbroad" and a "fishing expedition" that "[p]arties have 'no entitlement to'"); *Nazemian v. NVIDIA Corp.*, 2025 WL 2419299, at *2 (N.D. Cal. Aug. 21, 2025) (denying motion to compel in AI case and "limiting the discovery to the dataset … that contains Plaintiffs' copyrighted books").

*Second*, Perplexity's web-crawler selection process is not relevant to any copyright issue. The internal deliberations about why Perplexity would choose a particular web crawling tool involves myriad factors—ranging from technical support to cost—that have no bearing on whether Perplexity intended to use anybody's copyrighted works. And even if Perplexity's decision to reject a web crawler were based on its ability to obtain copyrighted material, that still would not be relevant: direct liability under the Copyright Act requires "actual infringing conduct," not an opportunity for infringing conduct. *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008); *see White v. DistroKid*, 738 F. Supp. 3d 387, 403 (S.D.N.Y. 2024) (merely providing another "with the opportunity to engage in wrongful conduct" "is insufficient to survive a motion to dismiss" for copyright infringement).

Perplexity repeatedly invited Plaintiffs to explain the relevance of their expanded request. *See* Perplexity's October 15, 2025 Ltr (inviting Plaintiffs to "explain why Perplexity's decisions about which, if any, third-party Web Scrapers to use, regarding any functionalities or other factors, would be relevant to the alleged infringement of Plaintiffs' copyrighted works"); Perplexity's November 4, 2025 Ltr. (noting Plaintiffs had "yet to explain the relevance" and inviting Plaintiffs to justify their demand to "advance the parties' discussions"); Perplexity's January 28, 2026 Ltr. ("we have yet to see any explanation of why Plaintiffs will not limit their request to those that could implicate Plaintiffs' works"). Plaintiffs regurgitated their demand and declared an impasse. *See* Plaintiffs' October 21, 2025 Ltr. (stating Plaintiffs "discussed in detail" their "need" for the documents); Plaintiffs' February 17, 2026 Email (declaring impasse without addressing relevance).

Plaintiffs' demand is also unduly burdensome because no discrete set of documents correspond to the amorphous and undefined concept of a "decision-making" process for selecting a web crawler. Identifying responsive documents would require scouring communications across engineering teams for any discussion that could arguably touch on why one tool was chosen over another, an exercise wholly disproportionate to the marginal (if any) relevance of such information.

In addition to the documents Perplexity has agreed to produce and already produced in response to RFP No. 4, Plaintiffs have subpoenaed and obtained documents from the third-party web crawling service identified in Perplexity's September 8, 2025 interrogatory responses. And that production (which Plaintiffs provided to Perplexity one day after filing this Request) confirms that Perplexity received metadata and summaries—not verbatim copyrighted content—from that service. Plaintiffs are not entitled to overbroad discovery into the selection process that is untethered to Plaintiffs' works or the claims.

*"Performance Benchmarks"* **(RFP Nos. 31, 44, 61, 63, 65).** These facially vague and overbroad requests seek "all Documents" concerning the "Performance of Perplexity Products" (No. 31), the "Performance of Outputs" (No. 61), "process for optimizing Outputs" (No. 63), and the "evaluation of the Performance of Outputs" including "Output quality" (No. 65). These RFPs would sweep in virtually every document relating to any aspect of Perplexity's product

development—an obligation that is neither relevant nor proportional to the needs of a copyright case about particular asserted works.

Plaintiffs incorrectly assert that Perplexity refused to produce documents about Perplexity's products and users. Perplexity has agreed, for example, to produce or has produced information about: creating answers (RFP Nos. 15, 20, 51, 52, 57, 80), sources of answers (RFP Nos. 1, 8, 12, 37), information about users (RFP Nos. 71–74, 78, 105), and information about copyrighted material (RFP Nos. 14, 57, 66, 68, 70, 92, 93, 115). Perplexity is also producing documents concerning its "ranking signals," *i.e.*, the features, metrics, and heuristics used to score and test the strength and accuracy of answers, addressing Plaintiffs' requests for "metrics" about the answer "quality."

As to their nebulous requests for "performance benchmarks," Plaintiffs repeatedly failed to explain the relevance of such documents. Perplexity explained, starting over six months ago in July 2025, that, although it had "agreed to produce many categories of documents explaining how its products operate," "additional documents regarding supposed 'optimization' or 'enhancements' are not relevant to any claim in the case and not proportional in light of the burden of identifying every document discussing every minor modification or improvement to any of Perplexity's products." Perplexity repeatedly asked Plaintiffs to clarify what "performance benchmarks" meant and why that information would be relevant. *See* Perplexity's October 15, 2025 and November 4, 2025 Ltrs. Even though Plaintiffs claimed they had "explained at length" their positions and declared "an impasse," Plaintiffs' October 21, 2025 Ltr., Plaintiffs articulated, for the first time on December 30, 2025, that they presume (and seek documents showing) that Perplexity optimizes its product to provide "verbatim" copies of copyrighted content or improper access to paywalled material. Perplexity does not do so. The answer engine is optimized for summary quality and accuracy.

Nonetheless, to avoid burdening the Court, Perplexity agreed to produce "documents sufficient to show user metrics and testing related to the use of copyrighted works to the extent they exist," such as any general quality metrics, A/B testing infrastructure, and answer quality evaluations. Plaintiffs rejected the proposal, and instead further broadened their demand to include information about how the "availability of news content" or "high-quality news outlets" affect user engagement. Plaintiffs' February 17, 2026 Email. There is no basis (and Plaintiffs provided none in their letter brief) why Plaintiffs are entitled to all documents related to any kind of product testing—such as session reset behavior, dark/light mode switching, or input box behavior—that have nothing to do with the copyright issues in the case.

Finally, even though Plaintiffs ask the Court to address their vague RFP No. 44—seeking "all Documents" about "the reason Perplexity Products recommend search topics to End Users"—that RFP was not substantively addressed in the parties' correspondence until Plaintiffs raised it for the first time during December 16, 2025 meet and confer. Since then, Plaintiffs have not clarified what they are seeking nor how the RFP seeks relevant information. Plaintiffs' request is premature.

Despite the order directing the parties to complete the meet-and-confer process before seeking the Court's intervention, ECF 89 at 4, Plaintiffs have now filed their third letter motion without engaging in meaningful discussions, or even first seeing what Perplexity will produce on February 28, 2026, mere days from now. ECF 96. Perplexity remains willing to produce what it offered to Plaintiffs to resolve the disputes. The Court should deny the letter motion.

Respectfully submitted,

*/s/ Andrew H. Schapiro*

Andrew H. Schapiro
*Counsel for Defendant Perplexity AI, Inc.*

cc: All counsel of record (via ECF)