# Torridon Law PLLC

801 Seventeenth Street NW, Suite 1100
Washington, DC 20006
(202) 249-6900

March 30, 2026

BY ECF AND ELECTRONIC MAIL

Hon. Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007
Failla_NYSDChambers@nysd.uscourts.gov

RE:  ***Dow Jones & Company, et al. v. Perplexity AI, Inc.***, **Civ. No. 24-7984 (KPF)**

Dear Judge Failla:

I write on behalf of Plaintiffs Dow Jones & Company, Inc. and NYP Holdings, Inc., in the above-captioned case to request that the Court compel Defendant Perplexity AI, Inc. to make available for inspection seven additional months of user activity log data identical to the data it has already produced for months of its own choosing ("Log Data"). Plaintiffs first sought access to the Log Data nearly one year ago, and this Court ordered Perplexity to provide the Log Data for inspection by March 3, 2026.[1] On that date, Perplexity made a significantly deficient production, which is the cause for this dispute. The Log Data is essential evidence in this case (as with every GenAI copyright case to date), and there is no basis to withhold it from Plaintiffs.[2]

Plaintiffs seek judicial intervention because Perplexity has refused to produce Log Data for *all but a self-selected set of months*. Specifically, Perplexity has produced Log Data from September through November 11, 2024, and from March through May of 2025. Plaintiffs repeatedly have requested (and now ask the Court to order) that Perplexity also make Log Data available for the additional, critical, periods of May, June, July, and August 2024, as well as the remainder of November 2024 through February 2025. Following the missed production deadline, Plaintiffs repeatedly sought an answer on whether Perplexity would provide the missing data. After weeks, Plaintiffs finally were told that "the log database is fully preserved and can be recreated as it existed at any point in time. The issue [of the failure to produce] is not preservation." Email from E. Pearson to J. Romeo Mar. 26, 2026. Instead, according to Perplexity's counsel, "*the prohibitive*

---

[1] The Court's Order to produce the Log Data for inspection was the result of months of negotiations between the parties, which involved dozens of letters and emails and at least six video meetings. Plaintiffs issued RFPs in April 2025 specifically tethered to the records contained within the Log Data. In July 2025, and on numerous occasions thereafter, Perplexity indicated that the records of Perplexity's use of Plaintiffs' content were contained within a "Log Database." Pl. Aug. 21, 2025 Ltr. at 1; Def. Sep. 15, 2025 Ltr. at 2. Likewise, on numerous occasions, Perplexity's counsel indicated that Perplexity would make the Log Data available to Plaintiffs. *E.g.,* Def. Oct. 31, 2025 email. In short, there was never a dispute over whether the Log Data was responsive to Plaintiffs' RFPs or over whether Perplexity would produce its Log Data for inspection. Instead, the result of the negotiations was entry of the Stipulated Order Regarding Production and Inspection of Databases and Repositories, Dkt. 98, and a corresponding deadline.

[2] Lest there be any question whether Plaintiffs have fulfilled their obligation to meet and confer, between March 5, 2026 and March 26, 2026, the parties exchanged approximately 26 emails regarding the missing Log Data. Plaintiffs also made numerous requests discuss this topic by phone, which Perplexity honored on a single occasion only.

**Torridon Law PLLC**

The Honorable Katherine Polk Failla
March 30, 2026
Page 2 of 3

*issue is the human resource burden of extracting and packaging new snapshot productions*[3] *that Perplexity never agreed to make.*"  *Id.*  (emphasis added).  Thus, there is a single issue that the Court need decide: whether producing (for inspection) the additional seven months of data, which Perplexity concedes is fully preserved, is so unduly burdensome such that "the burden or expense of the proposed discovery outweighs its likely benefit."  *Marin v. Apple-Metro, Inc.*, 2023 WL 2060133, at *7 (E.D.N.Y. Feb. 8, 2023).

First, as to relevance, the Log Data is the evidence at the heart of this case.  It is the authoritative record of which articles were copied and used by Perplexity.  Specifically, the Log Data contains the records of, *inter alia*, (i) which of Plaintiffs' articles Perplexity copied, (ii) which of those copied articles were used in Perplexity's back-end systems to generate answers, and (iii) the answers that quoted, summarized, or cited Plaintiffs' content.[4]

Perplexity has never seriously disputed that Log Data is relevant to Plaintiffs' claims.  Indeed, as noted above, it has made available for inspection Log Data for several (random) months and/or partial months that it unilaterally chose.  But the missing months (May through August 2024, and November 12, 2024 through February 2025) are, in large part, much more directly relevant.  For instance, Plaintiffs sent their pre-suit demand letter to Perplexity in July 2024 and filed the Complaint in October 2024.  Yet Perplexity refuses to provide Log Data prior to and around the time of the demand period, and for most of the months before the Complaint was filed.  Of the missing Log Data, the data from May through August 2024 is *highly* relevant for at least two separate reasons.  *First*, the works at issue in this case are articles published and registered *prior to September 30, 2024*.[5]  Discovery thus far has confirmed that one of Perplexity's key product offerings is up-to-date news coverage.  Thus, the relevant Log Data would be the Log Data covering the time periods of publication for the articles at issue in the case.  Relatedly, each month of Log Data will contain distinct evidence of distinct acts of infringement.  *Second*, Perplexity's conduct before July 2024 is uniquely relevant to revealing Perplexity's unvarnished conduct *before* it was under the threat of litigation.  Nonetheless, as things stand, Plaintiffs have access only to approximately thirty days' worth of Log Data where their at-issue works would have been subject of news-focused queries (the month of September 2024), and *no data whatsoever* for any months preceding Plaintiffs' demand letter.  The evidence contained in the pre-suit Log Data is critical to allowing Plaintiffs to determine how Perplexity's copying and reproductions of Plaintiffs'

---

[3] Perplexity has characterized the Log Data as being capable of being placed into "snapshots."  Plaintiffs expected that the "snapshots" of data that would be available for inspection on March 3rd would cover May 2024 through May 2025.  *See, e.g.,* Joint Letter dated Jan. 13, 2026, *Chicago Tribune Company, LLC v. Perplexity AI, Inc.*, No. 1:25-cv-10094, Dkt. 30 ("Chicago Tribune Letter") (explaining that Perplexity has at least two snapshots of the Log Data, taken in November 2024 and May 2025, with a six-month retention period for the data).

[4] *See* Chicago Tribune Letter at 2 (describing information contained in Perplexity's user activity log data).

[5] To that end, Plaintiffs have produced to Perplexity lists of articles published in *The Wall Street Journal* and the *New York Post* from January 1, 2011 through September 30, 2024.  To establish its affirmative claims, Plaintiffs will cross-reference the article lists against Perplexity's Log Data.

**Torridon Law PLLC**

The Honorable Katherine Polk Failla
March 30, 2026
Page 3 of 3

copyrighted works may have changed over time, which is relevant to, among other things, the willfulness of Perplexity's infringement.

As to burden, Perplexity cannot meet the high showing to demonstrate that making the Log Data for the missing months available for inspection is so unduly burdensome that producing it would be unreasonable in light of its centrality to the case. *See Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 261–262 (S.D.N.Y. 2008) (granting motion to compel databases where Plaintiffs' "need for the data outweigh[ed] the unquantified and unsubstantiated cost of producing that information."). This is so for at least two reasons. *First*, Perplexity concedes that the Log Data is preserved. *Second*, Perplexity has shown that it is fully capable of making the Log Data available for time periods it self-servingly chooses. For instance, when Perplexity thought it served its interest to do so, it searched and pulled information from one of the missing months that Plaintiffs seek: in support of its motion to compel Plaintiffs' pre-suit investigation work product, Perplexity directly quoted from the July 2024 Log Data. ECF 102 at 2 (purporting to have identified "*hundreds*" of Plaintiffs' queries *predating the lawsuit*). Yet Perplexity is simultaneously denying Plaintiffs access to nearly all of the Log Data for that precise time period.

Courts routinely order production of critical evidence of copyright infringement that is uniquely in the defendant's possession—even if it is housed in a voluminous database. *See, e.g., Viacom.*, 253 F.R.D. at 261 (compelling production of database containing "millions" of videos made that had been "available for public viewing" and "later removed"); *Io Grp., Inc. v. Veoh Networks, Inc.*, 2007 WL 1113800, at *6 (N.D. Cal. Apr. 13, 2007) (similar). Moreover, any burden to Perplexity is mitigated by Plaintiffs' willingness to limit the span of data it seeks to a one-year window: May 2024 through May 2025. In addition, Plaintiffs are only requesting that the Log Data be made available for inspection in a clean room, which significantly lessens the burden of providing access.

Plaintiffs respectfully submit that this straightforward balancing of relevance and burden overwhelmingly supports the grant of Plaintiffs' motion to compel. Accordingly, for the reasons stated herein, Plaintiffs respectfully request the Court to compel Perplexity to make available for inspection its Log Data for the missing months. We thank the Court for its continued attention to this matter.

Respectfully submitted,

*/s/ Paul T. Cappuccio*
Paul T. Cappuccio
*Counsel for Plaintiffs*

cc: All Counsel of Record via ECF