**MEMO ENDORSED**

**quinn emanuel** trial lawyers | new york

295 5th Avenue, 9th Floor, New York, New York 10016 | TEL: (212) 849-7000 FAX: (212) 849-7100

April 2, 2026

WRITER'S DIRECT DIAL
**(212) 849-7164**

WRITER'S EMAIL ADDRESS
**andrewschapiro@quinnemanuel.com**

**VIA ECF AND EMAIL (FAILLA_NYSDCHAMBERS@NYSD.USCOURTS.GOV)**
Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
40 Foley Square, Room 618
New York, New York 10007

Re:     *Dow Jones & Co. v. Perplexity AI, Inc.*, No. 24-cv-07984-KPF

Dear Judge Failla:

On behalf of Defendant Perplexity AI, Inc., I write in response to Plaintiffs' March 30, 2026 letter seeking to compel seven additional months of log database snapshots. The Court should deny Plaintiffs' request. Perplexity has already produced a staggering volume of log data far exceeding its commitments and the burden of extracting seven additional months of snapshots will be severely disruptive to Perplexity's core business operations. Moreover, Plaintiffs have made no showing that the data Perplexity has already produced is insufficient, or that obtaining *more* data is worth the heavy burden its production would impose.

This dispute concerns one of two complex databases that relate to Perplexity's answer engine. The first is the Retrieval-Augmented Generation database, or "RAG Database," which contains the indexed web content that Perplexity's answer engine draws upon to verify and source its responses to user queries. Yarats Decl. ¶4. The second—at issue here—is the "Log Database," which, for each user interaction, captures multiple layers of information at three different points in the exchange:

- **First**, it records the user's raw query, prior conversation history as context, and session-level metadata;
- **Second**, it captures how Perplexity's answer engine interpreted the incoming query, retrieval calls made to pull in external content, and how retrieved sources were ranked, weighted, and synthesized; and
- **Third**, it records the generated response, including how prior turns in a conversation influenced the framing and construction of the answer. *Id.* ¶4.

Thus, the Log Database is not a simple ledger of questions and answers; it is a detailed, layered record of the mechanics of Perplexity's proprietary answer engine. *Id.* Together, the RAG and Log Databases are the most commercially sensitive and voluminous data assets in Perplexity's possession. *Id.* Perplexity has made both available to Plaintiffs in massive quantities—over 300 terabytes of RAG Database data and over 100 terabytes of Log Database data—at significant burden and expense. *Id.* ¶¶5-7.

From the outset of this litigation, Perplexity has been transparent that creating "snapshots" of the Log Database is a time- and resource-intensive undertaking.[1] To produce the snapshots Perplexity has already made available to Plaintiffs took significant engineering time from Perplexity's senior-most engineers who

---

[1] A "snapshot" of the Log Database recreates what the database looked like at a specific moment in time. Yarats Decl. ¶5. The date ranges for each snapshot show the queries that were made and the analysis the answer engine conducted over that time period. *Id.*

are the only people at Perplexity capable of exporting this complex data in a usable manner. Yarats Decl. ¶¶6-7. Accordingly, Perplexity agreed to produce snapshots from November 2024 and May 2025.[2] Although Log Database data for other months is preserved, Perplexity has consistently maintained that producing additional snapshots would be disproportionate to the needs of the case, particularly given that Perplexity was simultaneously agreeing to produce two snapshots of its RAG database, the full source code for four of its products (Perplexity Free, Pro, API, and Bot), and numerous technical documents related to the functionality of its products. Still, Perplexity *exceeded* its commitments: rather than limiting production to the two agreed-upon snapshots, Perplexity produced Log Database data for additional months, including September and October 2024 and March and April 2025. *Id.* ¶5.

The extraordinary burden of producing seven *additional* months of Log Database snapshots is not proportional to the needs of this case. Like the export of the Log Database snapshots Perplexity has already produced, exporting additional snapshots would be a technically demanding, time-intensive process requiring the sustained attention of Perplexity's most senior engineers. Yarats Decl. ¶6. To illustrate the scale: Perplexity generates approximately 20 terabytes (or 20,000 gigabytes) of log data per day. *Id.* ¶7. Transferring a single day's worth of log data takes approximately seven hours; transferring seven and a half months of additional data would take approximately two months, with engineers required to manually initiate and continuously monitor each segment of the transfer throughout. *Id.* ¶7. These mission-critical engineers are not fungible. They oversee engineering teams, lead product development, and are responsible for core product launches scheduled in the coming months. *Id.* ¶8. Diverting them to snapshot extraction for litigation has a direct and measurable impact on Perplexity's core business. *Id.* The disruption that creating seven more snapshots would cause Perplexity is reason alone to deny Plaintiffs' request. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 605 B.R. 617, 631 (Bankr. S.D.N.Y. 2019) (denying motion to compel production of large database as "disproportionate and burdensome").[3] However, the financial burden is also significant: the snapshots Perplexity has already produced—covering approximately six months of log data—cost Perplexity approximately $15,000 per month in storage; producing the seven additional months Plaintiffs seek would approximately double both the volume of data in storage and thus the recurring monthly cost. *Id.* ¶9.

Plaintiffs' cited cases do not justify their request. In *Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008), the court compelled a first-time production of logging database data—approximately 12 terabytes in total—that could be copied onto a few "over-the-shelf" hard drives. *Id.* at 262. Critically, the court found the defendant's burden showing to be "unquantified and unsubstantiated." *Id.* The opposite is true here. Perplexity has already produced over 100 terabytes of Log Database data alone, the extraction process requires custom engineering work by its most senior personnel, and the burden is well documented: each day of log data takes approximately seven hours to transfer from archive storage and must be manually

---

[2]    Plaintiffs' "expect[ation]" that Perplexity's Log Database production on March 3, 2026 would cover May 2024 through May 2025 finds no support in any representation by Perplexity. Perplexity informed Plaintiffs that it had taken snapshots in November 2024 and May 2025—nothing more. Plaintiffs' purported understanding that more snapshots exist derives instead from a letter brief filed by different counsel in a different case. *See Chicago Tribune Co. v. Perplexity AI, Inc.*, No. 1:25-cv-10094 (S.D.N.Y), Dkt. 30. ***To be clear, notwithstanding Plaintiffs' interpretation of that filing, Perplexity has created no other Log Database snapshots beyond the ones that have already been made available to Plaintiffs in this case.***

[3]    Plaintiffs argue that Perplexity's citation to July 2024 log data in Dkt. 102 demonstrates it can access additional months at will. The data cited in Dkt. 102 was obtained through specific queries based on information provided by Plaintiffs in their amended complaint and other filings; it did not require preparing the kind of snapshots of Perplexity's "back-end systems" Plaintiffs now seek. Yarats Decl. ¶10.

processed and monitored by senior engineering personnel; producing seven and a half additional months of data would take approximately two months of transfer time alone; and the snapshots produced to date are already costing Perplexity approximately $15,000 per month to store, a number that would roughly double if Plaintiffs' motion were granted. Yarats Decl. ¶¶5, 7, 9. *Io Grp., Inc. v. Veoh Networks, Inc.*, 2007 WL 1113800 (N.D. Cal. Apr. 13, 2007), is equally inapposite: that case involved narrow document requests tied to seven specific copyrighted works, and the court found several of plaintiff's requests as overbroad—it says nothing pertinent to a massive proprietary database. Finally, *Marin v. Apple-Metro, Inc.*, 2023 WL 2060133 (E.D.N.Y. Feb. 8, 2023), involved a third-party vendor that could fulfill the discovery request by running standard automated reports from a pre-existing database system—a far cry from the bespoke, senior-engineer-intensive extraction process required here. Yarats Decl. ¶6.

Compounding the disproportionality to the needs of this case of Plaintiffs' burdensome request is Plaintiffs' failure to make any compelling argument justifying their demand for seven more months of snapshots. Plaintiffs initiated this case by alleging that *all* of their copyrighted works have been infringed, either by indexing or by inclusion in Perplexity's answers in substantially similar or verbatim form. Yet despite their obligation to possess a good-faith basis to assert these estimated million-plus articles, Plaintiffs identified only a single alleged example of an infringed work in their amended complaint and, in discovery, have taken the position (as recently as the day before this filing) that they cannot identify any *actual* works-in-suit until they review Perplexity's databases. Whether Perplexity has obtained Plaintiffs' content without their permission should be known to them, without reliance on Perplexity's material. As NewsCorp's CEO Robert Thomson stated: they "track … the bots coming in, scraping our stuff." Statement at Morgan Stanley Conference (March 2, 2026). Critically, although Plaintiffs have now had the opportunity to review multiple months' worth of data already available to them, ***Plaintiffs have made no representation to this Court that they have found any additional instances of infringement***. Instead, they have represented only that their investigation has "confirmed that one of Perplexity's key product offerings is up-to-date news coverage," *see* Ltr. at 2—an unremarkable conclusion that a visit to Perplexity's website would reveal.

Indeed, Plaintiffs' invocation of a three-month-old filing in another case to request additional snapshots, *see* n.2—asserted only after Plaintiffs had access to the snapshots Perplexity has made available—coupled with Plaintiffs' failure to point to any evidence of infringement derived from the snapshots to which they already have access, suggests Plaintiffs have been unable to find support for their infringement case in the Log Database. That is not because the data is insufficient. It is because their theory of the case is mistaken. There is no reason to believe that the snapshots already provided are not representative, or that additional snapshots would be more fruitful to Plaintiffs. Essentially, Plaintiffs want to expand their fishing expedition into an even bigger fishing expedition, which Rule 26 and its proportionality requirement do not countenance. *See, e.g.*, *United States v. NCR Corp.*, 2012 WL 4955304, at *1–2 (E.D. Wis. Oct. 17, 2012) (denying motion to compel where producing party had already made "staggering" production and defendants "ha[d] not explained what any additional information would bring to bear on these issues.").

Finally, Plaintiffs' proposal for a "clean room" is not an offer, a compromise, or a concession; it is simply a description of the status quo because Plaintiffs' inspection of log data already uses a "clean room." Also, the clean room framework does not make Plaintiffs' request any less of a fishing expedition, or lessen Perplexity's burden. Even if Perplexity *could* simply push a button to transfer additional Log Database data to a clean room (which it cannot), it would be useless to Plaintiffs without the processing that only Perplexity's most senior engineers can do. Plaintiffs' "clean room" solution is no solution at all.

Respectfully submitted,

*/s/ Andrew H. Schapiro*

Andrew H. Schapiro
*Counsel for Defendant Perplexity AI, Inc.*

cc: All counsel of record (via ECF)

The Court has reviewed Plaintiffs' motion to compel (Dkt. #112), which seeks the production of seven additional months of user activity log data, as well as Defendant's above response (Dkt. #113-114).  The Court believes that Plaintiffs have the stronger of the arguments.  Namely, while the Court recognizes that preparing the snapshots is burdensome for Defendant, such a burden is proportional to the needs of this case.  Consequently, Plaintiffs' motion to compel is GRANTED.

The Clerk of Court is directed to terminate the pending motion at docket entry 112.

Dated:     April 6, 2026              SO ORDERED.
           New York, New York

                                      HON. KATHERINE POLK FAILLA
                                      UNITED STATES DISTRICT JUDGE

4